William J. Genego (Calif. Bar No. 103224)
wgenego@gmail.com
Vicki I. Podberesky (Calif. Bar No. 123220)
Nasatir, Hirsch, Podberesky & Genego
2115 Main Street
Santa Monica, California 90405
Telephone: 310-399-3259

Counsel for Petitioner
Bruce Lisker

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| BRUCE E. LISKER,<br><br>Petitioner,<br><br>vs.<br><br>MICHAEL MARTEL, Warden,<br>Mule Creek State Prison,<br><br>Respondent. | Case No. CV 04-02687-VAP(RZ)<br><br>Petitioner's Memorandum In Response To The Court's "Order Re Evidentiary Hearing" |

Petitioner Bruce Lisker, by counsel, submits the following memorandum in response to the Court's "Order Re Evidentiary Hearing" filed July 2, 2008.

Respectfully submitted,

Nasatir, Hirsch, Podberesky & Genego

Dated: July 28, 2008

//s//
_____
William J. Genego
Vicki I. Podberesky

Counsel for Petitioner Bruce Lisker

1 **Petitioner's Response to "Order Re Evidentiary Hearing"**

2 On July 2, 2008, the Court filed an "Order Re Evidentiary Hearing" stating
3 that it desired "briefing on the propriety of and need for an evidentiary hearing."
4 Clerk's Record Document ("CR Doc") 170, p. 1. The Order further states that any
5 party desiring an evidentiary hearing must file a formal noticed motion
6 requesting such a hearing and the should address the scope of the claims to be
7 addressed at the requested hearing. *Id.*

8 Petitioner files this memorandum in response to the Court's order and to
9 address and answer the issues and questions it raises.

10 Petitioner does not request an evidentiary hearing as to any of his claims and
11 withdraws the request he made in his petition for an evidentiary hearing as to
12 Ground One. Petitioner maintains he is entitled to relief based on the existing
13 factual record and therefore a further evidentiary hearing is not needed. The
14 facts and reasons that entitle Petitioner to prevail based on the existing record are
15 set forth below and also in the memorandum Petitioner filed with his traverse.

17 **Ground 1: Petitioner's Sixth Amendment Right Was Violated By the State's**
18 **Knowing Exploitation of An Opportunity to Confront Him**
19 **Without Counsel**

20 To prevail on this claim Petitioner must establish (1) either that the state
21 "deliberately elicit[ed]" incriminating statements from Petitioner in the absence
22 of counsel, (United States v. Henry, 447 U.S. 264, 270, 100 S. Ct. 2183, 65 L. Ed.2d
23 115 (1980)), or "knowing[ly] exploit[ed] . . . an opportunity to confront [him] . . .
24 without counsel being present . . . " Maine v. Moulton, 474 U.S. 159, 176, 106 S.
25 Ct. 477, 88 L. Ed.2d 481 (1985), and (2) that the violation "had substantial and
26 injurious effect or influence in determining the jury's verdict." Brecht v.
27 Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed.2d 353 (1993), *quoting*,
28 Kotteakos v. United States, 328 U.S. 750, 776 (1946).

1    Petitioner does not request an evidentiary hearing on this claim and relies on
2 the existing record as proof of this claim, including the record of the December,
3 2005 evidentiary hearing.

4    Petitioner's memorandum in support of his traverse details the evidence in
5 the existing record that proves the state either deliberately elicited incriminating
6 statements from Petitioner in the absence of counsel or knowingly exploited an
7 opportunity to confront Petitioner without counsel being present, and Petitioner
8 has no further evidence to offer in support of this claim. "Petitioner's Traverse to
9 Respondent's Answer to Second Amended Petition For Writ of Habeas Corpus;
10 Memorandum In Support of Traverse," ("Traverse Memorandum") CR Doc 168
11 at 50-53.

12    The issue of whether the violation "had substantial and injurious effect or
13 influence in determining the jury's verdict" is determined based on the trial
14 record and is not a matter that is subject to an evidentiary hearing.  (Petitioner's
15 traverse presents the reasons and identifies the evidence that establish this
16 violation had substantial and injurious effect or influence in determining the
17 jury's verdict. Traverse Memorandum, CR Doc 168 at 53.

19 **Ground 2:    Petitioner Was Denied the Effective Assistance of Counsel by**
20 **His Counsel's Failure to Investigate and Advance a Third- Party**
21 **Culpability Defense**

22    To prevail on this claim, Petitioner must establish that: (1) counsel's
23 representation was deficient in some particular respect and (2) counsel's error
24 resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80
25 L. Ed.2d 674 (1984).

26    An attorney's representation "is deficient if, considering all the
27 circumstances, it falls below an objective standard of reasonableness measured
28 under prevailing professional norms." Strickland, 466 U.S. at 691. A petitioner is

prejudiced by counsel's objectively unreasonable errors where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694.

As set forth in the memorandum in support of his traverse, Petitioner claims his counsel provided ineffective assistance with respect to a third party culpability defense and that his errors were of two kinds: (1) counsel failed adequately to advance a third-party culpability defense in that he did not use the facts and evidence available to him in opposing the District Attorney's motion to exclude and prohibit any evidence of third party culpability; and (2) counsel failed to investigate a third party culpability defense that would have yielded further support for the defense.

(1) <u>Failure to Use Available Evidence In Opposing the District Attorney's Motion</u>

Petitioner contends his counsel's failure to use the following available facts and evidence in opposing the the District Attorney's motion was objectively unreasonable because he:

(a) failed to use or mention the motel receipt showing the time Ryan had checked in or the alias he used or the cost of the room;

(b) did not bring to the court's attention that Ryan lied about the time he checked into the motel (10:00 a.m.), and explain the significance of that lie – *i.e.*, it would have given him an alibi, nor did counsel bring out the even more incriminating fact that Ryan offered the false 10:00 a.m. alibi even before being told the time the murder had been committed. (Exh FF: 8, 13.) ;

(c) failed to point out the suspicious reason Ryan gave for using an alias, *i.e.*, he had been in a knife fight. (Exh FF: 8, 9, 13, 25.);

(d) failed to bring out that Ryan's claim that he used the alias because of the knife fight was contradicted by his earlier statement that he had been in the fight after checking into the motel. (Exh FF: 8, 9, 13, 25.)

1  (e) did not use the fact that Ryan lied about why he came to California, and lied about his suspicious return to Mississippi the day after the murder. Ryan had not come to California to join "Job Corps," as he told Monsue, nor did he come to California planning to return to Mississippi, as he offered to explain his sudden departure the day after the murder. (Exh FF: 2, 5, 6, 16, 21; EHT Vol. II: 343-44; CR 112 at 32.). Ryan was sent to California because his Mississippi parole supervision had been transferred to Ventura County California, where his mother lived. (EHT Vol. II: 343-44.) Ryan did not plan on returning to Mississippi. His sudden departure from Los Angeles was not only suspicious by itself, but made more incriminating when he lied to make it appear as if he planned to return to Mississippi.

(2) <u>Failure to Investigate a Third Party Culpability Defense</u>

Petitioner contends his counsel's failure to undertake the following investigation of a third party culpability defense was objectively unreasonable because he:

(a) failed to have the shoeprints in and around the house, including the bloody shoeprint in the bathroom and the shoeprint impression found on the path outside on the east side of the house, examined to determine if any prints indicated the presence of an intruder.

(b) failed to have the autopsy photographs examined. Had counsel or a defense expert examined the autopsy photos, it would have been discovered that there existed a patterned impression resembling a shoeprint on Dorka Lisker's head, behind her right ear. (EHT Vol. II: 389-90.)

(c) failed to obtain the Lisker residence telephone phone bill;

(d) failed to investigate Ryan's criminal record.

(The evidence that would have resulted from this investigation and the support it would have provided to a third party culpability defense is presented and discussed in Petitioner's traverse memorandum. Traverse Memorandum, CR

1  different." Killian v. Poole, 282 F.3d 282 F.3d 1204, 1208 (9th Cir. 2002), *cert. denied*
2  537 U.S. 1179 (2003), *quoting*, United States v. Young, 17 F.3d 1201, 1204 (9th Cir.
3  1994), *citing*, United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed.2d
4  481 (1985).

The trial evidence Petitioner relies on for this claim and contends was false is the following:

(a) Detective Monsue's testimony that there were "similar conditions" on March 23 at the time the photographs looking into the house were taken, and March 10, when Lisker would have looked into the house (RT 265-66);

(b) Detective Monsue's testimony that the photographs taken on March 23, 1983 of the view from outside the house looking into the house "accurately reflected" the view on March 10 (RT 269);

(c) Detective Monsue's testimony that the sun was "very bright" on both March 10 and March 23 (RT 268);

(d) Detective Monsue's testimony that on March 10, Lisker would not have been able to see from the backyard looking in through the living room window to the entryway area of the house where he said he thought he saw his mother's feet because of the "reflection that would come off that particular window . . . [b]ased upon the sun being very bright . . ." (RT 268);

(e) LAPD photographer Wilson's testimony that he began taking pictures of the crime scene at 11:30 a.m. on March 10, 1983 (RT 979) (also proved false by cross-examination of Wilson at the evidentiary hearing, EHT Vol. II: 287-8);

(f) LAPD photographer Wilson's testimony that March 10 and March 23, 1983, were both "bright, sunny" days (RT 971, 976 984, 993);

(g) Detective Monsue's testimony that on March 10, Lisker would not have been able to see from outside the sliding glass patio door through the dining room to the entryway area where he said he observed his mother's head because of "light reflecting" on the glass door as shown in the photograph taken

1 | on March 23rd (RT 273);

2 |     (h) Detective Monsue's testimony that on March 10 Lisker would not have been able to see from outside the sliding glass patio door through the dining room to the entryway where he said he observed his mother's head because his line of sight would have been obstructed by the dining room table and the interior planter (RT 273);

    (i) Detective Monsue's testimony that the bloody shoeprint found in the guest bathroom near the entryway and the bloody shoeprint in the kitchen "quite closely resembled" the sole of Lisker's Pacer shoes (RT 325-26); and

    (j) Detective Monsue's testimony that there was no money in Mrs. Lisker's purse (RT 317, 411-12, 442, 473).

Petitioner does not request an evidentiary hearing on this claim and relies on the existing record as proof of this claim, including the record of the December, 2005 evidentiary hearing.

Petitioner's memorandum in support of his traverse details the evidence in the existing record that proves the trial evidence listed above was false. Traverse Memorandum, CR Doc 168 at 67-69, 73-76. The memorandum also sets forth the evidence that Petitioner contends proves the prosecution knew or should have known the evidence was false. Traverse Memorandum, CR Doc 168 at 67-69, 73-76.

The issue of whether the false evidence was material is determined based on the trial record and is not a matter that is subject to an evidentiary hearing. (Petitioner's traverse presents the reasons and identifies the evidence that establish the false evidence was material under either standard. Traverse Memorandum, CR Doc 168 at 69-73.)

**Ground 4: The Cumulative Effect of the Errors Entitle Petitioner to Relief**

This claim is not subject to an evidentiary hearing as it is determined based on proof of Petitioner's other claims and the trial record.

Respectfully submitted,

Nasatir, Hirsch, Podberesky & Genego

Dated: July 28, 2008

//s//
_____
William J. Genego
Vicki I. Podberesky

Counsel for Petitioner Bruce Lisker