EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
PAMELA C. HAMANAKA
Senior Assistant Attorney General
KRISTOFER JORSTAD
Deputy Attorney General
JOHN YANG
Deputy Attorney General
ROBERT DAVID BRETON
Deputy Attorney General
State Bar No. 73686
   300 South Spring Street, Suite 1702
   Los Angeles, CA  90013
   Telephone: (213) 897-2279
   Fax: (213) 897-6496
   Email: DocketingLAAWT@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE E. LISKER,<br><br>                   Petitioner,<br><br>   v.<br><br>MICHAEL KNOWLES, Warden,<br><br>                Respondent. | CV-04-02687-VAP (RZ)<br><br>**POST EVIDENTIARY HEARING BRIEF** |

1

## TABLE OF CONTENTS

2

**Page**

3   MEMORANDUM OF POINTS AND AUTHORITIES                                    1

4          A.   The Applicable Law                                        1

5          B.   Preparation And Advocacy Before First Trial              5

6          C.   Counsel's Tactical And Ethical Decisions Before Second
                Trial                                                    15
7
           D.   Conclusion                                               19
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Aguilar v. Alexander*,
125 F.3d 815 (9th Cir. 1997) ............................................. 19

5

6

*Ames v. Endell*,
856 F.2d 1441 (9th Cir. 1988) ............................................ 20

7

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ............................................... 4

8

*Cacoperdo v. Demosthenes*,
37 F.3d 504 (9th Cir. 1994) ............................................... 3

9

10

*Goodman v. Bertrand*,
467 F.3d 1022 (7th Cir. 2006) ........................................... 21

11

*Holmes v. South Carolina*,
547 U.S. 319,
126 S. Ct. 1727,
164 L. Ed. 2d 503 (2006) ............................................. 8, 14

12

13

*Anderson v. Calderon*,
232 F.3d 1053 (9th Cir. 2000) ............................................ 3

14

15

*Babbitt v. Calderon*,
151 F.3d 1170, 1174 (9th Cir. 1998) .................................. 2, 3

16

*Bashor v. Risley*,
730 F.2d 1228 (9th Cir. 1984) ............................................ 3

17

18

*Bean v. Calderon*,
163 F.3d 1073 (9th Cir. 1998) ............................................ 3

19

*Bell v. Cone*,
535 U.S. 685,
122 S. Ct. 1843,
152 L. Ed. 2d 914 (2002) ............................................... 1

20

21

22

*Bowling v. Parker*,
344 F.3d 487 (6th Cir. 2003) ........................................... 14

23

*Clayton v. Gibson*,
199 F.3d 1162 (10th Cir. 1999) ......................................... 14

24

25

*Coleman v. Calderon*,
150 F.3d 1105 (9th Cir. 1998) ............................................ 2

26

*Cooks v. Spalding*,
660 F.2d 738 (9th Cir. 1991) ............................................. 4

27

28

# TABLE OF AUTHORITIES  (continued)

**Page**

*Cooper v. Calderon*,
255 F.3d 1104 (9th Cir. 2001) ............................ 4

*Denham v. Deeds*,
954 F.2d 1501 (9th Cir. 1992) ............................ 4

*Edwards v. LaMarque*,
445 F.3d 1121 (9th Cir. 2007) (en banc) .................. 21

*Gallego v. McDaniel*,
124 F.3d 1065 (9th Cir. 1997) ............................ 4

*Gentry v. Roe*,
320 F.3d 891 (9th Cir. 2003) ............................. 4

*Gerlaugh v. Stewart*,
129 F.3d 1027 (9th Cir. 1997) ............................ 2

*Guzzardo v. Bengston*,
643 F.2d 1300 (7th Cir. 1981) ........................... 18

*Hamilton v. Ayers*,
458 F. Supp. 2d 1075 (E. D. Cal. 2006) .................. 10

*Hardamon v. United States*,
319 F.3d 943 (7th Cir. 2003) ............................. 4

*Harding v. Sternes*,
380 F.3d 1034 (7th Cir. 2004) ........................... 14

*Harris v. Vasquez*,
949 F.2d 1497 (9th Cir. 1990) ............................ 3

*Hayes v. Woodford*,
301 F.3d 1054 (9th 2002) ................................. 4

*Jackson v. Calderon*,
211 F.3d 1148 (9th Cir. 2000) ............................ 4

*James v. Borg*,
24 F.3d 20 (9th Cir. 1994) ............................... 4

*Johnson v. Alabama*,
256 F.3d 1156 (11th Cir. 2001) .......................... 14

*Kimmelman v. Morrison*,
477 U.S. 365,
106 S. Ct. 2574,
91 L. Ed. 2d 305 (1986) .................................. 2

*LaGrand v. Stewart*,
133 F.3d 1253 (9th Cir. 1998) ............................ 3

## TABLE OF AUTHORITIES  (continued)

**Page**

*Lang v. Callahan*,
788 F.2d 1416 (9th Cir. 1986) .......... 3

*Middleton v. Roper*
455 F.3d 838 (8th Cir. 2006) .......... 4

*Milone v. Camp*,
22 F.3d 693 (7th Cir. 1994) .......... 18

*Mobley v. Head*,
267 F.3d 1312 (11th Cir. 2001) .......... 3

*Moore v. Deputy Commissioners of Sci-Huntington*,
946 F.2d 236 (3rd Cir. 1991) .......... 2

*Morgan v. Bunnell*,
24 F.3d 49 (9th Cir. 1994) .......... 3

*Morris v. California*,
966 F.2d 448 (9th Cir. 1992) .......... 2, 4

*Murtishaw v. Woodford*,
255 F.3d 926 (9th Cir. 2001) .......... 19

*Nix v. Whiteside*,
475 U.S. 157,
106 S. Ct. 988,
89 L. Ed. 2d 123 (1986) .......... 2, 18

*O'Brien v. Marshall*,
453 F.3d 13 (1st Cir. 2006) .......... 14

*Paradis v. Arave*,
954 F.2d 1483 (9th Cir. 1992) .......... 3

*People v. Alcala*,
4 Cal.4th 742,
15 Cal. Rptr. 2d 432 (1992) .......... 9

*People v. Alvarez*,
14 Cal 4th 155,
58 Cal. Rptr. 3d 385 (1996) .......... 11

*People v. Arline*,
13 Cal.App.3d 200,
91 Cal. Rptr. 520 (1970) .......... 9

*People v. Avila*,
38 Cal.4th 491,
43 Cal. Rptr. 3d 1 (2006) .......... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES  (continued)

**Page**

*People v. Babbitt*,
45 Cal. 3d 660,
248 Cal. Rptr. 69 (1988)                                                11, 12

*People v. Blankenship*,
167 Cal. App. 3d 840,
213 Cal. Rptr. 666 (1985)                                                  10

*People v. Bradford*,
15 Cal.4th 1229,
55 Cal. Rptr. 2d 347 (1997)                                                 9

*People v. Clark*,
3 Cal.4th 41,
10 Cal.Rptr. 2d 554 (1992)                                                  9

*People v. Edelbacher*,
47 Cal. 3d 983,
254 Cal. Rptr. 586 (1989)                                                  12

*People v. Green*,
27 Cal.3d 1,
164 Cal. Rptr. 1 (1980)                                                   8, 9

*People v. Guillebeau*,
107 Cal.App.3d 531,
166 Cal. Rptr. 45 (1980)                                                    8

*People v. Hall*,
41 Cal.3d 826,
226 Cal. Rptr. 112,
718 P. 2d 99 (1986)                                                    8, 9, 12

*People v. Karis*,
46 Cal. 3d 612,
250 Cal. Rptr. 659 (1988)                                                  10

*People v. Kaurish*,
52 Cal.3d 648 (1990)                                                        8

*People v. Kegler*,
197 Cal. App.3d 72,
242 Cal. Rptr. 897 (1987)                                                  10

*People v. Lewis*,
26 Cal.4th 334,
110 Cal. Rptr. 2d 272 (2001)                                                9

*People v. Marshall*,
13 Cal. 4th 799,
55 Cal. Rptr. 2d 347 (1996)                                                10

# TABLE OF AUTHORITIES  (continued)

**Page**

*People v. Pride*,
3 Cal.4th 195,
10 Cal. Rptr. 2d 636 (1992) ............................................. 9

*People v. Sandoval*,
4 Cal. 4th 155,
14 Cal. Rptr. 2d 342 (1992) ............................................. 12

*People v. Von Villas*,
10 Cal. App. 4th 201,
13 Cal. Rptr. 2d 62 (1992) ............................................. 10

*People v. Wright*,
39 Cal.3d 576,
217 Cal. Rptr. 212 (1984) ............................................. 10

*People v. Yeoman*,
31 Cal. 4th 93,
2 Cal. Rptr. 3d 186 (2003) ............................................. 9

*Perry v. Rushen*,
713 F.2d 1447 (9th Cir. 1983) ............................................. 9

*Rodriguez v. United States*,
286 F.3d 972 (7th Cir. 2002) ............................................. 18

*Roe v. Flores-Ortega*,
528 U.S. 470,
120 S. Ct. 1029,
145 L. Ed. 2d 985 (2000) ............................................. 3

*Royal v. Taylor*,
188 F.3d 239 (4th Cir. 1999) ............................................. 20

*Sanders v. Ratelle*,
21 F.3d 1446 (9th Cir. 1994) ............................................. 21

*Sayre v. Anderson*,
238 F.3d 631 (5th Cir. 2001) ............................................. 18

*Siripongs v. Calderon*,
133 F.3d 732 (9th Cir. 1998) ............................................. 3

*Smith v. Stewart*,
140 F.3d 1263 (9th Cir. 1998) ............................................. 5

*Spivey v. Rocha*,
194 F.3d 971 (9th Cir. 1999) ............................................. 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vi

## TABLE OF AUTHORITIES  (continued)

**Page**

*Strickland v. Washington*,
466 U.S. 668,
104 S. Ct. 2052,
80 L. Ed. 2d 674 (1984)                                    1-4, 19

*Thompson v. Calderon*,
109 F.3d 1358 (9th Cir. 1997)                                    2

*Turk v. White*,
116 F.3d 1264 (9th Cir. 1997)                                    3

*United States v. Berry*,
814 F.2d 1406 (9th Cir. 1989)                                    4

*United States v. Chambers*,
918 F.2d 1455 (9th Cir. 1990)                                    2

*United States v. Layton*,
855 F.2d 1388 (9th Cir. 1988)                                    2

*United States v. Martinez*,
883 F.2d 750 (9th Cir. 1989)                                    18

*United States v. Mayo*,
646 F.2d 369 (9th Cir. 1981)                                    3

*United States v. Murray*,
751 F.2d 1528 (9th Cir. 1985)                                    4

*United States v. Olson*,
925 F.2d 1170 (9th Cir. 1991)                                    4

*United States v. Omene*,
143 F.3d 1167 (9th Cir. 1998)                                    18

*United States v. Popoola*,
881 F.2d  811 (9th Cir. 1989)                                    4

*Wade v. Calderon*,
29 F.3d 1312 (9th Cir. 1994.)                                    4, 20

*Wade v. Mantello*,
333 F.3d 51 (2 nd Cir. 2003)                                    10

*Wiggins v. Smith*,
539 U.S. 510,
123 S. Ct. 2527,
156 L. Ed. 2d 471 (2003)                                    20

### TABLE OF AUTHORITIES  (continued)

**Page**

*Williams v. Taylor*,
529 U.S. 362,
120 S. Ct. 1495,
146 L. Ed. 2d 389 (2000)                                               2, 4

*Wilson v. Henry*,
185 F.3d 986 (9th Cir. 1999)                                            20

*Winfield v. Roper*,
460 F.3d 1026 (8th Cir. 2006)                                           18

**Statutes**

28 U.S.C. § 2254(d)                                                     21

Cal. Evid. Code, § 350                                                  14

Cal. Evid. Code § 352                                                   7, 14

Cal. Penal Code § 31                                                    22

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  PAMELA C. HAMANAKA
   Senior Assistant Attorney General
4  KRISTOFER JORSTAD
   Deputy Attorney General
5  JOHN YANG
   Deputy Attorney General
6  ROBERT DAVID BRETON
   Deputy Attorney General
7  State Bar No. 73686
     300 South Spring Street, Suite 1702
8    Los Angeles, CA  90013
     Telephone: (213) 897-2279
9    Fax: (213) 897-6496
     Email: DocketingLAAWT@doj.ca.gov
10
   Attorneys for Respondent
11
12             IN THE UNITED STATES DISTRICT COURT

13         FOR THE CENTRAL DISTRICT OF CALIFORNIA

14
15  BRUCE E. LISKER,                      CV-04-02687-VAP (RZ)

16                        Petitioner,     **POST EVIDENTIARY
                                          HEARING BRIEF**
17       v.

18  MICHAEL KNOWLES, Warden,

19                        Respondent.

20

21         Respondent Rosanne Campbell, Warden of Mule Creek State Prison at

22  Sacramento, California, by and through counsel, respectfully submits this brief

23  following the evidentiary hearing held before this honorable Court on October 31,

24  2008.  The hearing was conducted to resolve certain facts pertaining to Ground Two

25  of the Second Amended Petition for Writ of Habeas Corpus (Petition).  In Ground

26  Two, Petitioner asserts a denial of his right to the effective assistance of counsel, as

27  guaranteed by the Sixth and Fourteenth Amendments, as a result of defense counsel's

28  alleged failure to investigate and advocate the admissibility of a third-party-

                                    1

culpability defense.  This post-hearing brief is based on the attached Memorandum of Points and Authorities, on the reporter's transcript of the evidentiary hearing, and on the exhibits that were admitted into evidence at the hearing.

WHEREFORE, Respondent submits that the law on effective assistance of counsel, as applied to the facts adduced at the evidentiary hearing, reviewed in conjunction with the record of the trial and the other evidence before this Court, demonstrates that defense counsel's investigation and attempt to present a third-party culpability defense were well within the acceptable range of reasonable diligence and advocacy, given all the facts known to defense counsel, and in light of the tactical decisions he made.  Those facts also establish that Petitioner has not and cannot show prejudice.

Dated:  November 21, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
PAMELA C. HAMANAKA
Senior Assistant Attorney General
KRISTOFER JORSTAD
Deputy Attorney General
JOHN YANG
Deputy Attorney General


**/s/ Robert David Breton**
ROBERT DAVID BRETON
Deputy Attorney General
Attorneys for Respondent

RDB:lds
LA2004FH0213
Lisker Post Evidentiary Brief.wpd

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### PETITIONER HAS FAILED TO SUSTAIN HIS BURDEN OF DEMONSTRATING THAT HIS TRIAL ATTORNEY'S REPRESENTATION WAS CONSTITUTIONALLY INADEQUATE

Petitioner contends that defense counsel was derelict in investigating a third-party-culpability defense and less than diligent in opposing the prosecutor's in limine motion to exclude such evidence. He finds fault with the extent of defense counsel's pre-trial preparation of an alternate-perpetrator defense and questions the reasons for defense counsel's tactical decisions regarding the presentation of such a defense at the second trial. He takes defense counsel to task for failing to bring to the attention of the trial court at the hearing on the in limine motion certain minor pieces of evidence, such as the facts that Michael Ryan liked knives, had done odd jobs for Mrs. Lisker in the past, checked into a Hollywood motel on the day of the murder under a false name, was in need of money, and somehow inexplicably obtained sufficient money to buy a bus ticket back to Mississippi. (Pet. at 5-5b.)

The contention is clearly without merit. The testimony adduced at the evidentiary hearing shows that defense counsel was diligent in investigating and advancing such a defense before the first trial. The testimony also shows his decision to forego further preparation and presentation of a third-party-liability defense before the second trial was based legitimate tactical considerations and ethical concerns.

### A.  The Applicable Law

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance, of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (*Strickland*). To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's conduct fell below an objective standard of reasonableness, and that the defendant was prejudiced by counsel's acts or omissions. *Id*. at 687-88; *Bell v. Cone*, 535 U.S. 685,

1

1   695, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Williams v. Taylor*, 529 U.S. 362,

2   390, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). *Strickland* imposes a "highly

3   demanding" standard upon the defendant to prove "gross incompetence" (*Kimmelman*

4   *v. Morrison*, 477 U.S. 365, 381-82, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986))

5   (*Kimmelman*). Since judicial scrutiny of counsel's performance is highly deferential,

6   a court must indulge a strong presumption that counsel's conduct fell within the wide

7   range of reasonable professional assistance. *Ibid*.; *Strickland*, 466 U.S. at 689.

8          In assessing a trial attorney's pre-trial acts and omissions, a reviewing court

9   must conduct an objective review of counsel's performance, measured for

10  "reasonableness under prevailing professional norms." *Kimmelman*, 477 U.S. at 381-

11  82; *Strickland*, 466 U.S. at 688. This includes a context-dependent consideration of

12  the challenged conduct as seen "from counsel's perspective at the time," and "every

13  effort [must] be made to eliminate the distorting effects of hindsight." *Id*. at 689; *see*

14  *also Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998); *Campbell v. Wood*,

15  18 F.3d 662, 673 (9th Cir. 1994). Even the best lawyers would not defend their client

16  in the same way, and the question is not what the best lawyer would have done or

17  even what most good lawyers would have done, but whether a reasonable lawyer at

18  trial could have acted as defense counsel did. *Strickland*, 466 U.S. at 689; *Coleman*

19  *v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998); *Moore v. Deputy Commissioners*

20  *of Sci-Huntington*, 946 F.2d 236, 246 (3rd Cir. 1991).

21         Reasonable tactical decisions are virtually immune from attack, even if they

22  prove unsuccessful. *Strickland*, 466 U.S. at 699; *see also Gerlaugh v. Stewart*, 129

23  F.3d 1027, 1033 (9th Cir. 1997); *Thompson v. Calderon*, 109 F.3d 1358, 1365-65 (9th

24  Cir. 1997); *Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1992). Thus, tactical

25  decisions  regarding which evidence to present, which witnesses to call, and which

26  defenses to advance or forego are left to the sound judgment of the defense attorney

27  and will not be second guessed. *Nix v. Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988,

28  89 L. Ed. 2d 123 (1986); *United States v. Layton*, 855 F.2d 1388, 1420 (9th Cir. 1988);

2

1    *United States v. Chambers*, 918 F.2d 1455, 1461-62 (9th Cir. 1990).

2      "Strategic choices made after thorough investigation of law and facts
3 relevant to the plausible options are virtually unchallengeable." *LaGrand v. Stewart*,
4 133 F.3d 1253, 1271 (9th Cir. 1998), *citing Strickland*, 466 U.S. at 490-91; *see also*
5 *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000);
6  *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994). The relevant inquiry
7 is not what defense counsel could have done, but rather whether the choices made by
8 defense counsel were reasonable and informed. *Babbitt v. Calderon*, 151 F.3d 1170,
9 1173 (9th Cir. 1998); *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998);
10 *Harris v. Vasquez*, 949 F.2d 1497, 1525 (9th Cir. 1990). A difference of opinion as
11 to trial tactics does not constitute denial of effective assistance, and tactical decisions
12 are not ineffective assistance simply because in retrospect better tactics are known to
13 have been available. *Lang v. Callahan*, 788 F.2d 1416, 1418 (9th Cir. 1986); *Bashor*
14 *v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984); *United States v. Mayo*, 646 F.2d 369,
15 375 (9th Cir. 1981).

16      A defense attorney has a general duty to make reasonable investigations, but
17 defense counsel can reasonably decide not to carry out a particular investigation or
18 can make a reasonable strategic decision that makes a particular investigation
19 unnecessary. *Strickland*, 466 U.S. at 691. Thus, if counsel reviews the preliminary
20 facts of the case and reasonably decides to pursue only one of two conflicting defense
21 theories, for example, he need not investigate the abandoned defense theory further.
22 *Anderson v. Calderon*, 232 F.3d 1053, 1095 (9th Cir. 2000); *Bean v. Calderon*, 163
23 F.3d 1073, 1082 (9th Cir. 1998); *Turk v. White*, 116 F.3d 1264, 1266-67 (9th Cir.
24 1997). An attorney may appropriately decide not to continue with a particular
25 investigation when the defendant's own statements to the authorities or to defense
26 counsel disclose that such a pursuit would be fruitless. *Strickland*, 466 U.S. at 691;
27 *Paradis v. Arave*, 954 F.2d 1483, 1491 (9th Cir. 1992); *Harris v. Vasquez*, 949 F.2d
28 at 1525; *Morgan v. Bunnell*, 24 F.3d 49, 52 (9th Cir. 1994); *Mobley v. Head*, 267 F.3d

1312, 1318-19 (11th Cir. 2001); *Middleton v. Roper* 455 F.3d 838, 848 (8th Cir. 2006).

With respect to the required showing of prejudice, it is not enough for a petitioner to show that counsel's errors had some conceivable effect on the outcome of the trial.  *Strickland*, 466 U.S. at 693; *Cooper v. Calderon*, 255 F.3d 1104, 1109 (9th Cir. 2001); *Cooks v. Spalding*, 660 F.2d 738, 740 (9th Cir. 1991); *United States v. Olson*, 925 F.2d 1170, 1174 (9th Cir. 1991).  He must demonstrate how the defective performance actually and substantially "prejudiced the defense." *Strickland*, 466 U.S. at 687-88, 692-94; *see Gentry v. Roe*, 320 F.3d 891, 900 (9th Cir. 2003); *Hayes v. Woodford*, 301 F.3d 1054, 1066 (9th 2002); *Bonin v. Calderon*, 59 F.3d 815, 833 (9th Cir. 1995).  Unsupported speculation or conclusory allegations as to the effect of an attorney's substandard performance are not sufficient to show prejudice.  *Williams v. Taylor*, 529 U.S. at 399; *Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *Morris v. California*, 966 F.2d 448, 455-56 (9th. Cir. 1992).

Consequently, a claim of inadequate investigation is undeveloped where it fails to show how the investigation was deficient and what would have been produced if done otherwise.  *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); *United States v. Popoola*, 881 F.2d  811, 813 (9th Cir. 1989).  Allegations of failure to investigate must show what additional investigation would uncover and what testimony the additional witnesses would have provided.  *Denham v. Deeds*, 954 F.2d 1501, 1505-06 (9th Cir. 1992); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1989); *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985).  Ineffectiveness is not shown where the petitioner provides no information as to what further investigation would have produced, whether it would have been admissible, and how it would have changed the result.  *Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997); *Hamilton v. Vasquez*, 17 F.3d 1149, 1157 (9th Cir. 1994); *Wade v. Calderon*, 29 F.3d 1312, 1318 (9th Cir. 1994.)

Speculation that a different approach might have led to a different outcome

1    simply will not carry the day.  *Smith v. Stewart*, 140 F.3d 1263, 1273 (9th Cir. 1998).

2    **B. Preparation And Advocacy Before First Trial**

3    Contrary to Petitioner's argument, the record shows that defense counsel

4    used all available evidence in opposing the prosecutor's in limine motion regarding

5    third-party-culpability evidence prior to the first trial.  Defense counsel investigated,

6    litigated, and attempted to present evidence of third party culpability.  He

7    scrupulously read and studied the murder book, read all the reports, listened to the

8    tape recording of Detective Monsue's interview with Ryan, and had his defense

9    investigator, Michael Wagner (appointed June 21, 1984) contact and interview Ryan.

10   (Hg. RT at 14-15, 18, 22, 30-33, 65-66, 73-75, 82-84, 89-90; Aug. RT at 389-99; CT

11   124, 126, 145-50, 151, 153.)[1/]

12   At the November 15, 1984 hearing on the prosecution's in limine motion

13   before the first trial, defense counsel indicated he had listened to a tape of Detective

14   Monsue's interview with Ryan, and he presented the tape and a 41-page transcript of

15   this tape to the court to show that Ryan's statements demonstrated that Ryan, like

16   Petitioner, had a motive, opportunity, and means to commit the murder, but unlike

17   Petitioner, was not demonstrably present at the scene.  He pointed to statements made

18   by Ryan that he was at the Lisker house the day before the murder, that he left the

---

22   1.  Sue Sarkis was previously appointed at defense counsel's request to assist him in interviewing three jailhouse informants in preparation for the preliminary hearing and for the *Massiah* motion.  (CT at 30, 32, 34; Hg. RT at 82-83, 87-88.)  Ms. Sarkis testified at the evidentiary hearing that she asked for funds to fly to Mississippi to interview Ryan, but that Robert Lisker refused to provide any money for that purpose, and defense counsel told her that the trial court would not approve such an expenditure.  (Hg. RT at 99, 111-12.)  However, Mr. Mulcahy testified that she never made such a request, that her assignment was limited to one task, and that he discontinued using her services as soon as it became apparent that she wanted to control the investigation and to carry it tasks in her own way.  (Hg. RT at 17-18, 82, 87-89, 119.)

1    state the day after the murder, that he was unable to account for the money he spent

2    while in California, and that he had a knife.  Defense counsel offered to prove that

3    Ryan was in the neighborhood on the night before the murder, that he needed money,

4    that he had tried to borrow money from Mrs. Lisker in the past, and that the money

5    missing from Mrs. Lisker's purse was not found on Petitioner.  (Hg. RT 22-23; Aug.

6    RT at 389-99; Hg. RT at 22-23, 70-72; Ex. 48.)

7         There was no need for defense counsel to pinpoint the various pieces of

8    information contained in the transcript of Detective Monsue's interview of Ryan or

9    to argue their suspicious nature to the trial court.  Commissioner Mulcahy gave his

10   copy of the taped interview to the trial court, and the court listened to it.  (Hg. RT at

11   23, 72.)  By presenting a transcript of Detective Monsue's interview of Ryan to the

12   court, defense counsel presented the same proffers of proof that Petitioner now insists

13   should have been offered.  (Hg. RT at 24; Aug. RT 390-93, 398.)

14        Thus, defense counsel was thoroughly familiar with Ryan's statements to

15   Detective Monsue[2] and to his own defense investigator.  (Hg. RT at 23-24; Aug. RT

16   391; CT 151, 153.)   He used these interviews to argue that certain pieces of

17   information cast some suspicion on Ryan because he had the opportunity, the means,

18   and the motive to commit a burglary at the Lisker residence (Aug. RT 391-92).

19   Therefore, defense counsel assiduously and vigorously argued at the pre-trial hearing

20   on an in-limine motion that he be allowed to present evidence of Ryan's possible

21   culpability. (Aug. RT 389-98.)

22        The trial court granted the prosecutor's motion without prejudice because,

23

_____

24        2.  A fair reading of Detective Monsue's interview shows that, contrary to

25   Petitioner's suggestion that the interview was not accusatory or confrontational,
     Detective Monsue's interrogation of Ryan was actually very tough.  He accused Ryan

26   of lying to him and confronted him with contrary information about the time he

27   actually checked into the motel and the false name he used.  He told him that his story
     about the amount of money he spent and how much money he had left over to pay for

28   the bus trip just did not add up.  (*See* Exs. 45, 86.)

as stated by the prosecutor, there was "zero" evidence directly connecting Ryan to the actual perpetration of the murder, and Ryan was not found with any of the weapons that were used in the murder.  The court agreed with the prosecutor's assessment that "anybody in the County of Los Angeles theoretically had the opportunity" to burglarize the Lisker residence, that "anybody can pick up an exercise bar, a trophy or two knives and stab," that Ryan could have gotten his money for the return bus trip from any one of thousands of sources, that there was no evidence of any animosity between Ryan and Mrs. Lisker, and no evidence that Ryan ever tried to steal money or anything else from her.  The court also concurred with the prosecutor's keen observation that even if it could be proved that Ryan was at the scene when the murder was committed, that would "not tend to prove [Petitioner] innocent," and "the jury might start speculating" that Ryan was merely an accomplice.  (Aug. 395-396; Hg. RT 24, 28.)

That the trial court found the offer of proof lacking, however, does not demonstrate ineffective assistance of counsel.  It only shows that no evidence existed tying Ryan directly to the actual commission of the crime and that the minimal relevance of the evidence presented was substantially outweighed by the strong likelihood that it would mislead the jury, consume an inordinate amount of time, and prejudice the People by encouraging the jurors to engage in conjecture.  (Aug. RT at 399; *see* Cal. Evid. Code § 352.)  As stated by the prosecutor at the hearing, "[U]nless there is some link with the crime, [any evidence about Ryan] is speculation and should be excluded."  (Aug. RT at 374; see also Aug. RT at 389, 402.)

Although the trial court left the door open for Petitioner to present additional evidence -- even in "an in camera hearing" if he so desired (Aug. RT 396, 397, 399) -- defense counsel knew he had a very difficult evidentiary burden to overcome, and nothing offered now by Petitioner closes the evidentiary gap or even remotely rises to the level of meeting that burden.  The evidence that Petitioner insists defense counsel should have emphasized in his argument to the trial court -- including Ryan's

1   checking into the motel under a false name and then lying or misstating the time he

2   checked in -- only tenuously suggests that Ryan may have had a motive to hide his

3   identity for a reason completely unrelated to this case, such as his possible

4   commission of another crime somewhere in Los Angeles County that day.

5        There was nothing tying Ryan directly to the actual perpetration  of the

6   murder.  (Hg. RT 27-28.)  Indeed, Ryan told his mother he did not do it.  (Ex. 107.)

7   In Ryan's interview with Detective Monsue, Ryan denied being at the house that day.

8   (Ex. 86.)

9        Defense counsel was well aware of the obstacles he faced in gathering and

10  presenting sufficient evidence to the trial court to present the third-party defense.

11  (Hg. RT 19-20, 27-28.)  In California, mere evidence of a third person's motive,

12  opportunity, violent propensity and criminal disposition is not admissible unless it is

13  "coupled with substantial evidence tending to *directly connect* that person with the

14  *actual commission* of the offense."  *People v. Green*, 27 Cal.3d 1, 22, 164 Cal. Rptr.

15  1 (1980); *see also People v. Kaurish* (1990) 52 Cal.3d 648, 684-86; *People v.*

16  *Guillebeau*, 107 Cal.App.3d 531, 549, 166 Cal. Rptr. 45 (1980) (holding that

17  evidence showing a "possible ground for suspicion" will not suffice).  Evidence of

18  third party culpability cannot be presented without some physical evidence directly

19  "linking the third person to the actual perpetration of the crime."  *People v. Hall*, 41

20  Cal.3d 826, 833-34, 226 Cal. Rptr. 112, 718 P. 2d 99 (1986), quoted in *Spivey v.*

21  *Rocha*, 194 F.3d 971, 978 (9th Cir. 1999) (upholding refusal to allow "purely

22  speculative" evidence that did not "link" the third party to the murder, and noting that

23  "motive or opportunity is not enough"); *see also Holmes v. South Carolina*, 547 U.S.

24  319, 327, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (recognizing that "frequently,

25  matters offered in evidence for this purpose [to show that someone else committed

26  the crime] are so remote and lack such connection with the crime that they are

27  excluded [because] it does not sufficiently connect the other person to the crime, as,

28  for example, where the evidence is speculative or remote, or does not tend to prove

1  or disprove a material fact in issue at the defendant's trial"); *Perry v. Rushen*, 713

2  F.2d 1447, 1451 (9th Cir. 1983); *People v. Yeoman*, 31 Cal. 4th 93, 140-41, 2 Cal.

3  Rptr. 3d 186 (2003).

4      Thus, evidence offered to show that a third party committed the crime

5  requires physical or other evidence directly linking the third party to the "actual

6  perpetration" of the crime, and mere evidence of motive, general disposition, or

7  opportunity, without more, will not suffice to *raise a reaso*nable doubt about the

8  defendant's guilt.  *People v. Pride*, 3 Cal.4th 195, 237-38, 10 Cal. Rptr. 2d 636

9  (1992); *People v. Hall*, 41 Cal. 3d at 831-35; *People v. Clark*, 3 Cal.4th 41, 131-33,

10  10 Cal.Rptr. 2d 554 (1992); *People v. Green*, 27 Cal.3d at 22-23.  In addition, it is not

11  enough to present evidence proving, through direct or circumstantial evidence, that

12  the third party committed the crime; the proffered evidence must at the same time

13  exonerate or at least raise a reasonable doubt as to the defendant's own culpability by

14  showing that the defendant did *not* commit the crime.  In other words, the evidence

15  offered must exculpate the defendant at the same time that it inculpates the third party

16  by excluding the possibility that the third party committed the crime *with* the

17  defendant and was merely the defendant's accomplice or an innocent on-looker.

18  *People v. Hall*, 41 Cal.3d at 831; *see also  People v. Lewis*, 26 Cal.4th 334, 372, 110

19  Cal. Rptr. 2d 272 (2001); *People v. Bradford*, 15 Cal.4th 1229, 1324-25 (1997);

20  *People v. Alcala*, 4 Cal.4th 742, 792, 15 Cal. Rptr. 2d 432 (1992).

21      Based on the colloquy that took place at the hearing on the in limine motion

22  (Aug. RT 389-99, 402), defense counsel knew that to satisfy the trial court's

23  insistence that there be evidence connecting Ryan to the "actual commission" of the

24  murder would require finding "competent and substantial proof of a probability" that

25  Ryan did it, and that "the *mere possibility*" that Ryan did it was "not enough."  *People*

26  *v. Arline*, 13 Cal.App.3d 200, 203-204, 91 Cal. Rptr. 520 (1970); italics added; *see*

27  Hg. RT 19-20.  Petitioner has not shown that the trial court would have ruled any

28  differently on the in-limine motion regarding the admissibility of third-party-liability

evidence even if defense counsel had investigated the matter further, had reiterated the facts Petitioner now alludes to, and made the same speculative arguments to the trial court that Petitioner presents herein. *See People v. Marshall*, 13 Cal. 4th 799, 836, 55 Cal. Rptr. 2d 347 (1996) (trial court not required to allow "unlimited inquiry into collateral matters; the proffered evidence must have more than slight relevancy"); *People v. Karis*, 46 Cal. 3d 612, 637, 250 Cal. Rptr. 659 (1988); *People v. Wright*, 39 Cal.3d 576, 588, 217 Cal. Rptr. 212 (1984). Thus, Petitioner has failed to show how further investigation or argument at the hearing would have changed anything. *See Hamilton v. Ayers*, 458 F. Supp. 2d 1075, 1110-11 (E. D. Cal. 2006) (no evidence of third-party involvement or of what would have been discovered with further investigation).

More specifically, Petitioner has not demonstrated how defense counsel could have overcome such significant, if not insurmountable, hurdles without having Ryan and/or Petitioner testify. To this day, Petitioner still has failed to demonstrate any direct link by Ryan to the actual perpetration of the murder. *See Wade v. Mantello*, 333 F.3d 51, 61 (2 nd Cir. 2003) (noting that relevance cannot rest "at the end of a brittle chain of inferences"). Indeed, in denying Petitioner's habeas corpus petition on this claim of ineffective assistance of counsel, the superior court decried Petitioner's assertions of ineffective assistance of counsel as being based on false "assumptions" that were "not supported by facts" and were "a stretch of credibility immersed in speculation." (MTD, Ex. I at 161-62; *see People v. Von Villas*, 10 Cal. App. 4th 201, 264-65, 13 Cal. Rptr. 2d 62 (1992); *People v. Kegler*, 197 Cal. App.3d 72, 80, 242 Cal. Rptr. 897 (1987); *People v. Blankenship*, 167 Cal. App. 3d 840, 848, 213 Cal. Rptr. 666 (1985).)

Even now, Petitioner continues to engage in conjecture, and the remote evidence he claims should have been discovered and presented to the trial court still does not meet the minimum threshold in California for admitting evidence of third party culpability that would tend to exculpate Petitioner. *See People v. Avila*, 38

10

Cal.4th 491, 576-78, 43 Cal. Rptr. 3d 1 (2006) ("evidence which produces only speculative inferences is irrelevant"); *People v. Alvarez*, 14 Cal 4th 155, 201, 58 Cal. Rptr. 3d 385 (1996); *People v. Babbitt*, 45 Cal. 3d 660, 682, 248 Cal. Rptr. 69 (1988). Petitioner has not shown that Ryan went to the Lisker residence on the morning of the murder. Even if he could show this, that would not show that Petitioner did *not* commit the murder.

The motive for this vicious and horrendous "overkill" -- committed with multiple types of weapons on a small, elderly lady -- was not theft, but rather hatred and rage. There was no evidence that Ryan had ever displayed any animosity toward Mrs. Lisker or that he had any animus against her. There is nothing in the purported motive or alias evidence that would distinguish Ryan from any other person in Los Angeles who needed some money that morning. And even if Ryan did obtain money unlawfully that morning and then took steps to avoid detection, he could have done so in any number of ways and at any number of places in Los Angeles County, thereby arguably proving a reason for him to check in to a motel under an assumed name.

Petitioner posits that evidence of Ryan's having checked into a motel in Hollywood on the day of the murder under an alias is suspicious because it shows he wanted to elude detection. He theorizes that Ryan's sudden decision not to stay in California but to return immediately to Mississippi also shows that he was trying to escape from something, and hypothesizes that his having obtained money from some unknown source to pay for the return bus trip shows that he must have done something that prompted him to flee. Finally, he postulates that a phone call made to a number that is different than the phone number for Ryan's mother was so close to her number that it might have been Ryan trying to call his mother, or using this as a pretext to get into the Lisker residence.

But none of these conjectures link Ryan to the actual perpetration of the murder of Mrs. Lisker. They point only remotely to a possible motive or a

1  conceivable opportunity or an imaginable consciousness of guilt after having

2  committed some theft or robbery somewhere in the County of Los Angeles. These

3  facts do not add up to relevant evidence to show third-party complicity, since they

4  would merely show "a *possible* ground of *possible* suspicion." *People v. Hall*, 41

5  Cal.3d at 832; italics added; *see also People v. Sandoval*, 4 Cal. 4th 155, 176, 14 Cal.

6  Rptr. 2d 342 (1992); *People v. Edelbacher*, 47 Cal. 3d 983, 1017-18, 254 Cal. Rptr.

7  586 (1989); *People v. Babbitt*, 45 Cal.3d at 684.

8      Ryan may well have had other reasons to lie to the police about the time that

9  he registered into the motel in Hollywood, and he may have obtained money from any

10  number of legitimate or illegitimate sources to pay for his return trip to Louisiana.

11  Indeed, by pointing to evidence that money was found in Mrs. Lisker's wallet,

12  Petitioner has proven that Ryan did not obtain his money from Mrs. Lisker and has

13  also shown that the motive for killing Mrs. Lisker was not robbery.

14      Hence, Petitioner's leap of logic -- that Ryan must have gotten money from

15  Mrs. Lisker because he told her the night before the murder that he needed money,

16  and because Ryan had money with which to purchase a bus ticket back to Mississippi

17  the day after the murder -- must fail.  In addition, Ryan may have had any number of

18  reasons to depart and travel back to Louisiana, and any argument that it might have

19  been an attempt to avoid being arrested for the murder of Mrs. Lisker is utterly

20  speculative.  And even if Ryan were involved some way as Petitioner's  accomplice,

21  that would not exclude Petitioner's status as principal.

22      Moreover, there is no evidence whatsoever to demonstrate that Ryan had any

23  motive to kill Dorka Lisker with two knives, an exercise bar, a trophy, and a rope.

24  No evidence has been presented to show that he had ever fought with her or had ever

25  said anything bad about her.  No evidence has been presented to indicate why, if he

26  actually did try to take money from her and she caught him, he would not simply

27  leave, or if she confronted him and he felt he needed to prevent her from calling the

28  police by knocking her out or even by killing her, why he would not simply kill her

1    with one knife, instead of two, or just with the bullworker.

2    That Ryan might have had a temper does not show identity.  That he was in

3    the Los Angeles area on the morning of the murder does not show identity.  That he

4    was Petitioner's former friend and roommate does not show identity.  That he had

5    done yard work for Mrs. Lisker in the past does not show identity.  And that he went

6    to the Lisker residence the night before the murder to use the telephone does not show

7    identity.

8    Ryan had no motive to *kill* Mrs. Lisker – much less to commit such an

9    "overkill" with *two* knives, an exercise bar, a trophy, and a rope -- if he was there

10   only to steal money from her.  The crime was much more consistent with a rage-

11   killing by a violent, out-of-control drug-addicted teenager.  Moreover, if Ryan

12   borrowed or stole money from someone to return to Mississippi, it was not from Mrs.

13   Lisker, since money was found in a compartment of Mrs. Lisker's wallet, and since

14   Petitioner admitted having taken other money from the same wallet and having

15   hidden it in the attic.

16   What is more, there was a complete lack of eyewitness testimony placing

17   Ryan at the scene of the crime.  There were no eyewitnesses who said they saw Ryan

18   enter or leave the Lisker residence that morning.  At no time did Petitioner ever tell

19   defense counsel that he saw someone else leaving the house after he arrived on the

20   morning of the murder, and ll the evidence recovered at the scene shows that the

21   murder was committed by Petitioner.  (Hg. RT 27.)

22   There was no forced entry, and the front door was locked.  The murder was

23   carried out with multiple weapons and showed unmistakable signs of overkill,

24   committed out of hatred, in a fit of rage, apparently triggered by Petitioner's mother's

25   refusal to give him money for drugs.  Furthermore, valuable items were left behind

26   in the house, there was no ransacking, and no one was seen leaving the residence at

27   or after the time that, according to the deputy coroner, the victim was receiving the

28   fatal blows, i.e., the blows and stab wounds that would have lead to immediate death

1   if resuscitation had not taken place within 20 minutes.  (RT at 1117-20.)

2         Moreover, the murderer took the time to place rope around the victim's neck

3   and to carry the bloody Bullworker all the way back to the master bedroom, to wipe

4   off the fingerprints with a towel, and to neatly place it in corner.  Those are not the

5   actions of a thief who kills upon being suddenly and unexpectedly discovered and

6   confronted by the victim.  No thief would go to the trouble of returning an exercise

7   bar to its proper place in the farthest room of the house from the entry way after

8   bashing in the skull of his victim.  (RT at 1120-21.)

9         Thus, there was no physical evidence connecting Ryan to the crime scene.

10   Petitioner has made no showing that the trial court would have admitted conjectural

11   evidence as to third party involvement over the prosecutor's inevitable objections that

12   such evidence was hearsay, irrelevant, confusing, and unduly prejudicial.  *See* Cal.

13   Evid. Code, §§ 350, 352; *see generally Holmes v. South Carolina*, 547 U.S. at 326-27

14   (upholding "well-established rules of evidence [that] permit trial judges to exclude

15   [third-party guilt] evidence if its probative value is out-weighed by certain other

16   factors such as unfair prejudice, confusions of the issues, or potential to mislead the

17   jury"); *Harding v. Sternes*, 380 F.3d 1034, 1048 (7th Cir. 2004); *Clayton v. Gibson*,

18   199 F.3d 1162, 1178 (10th Cir. 1999) (rejecting IAC claim because "there is not a

19   shred of credible evidence, either direct or circumstantial, linking [third parties] to the

20   murder").  Thus, statements from Ryan's interviews would have been ruled irrelevant

21   hearsay, as would have been the motel receipt under the name Mark Smith and

22   Ryan's criminal record, unless Ryan testified.  (RT 2-13.)  In addition, the telephone

23   bill, while curious or interesting, was not relevant to any material issue.  *See O'Brien

24   v. Marshall*, 453 F.3d 13 (1st Cir. 2006) (third-party-culpability evidence may not be

25   based upon hearsay); *Bowling v. Parker*, 344 F.3d 487, 505 (6th Cir. 2003) (counsel

26   not derelict for failing to investigate a "farfetched" theory that another suspect, whose

27   only connection to the murder was "tenuous," was the killer); *Johnson v. Alabama*,

28   256 F.3d 1156, 1180 (11th Cir. 2001).

14

1  In sum, Petitioner has not shown that the trial court would have denied the
2  prosecutor's in limine motion had he made the arguments he now makes.

3  **C.  Counsel's Tactical And Ethical Decisions Before Second Trial**

4  The first trial was aborted when Petitioner decided to halt it, to plead guilty,
5  and to admit a factual basis for the plea.  At the hearing on the plea, defense counsel
6  expressly stated that he had discussed the case with Petitioner, that he had
7  "thoroughly investigated this case, *talking to many witnesses, including . . . Ryan*, .
8  . . and based on everything. [he] concur[red] in [Petitioner]'s desire to enter this
9  plea." (Ex. 93 at 2-3; *see* Hg. RT at 34, 37-38.)  When Petitioner was reminded that
10 he was admitting he was "in effect, . . . saying [he was factually] guilty," he stated
11 that he understood, and when he was asked if he was pleading guilty "because in truth
12 and in fact you are guilty," he answered, "Yes." (Ex. 93 at 8, 10; *see* Hg. RT at 39.)

13 Defense counsel stipulated to a factual basis for the plea because it was a
14 plea "based on factual guilt." (Hg. RT at 38-39; Ex. 93 at 10.)  The trial court stated
15 to Petitioner, "I have listened and watched you.  There is no doubt in my mind that
16 you understood exactly what was happening this afternoon.  [¶]  There is certainly not
17 the slightest doubt there is a factual basis for this plea, and it is a proper plea." (Ex.
18 93 at 11; *see* Hg. RT 39.)  The trial court complimented defense counsel on the fine
19 job he had done for Petitioner, including "the best [motions] I have seen." (Ex. 93 at
20 12; *see* Hg. RT 21.)

21 Defense counsel discussed the details of the case and trial strategy many,
22 many times with Petitioner and with Petitioner's father; at no time did Petitioner ever
23 tell defense counsel that he was innocent, and at no time did Petitioner's father ever
24 object to the entry of the guilty plea.  (Hg. RT at 23, 25-27, 37, 39, 41, 58, 120.)
25 Petitioner "never denied" killing his mother.  (Hg. RT at 43; *see also* Hg. RT at 39.)
26 Indeed, defense counsel testified that if in fact Petitioner had insisted at any time that
27 he was innocent, defense counsel would never had advised him to plead guilty to a
28 murder he did not commit.  (Hg. RT at 36-37, 39.)

15

1　　　　　After Petitioner was sent to the California Youth Authority (CYA) for a 90-

2　day diagnostic evaluation, he explained to several staff psychologists, counselors, and

3　Dr. Legassick why he committed the horrendous matricide, he described in detail how

4　the altercation started and how he murdered his mother, and he stated unequivocally

5　that he deliberately tried to make it look like -- and to tell the police that -- Ryan had

6　done it.  (Ex. 96.)  Petitioner  stated to the parole board in 2007 that he revealed all

7　these facts because his attorneys had advised him to lie so that he would be found

8　amenable to treatment and accepted by the CYA.  (Ex. 157 at 92-93.)  However,

9　defense counsel adamantly denied this, testified that he *never* told Petitioner to lie,

10　to falsely say he was guilty, to say he was not innocent, to feign responsibility, or to

11　pretend to be remorseful, and vehemently testified that the only instruction he gave

12　him was to be truthful, honest and candid.  (Hg. RT at 43-45.)

13　　　　　Petitioner's conduct and statements after the guilty plea gave defense counsel

14　good reason not to conduct any further investigation into an alternate-perpetrator

15　theory, knowing from Petitioner himself that no forensic evidence could place Ryan

16　at the scene.[3]  In light of Petitioner's guilty plea and highly detailed and incriminating

17　statements to Robert Hughes, to the probation officer, to Dr. Legassick, and to the

18　CYA – and especially his statements about how he tried to make it look like Ryan did

19　it -- defense counsel was neither professionally nor ethically bound to suborn perjury

20　or to investigate and present evidence to support a theory that he knew not to be true.

21　What is more, defense counsel realized, after seeing how "upset" and "angry" the trial

22　

23　

24　　　　　3.  At the evidentiary hearing, Ms. Sarkis testified that she asked Mr. Mulcahy
to obtain a footprint expert.  (Hg. RT 100, 102.)  Defense counsel did obtain a blood-

25　spatter expert.  (CT 238-48.)  However, defense counsel obviously decided, after
having read and considered Petitioner's multiple and detailed confessions, that a

26　footprint expert would lead nowhere, and he also knew that the crime scene had been

27　visited and therefore contaminated to some extent by several law enforcement
personnel, such as police officers, police detectives, paramedics, photographers, and

28　forensic technicians.

1    court was (once it read Petitioner's descriptions of how and why he carried out the

2    matricide) that no further effort should be expended on a futile effort to seek

3    admission of third-party-liability evidence at the second trial. (Hg. RT at 40-41, 46-

4    47.)

5        Thus, defense counsel obviously made a strategic decision "after reviewing

6    the detailed explanation in the CYA preport as to how [Petitioner] killed his mother"

7    that it would not be fruitful to continue the investigation and that the better course of

8    action was to continue with a reasonable-doubt defense. (Hg. RT 19-21, 46, 47-49.)

9    He therefore decided to forego a third-party-culpability defense at the second trial,

10   after Petitioner had pled nolo contendere and had confessed regarding his attempt to

11   make it look like someone else had committed the murder. (Hg. RT 46-47.) The

12   defense of third-party-liability was deliberately abandoned at the second trial as a

13   matter of trial tactics, partly due to defense counsel's ethical obligations, and partly

14   because defense counsel knew that no amount of searching could produce any

15   evidence linking Ryan to the murder. (Hg. RT at 19-21, 27-28, 34, 46-47, 49.)

16   Counsel knew this because his client said so, repeatedly, to several people.

17       Defense counsel also knew from Petitioner's confessions and from his

18   discussions with Petitioner that a third-party-culpability defense was not only not

19   viable, but could not be presented without putting Ryan or Petitioner or both on the

20   stand to testify. Calling Ryan to testify could have led to disastrous results for

21   Petitioner. (Hg. RT 34.) Even if Ryan had been involved tangentially and was at the

22   scene on the morning of the murder, he would have been a witness or possibly an

23   accomplice and could therefore provide devastating and explosive incriminating

24   testimony of Petitioner's active participation that would conclusively demonstrate

25   Petitioner's guilt. (Hg. RT 19-20, 28-30, 34, 47.)

26       Thus, in assessing defense counsel's pre-trial performance regarding his

27   efforts to investigate the possibility of Ryan's involvement, it is quite plausible to

28   consider and evaluate another obvious and highly relevant possibility: that Ryan, if

17

1   involved at all, was Petitioner's accomplice.  *None* of the evidence presented at the

2   actual innocence hearing eliminated the possibility that Ryan was merely present

3   when Petitioner murdered his adoptive mother and then fled.  Thus, even if the

4   completely speculative evidence accurately implicated Ryan in any way, it would

5   show only that Ryan was merely Petitioner's accomplice, acting in concert with

6   Petitioner, or acting as an astonished, and then frightened, eyewitness who then fled

7   upon witnessing the "overkill."  In short, calling Ryan would have been a reckless

8   tactical choice, with the potential to eliminate any doubt, reasonable or not, of

9   Petitioner's guilt in the eyes of the jury.

10          Even worse, having Ryan or Petitioner testify would have involved defense

11   counsel in the presentation of false evidence and of suborning perjury, based on what

12   he knew from Petitioner's confessions.  (Hg. RT at 21-22, 47.)  Defense counsel

13   admirably opted not to even consider such a breach of ethics.  *See Nix v. Whiteside*,

14   475 U.S. 157, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986); *United States v. Omene*, 143

15   F.3d 1167, 1170-72 (9th Cir. 1998)).  Moreover, placing Petitioner on the witness

16   stand would have exposed him to devastating cross-examination and to Ryan's

17   accusatory and incriminating testimony in rebuttal (*see Rodriguez v. United States*,

18   286 F.3d 972, 984 (7th Cir. 2002); *Milone v. Camp*, 22 F.3d 693, 705 (7th Cir. 1994);

19   *Guzzardo v. Bengston*, 643 F.2d 1300, 1305 (7th Cir. 1981)) and would have

20   permitted the prosecution to introduce Petitioner's multiple, damaging confessions

21   in rebuttal (*see Winfield v. Roper*, 460 F.3d 1026, 1033-35 (8th Cir. 2006); *Sayre v.*

22   *Anderson*, 238 F.3d 631, 634-35 (5th Cir. 2001); *United States v. Martinez*, 883 F.2d

23   750, 755 (9th Cir. 1989).

24          Therefore, defense counsel wisely chose to present a defense of reasonable

25   doubt.  (Hg. RT at 48-49.)  It is true that before commencement of the second trial,

26   defense counsel sought admission of Petitioner's March 29, 1983 letter (Exhibit 86

27   at 144) and April 1, 1983 statements (Exhibit 86 at 137-43) to Detective Monsue

28   regarding Ryan's complicity.  (RT at 2-13; Hg. RT at 46.)  Presenting this letter to the

trial court without further information or hard evidence to back it up, however, did not show less than vigorous or "half-hearted" advocacy. *See Aguilar v. Alexander*, 125 F.3d 815, 820-21 (9th Cir. 1997) (the degree to which a position is aggressively pursued is a matter of strategy, tactics, and style, but does not necessarily show ineffectiveness). Defense counsel has made it clear that the reason he did so was to preserve the issue of the admissibility of third-party culpability for appeal. (Hg. RT at 45-47.)

In this proceeding, the question for the Court is not whether the state courts denial of Petitioner's claim was correct. It is whether that adjudication was objectively reasonable. The record befor the Court, including the evidentiary hearing, shows that the Los Angeles County Superior Court properly and reasonably found no basis for the claim of ineffective assistance of trial counsel. The trial court noted that when defense counsel was preparing to try the case, Petitioner entered a guilty plea, and then admitted to staff members at the California Youth Authority that he did kill his mother. The Superior Court refused to conclude that defense counsel's representation was deficient in any way, and it expressly found that Petitioner had "more than his day in court," was well "represented by counsel at the trial," and that "nothing in the lengthy petition gives this court any reason to grant the writ." (MTD Ex. I.)

### D. Conclusion

In sum, Petitioner has failed to demonstrate that his attorney was negligent in investigating or presenting the third-party-culpability to the trial court. He has not shown that the trial court would have permitted this highly speculative and irrelevant evidence to be introduced. He has failed to sustain his burden of demonstrating that counsel's decisions were not guided by reasonable tactical and ethical decision-making in light of the facts and circumstances known to him at the time. *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

*Strickland* itself establishes a *presumption* that the challenged actions of

1  counsel might be considered sound trial strategy. *Strickland v. Washington*, 466 U.S.

2  668, 689, 699, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  And "[w]hen a defendant

3  has given counsel reason to believe that pursuing certain investigations would be

4  fruitless or even harmful, counsel's failure to pursue those investigations may not

5  later be challenged as unreasonable."  *Id.* at 691.  Petitioner has not shown that

6  defense counsel's decisions were not informed by reasonable strategic decisions and

7  driven by severe evidentiary and ethical constraints.

8       Here, defense counsel had every reason to conclude that pursuing an

9  alternative suspect defense would be futile.  *See Ames v. Endell*, 856 F.2d 1441,

10 1444-45 (9th Cir. 1988) (noting that the duty to investigate is dependent upon the

11 facts known to the attorney at the time, and there is no need to investigate what

12 hypothetically *might* have happened factually).  "Strategic theories made after less

13 than complete investigation are reasonable precisely to the extent that reasonable

14 professional judgments support the limitation on investigations." *Wade v. Calderon*,

15 29 F.3d 1312, 1316 (1994).  Thus, "a particular decision not to investigate must be

16 directly assessed for reasonableness in all the circumstances, applying a heavy

17 measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S.

18 at 691; *see also Wiggins v. Smith*,  539 U.S. 510, 522, 123 S. Ct. 2527, 156 L. Ed. 2d

19 471 (2003).  Tactical choices  may be based on the defendant's own statements or

20 actions, and when the defendant indicates that a certain investigation would be futile,

21 counsel's failure to investigate   may not later be challenged as unreasonable.

22 *Strickland v. Washington*, 466 U.S. at 691; *Royal v. Taylor*, 188 F.3d 239, 245-49

23 (4th Cir. 1999) (not investigating whether the defendant fired the fatal shot was

24 appropriate, given defendant's confession that he did); *Wilson v. Henry*, 185 F.3d

25 986, 989 (9th Cir. 1999).

26 / / /

27 / / /

28 / / /

1    A finding of a tactical purpose is a finding of fact.  *Edwards v. LaMarque*,

2    445 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  The existence of a strategic choice

3    should appear "in the record."  *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.

4    1994).  Here, Petitioner's trial counsel has set forth valid tactical reasons for not

5    pursuing the third-party-liability defense. *See Goodman v. Bertrand*, 467 F.3d 1022,

6    1029 (7th Cir. 2006).

7    Defense counsel must play the cards he is dealt, which in this case was (1) a

8    heinous "overkill"-type murder not at all characteristic of that committed during an

9    ordinary burglary, but committed in a fit of rage and hatred, and (2) a client who had

10   pled guilty, had confessed multiple times, and had admitted trying to frame Ryan.

11   Petitioner has failed to show that a reasonably diligent and competent attorney

12   inevitably would have continued to pursue and follow through with further

13   investigation on a lead that had no reasonable chance of providing exculpatory

14   evidence.  It must be remembered that counsel's performance must be evaluated from

15   the perspective he had at the time, in light of all the circumstances that were present

16   then.

17   Deference is owed to trial counsel's decision not to do so, and additional

18   deference is owed to the state court's determination that defense counsel's decision

19   did not fall below the objective standard of counsel competence (28 U.S.C. §

20   2254(d)).  To prevail, Petitioner must show the counsel's defective performance

21   probably affected the verdict, not just that it impacted the trial court's ruling on a pre-

22   trial motion in limine.  To demonstrate that the outcome of the trial would have been

23   different, Petitioner must show that, even if the trial court had denied the prosecutor's

24   motion and had allowed Petitioner to attempt to present evidence of third-party

25   liability, the evidence would have been admissible under the state's evidentiary rules

26   and would have influenced the verdict.

27   / / /

28   / / /

21

1    Petitioner has failed to show that counsel's alleged deficiencies probably

2 affected the outcome at trial.  The evidence of Petitioner's guilt was particularly

3 strong, and any evidence of Ryan's complicity would not have excluded Petitioner

4 from being a principal.  (Cal. Penal Code § 31.)  The claim of ineffective assistance

5 of counsel must be rejected.

6    Dated:  November 21, 2008

7                          Respectfully submitted,

8                          EDMUND G. BROWN JR.
                           Attorney General of the State of California
9
                           DANE R. GILLETTE
10                          Chief Assistant Attorney General

11                          PAMELA C. HAMANAKA
                           Senior Assistant Attorney General
12
                           KRISTOFER JORSTAD
13                          Deputy Attorney General

14                          JOHN YANG
                           Deputy Attorney General
15

16                          **/s/ Robert David Breton**
                           ROBERT DAVID BRETON
17                          Deputy Attorney General
                           Attorneys for Respondent
18

19 RDB:lds
   LA2004FH0213
20 Lisker Post Evidentiary Brief.wpd

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Lisker v. Knowles**

Case No.:   **CV-04-02687-VAP (RZ)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On November 21, 2008, I served the attached **POST EVIDENTIARY HEARING BRIEF** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Suite 1702, Los Angeles, CA 90013, addressed as follows:

William J. Genego
Attorney at Law
Nasatir, Hirsch, Podberesky & Genego
2115 Main Street
Santa Monica, CA 90405
Counsel for Petitioner Bruce E. Lisker

Vicki I. Podberesky
Nasatir, Hirsch, Podberesky & Genego
2115 Main Street
Santa Monica, CA 90405
Counsel for Petitioner

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on November 21, 2008, at Los Angeles, California.

Linda Sarenas
Declarant

Signature

LA2004FH0213
50342722.wpd