1  William J. Genego (Calif. Bar No. 103224)
   wgenego@gmail.com
2  Vicki I. Podberesky (Calif. Bar No. 123220)
   Nasatir, Hirsch, Podberesky & Genego
3  2115 Main Street
   Santa Monica, California 90405
4  Telephone:  310-399-3259

5  Counsel for Petitioner
   Bruce Lisker

6

7

8                    United States District Court

9                    Central District of California

10                        Western Division

11
   Bruce E. Lisker,                    )      **Case No. CV 04-02687-VAP(RZ)**
12                                      )
        Petitioner,                     )
13                                      )      Petitioner's Post-Hearing Memorandum
        vs.                             )
14                                      )
   Michael Martel,  Warden, Mule        )
15 Creek State Prison,                  )
                                        )
16        Respondent.                   )
                                        )
17  _____

18

19        Petitioner Bruce Lisker, by counsel, submits the following memorandum to

20  address the evidence presented at the October 31, 2008 hearing and its impact on

21  his ineffective assistance of counsel claim that is presented as Ground Two of his

22  pending habeas petition.

23                              Respectfully submitted,

24                              Nasatir, Hirsch, Podberesky & Genego

25  Dated: November 21, 2008

26                              //s//William J. Genego
                                William J. Genego
27                              Vicki I. Podberesky

28                              Counsel for Petitioner Bruce Lisker

1    **I.   Introduction**

2         Ground Two of Mr. Lisker's petition alleges he was denied the effective

3    assistance of counsel by his trial counsel's errors in opposing the prosecutor's

4    motion to preclude the defense from "rais[ing] [the] issue of Michael Ryan," both

5    when the motion was made initially, and when it was renewed prior to the

6    second trial.  RT 389.  Petitioner's traverse and his memorandum in response to

7    the Court's "Order Re Evidentiary Hearing," categorized counsel's errors into

8    two types: (1) his failure to make arguments in opposing to the motion that were

9    supported by evidence already in his possession and (2) his failure to conduct

10   investigation that would have produced further evidence and argument

11   supporting the denial of the prosecutor's motion.  Doc 168, pp. 59-62 (Traverse);

12   Doc 175, pp. 3-4 (Memorandum).

13        Respondent requested an evidentiary hearing on this claim.  Doc 172

14   ("Respondent's Notice of Motion and Motion For Evidentiary Hearing").

15   Petitioner opposed the motion, and submitted a further evidentiary hearing was

16   not required.  Petitioner maintained that because counsel had, in fact, opposed

17   the motion but simply had failed to do so competently, there were no plausible

18   reasons that would have justified counsel's errors.  Doc 176.

19        Respondent disagreed, asserting that "[a]lthough defense counsel may have

20   attempted to obtain and present evidence of third-party culpability before

21   Petitioner's *first* trial, it is *not* clear that he had decided not to forego such a

22   defense at the *second* trial . . . ."  Doc 177, p. 1, Respondent's "Reply to Opposition

23   To Motion For Evidentiary Hearing" (emphasis in the original).  Respondent

24   argued an evidentiary hearing was therefore required to determine whether "the

25   defense of third-party liability was deliberately abandoned at the second trial as a

26   matter of trial tactics . . . ."  Doc 177, pp.1.  Respondent suggested such a decision

27   might have been made "partly due to defense counsel's ethical obligations, , and

28   partly because defense knew that the prosecution could easily rebut such

1  evidence with other evidence that was available at the time of trial, but which no

2  longer exists today due to Petitioner's delay." Doc 177, pp. 1-2.  Respondent also

3  suggested a hearing was necessary to determine whether defense counsel might

4  have "investigated" and made a decision not to present "speculative evidence of

5  dubious relevance or questionable admissibility . . ."  Doc 177, p. 2.

6

7  **II. Evidence**

8      A. <u>State Court Proceedings</u>

9          1.  *The Initial Motion*

10     Prior to the original trial, the prosecutor advised the court that "in terms of

11 motions" there was a question as to "whether the defense can raise this issue of

12 Michael Ryan."[1]  RT 389.  The prosecutor then made reference to the "April 1st

13 meeting [in which] Bruce Lisker told Detective Monsue that he thought that this

14 Michael Ryan possibly committed the crime."  *Id*.  Defense counsel proceeded to

15 oppose the prosecutor's motion and noted that he had been provided a tape of

16 Detective Monsue's interview of Michael Ryan that "was out of state."  RT 390.

17     In opposing the motion defense counsel made the following points:

18     (1) Ryan could be placed at the location "the day before by his own

19 statements."  In making this point counsel quoted Ryan's statement to Detective

20 Monsue that "I stopped by Mrs. Lisker's house to use her phone and to see how

21 she was, you know, and I was going to ask her if she had some work for me to

22 do."  RT 390, 391;

23     (2) Ryan had asked Mrs. Lisker for money and the money Robert Lisker had

24 given Mrs. Lisker had not been found and it was not in Petitioner's possession.

25 _____

26     [1]  The prosecutor's reference to "this issue of Michael Ryan" apparently relates
   back to a discussion at pages 384 to 388 of the transcript and and occurred in

27 connection with the motion to suppress Petitioner's alleged statement to Robert
   Hughes.

28

1   Further, counsel noted that it appeared from Detective Monsue's interview of

2   Ryan that Detective Monsue did not think it was possible Ryan could have "left

3   the next day and how he got to where he got to with just the money" he had, RT

4   390-91, 393 ;

5       (3) Ryan previously had problems with Mrs. Lisker, RT 391, 398;

6       (4) Ryan said he had a knife ("He talks about on page 9 of my transcript that

7   he had a knife.") RT 390; and

8       (5) Detective Monsue's statement to Petitioner that "the footsteps only went

9   one way" was not inconsistent with Petitioner's story that he had gone in and out

10  of the house because "Bruce went in and he came out the other way."  RT 394.

11      In the course of the argument, he noted that he had "a private investigator

12  also contact Ryan," but that by the time his "private investigator contacted Ryan,

13  he was out of state.  He was in San Fransciso," implying that the private

14  investigator had not in fact been able to interview Ryan.  RT 391.  Counsel next

15  made reference to an interview that did occur, noting that "[t]here were two

16  private investigators present during that interview."  RT 391.  Moments later he

17  made reference to "what Ryan has said," and noted "I am just going on what"

18  Ryan said in the Monsue interview and offered to provide the court with a

19  transcript of the interview "if the Court wishes to have it . . ."  RT 391.

20      In issuing its ruling, the court advised defense counsel that "if there is any

21  evidence you think could be brought on this issue that you would want an in

22  camera proceeding with the court only, of course[] [w]e would do that, of course,

23  and listen to that."  RT 397.  The court then said "I got the impression the

24  evidence is the tape that the prosecution gave you," and asked "[i]s there any

25  other evidence?," to which defense counsel responded, "[n]othing that I can

26  think of at this particular time."  RT 397-98.

27      The court proceeded to grant the prosecutor's motion under Evidence Code

28  section 352, on grounds that "the probative value certainly is outweighed by the

1  undue prejudice."" RT 399.  After issuing its ruling, the court added, "[i]f you

2  have any other evidence at any time, we will get into this again."  RT 399.

3  Counsel responded that he "would just at this time  not make any statements

4  with respect to Michael Ryan" and if he had something further to present in

5  support of his position he would ask the court "to reconsider" its ruling.  RT 399.

6        2.   *The Renewed Motion*

7        Prior to the second trial, the court announced that it was "prepared to make

8  the same rulings I did last time" on the pretrial motions, including what the court

9  referred to as the district attorney's "desire to keep out part of what the defense

10  would like to put on as to Michael Ryan . . . RT 1-2. The court then made

11  reference to the admissibility of testimony about the blood spatter evidence and

12  added, "There was another issue as to a letter?"  RT 2.

13        The prosecutor responded that there "was mention made of that," referring

14  to the letter, and remarked that the reference to the letter "was not made

15  extremely clear in looking over the transcript . . ."  RT 2.  The prosecutor then

16  made reference to Augmented Transcript B, and noted that the discussion

17  concerning the letter and the April 1st interview began on page 65.  RT 2.[2]

18        The prosecutor went on to clarify the "ramifications" of his motion, one being

19  that there would be no "mention of Michael Ryan either on cross-examination of

20  Monsue or through any other evidence ast this point." RT 3.  He then referenced

21  the March 29 letter Petitioner had written Detective Monsue and Petitioner's

22  statements to Monsue in the April 1st interview mentioning Ryan, and said "I am

23  moving to exclude that both for the reasons that I mention in my argument about

24  Michael Ryan.  It is the same argument plus it is also hearsay."  RT 3.

25

26

---

27     [2] Page B-65 of Augmented Transcript B corresponds to page RT 384 of the

28  transcript used in the evidentiary hearing of the same proceeding.

1   Defense counsel proceeded to read into the record Detective Monsue's notes

2   of Petitioner's statements to him during the April 1 interview. He explained he

3   was reading the interview statements rather than the March 29 letter, "Because

4   that's what we are basically talking about.  I am talking about the statements of

5   Bruce [to Monsue on April 1st] coming in."  RT 4.  After reading the statements as

6   recorded by Detective Monsue into the record, defense counsel argued they

7   should be admitted because they were exculpatory and also because they

8   incriminated Ryan.  Defense counsel pointed out that the statements

9   corroborated other evidence that had been proffered incriminating Ryan and also

10  added further information that made it more likely Ryan had committed the

11  crime.  RT 10.

12  After hearing further argument the court made the same ruling as it did

13  previously and expressly made its ruling applicable to the letter and Petitioner's

14  April 1st statements.  RT 12-13.

15  B.  Federal Court Evidentiary Hearing

16  Trial counsel acknowledged that he opposed the prosecutor's motion prior

17  to the first trial to preclude the defense from making any mention of Michael

18  Ryan as the perpetrator of the murder.  Evidentiary Hearing Reporter's

19  Transcript ("EHRT") 20.  Counsel did not suggest he consciously decided not to

20  make certain arguments or not to undertake investigation that would have

21  supported his opposition.  In fact, counsel testified that he presented the court

22  with all the investigation he had done.  EHRT 24.  After the judge granted the

23  prosecutor's motion he relied on a reasonable doubt defense.  EHRT 20-21, 49.

24  Trial counsel did not recall sending an investigator to obtain information

25  about the motel receipt, nor did he have a recollection of using it to support his

26  opposition to the prosecutor's motion.  EHRT 30, 62-63.

27  Counsel testified that he directed an investigator to go and locate and

28  interview Ryan but did not recall if the interview was completed.  EHRT 31.  He

1   later acknowledged that he had no independent recollection of having directed

2   an investigator to interview Ryan and that his testimony that he had done so

3   was based on what he read in the transcript.  EHRT 73.

4        Counsel did not recall doing any investigation regarding the footprint

5   evidence, even though he had mentioned it in his argument.  EHRT 73.  He also

6   did not recall the autopsy photographs nor did he recall if he obtained a copy of

7   the Lisker telephone bill.  EHRT 53-59, 54-56 .  Counsel did acknowledge,

8   however, that a call minutes before the murder "would be something that I

9   would want to verify and check out to see if it's something I wanted to present."

10  EHRT 57.  Counsel testified that after the motion was granted prior to the first

11  trial, he conducted investigation into "Ryan's criminal background."  EHRT 32-

12  33.

13       Counsel testified that he "felt that no further investigation [of a third-party

14  culpability defense] was necessary after reviewing the detailed explanation in

15  the C.Y.A. report as to how Bruce had killed his mother."  EHRT 46.  When

16  asked if he "concluded that a third-party investigation would not be

17  reasonable," he responded, "I concluded that I would not be following my oath

18  of office if I further presented any testimony in that area that would be untrue."

19  EHRT 47.

20       When asked why he presented "the letter to" the court prior to the second

21  trial, he responded "I presented the letter to preserve the record for all the issues

22  on appeal."  EHRT 47.  Counsel added that after the C.Y.A. study, "I felt that Mr.

23  Lisker could not be called to testify.  If he would say anything different than

24  what he said to C.Y.A. because that would be suborning perjury."  EHRT 47.

25  When asked "is there any other reason [he] would present the letter and proffer

26  it to - - in support of either a third-party liability or a reasonable doubt defense,"

27  counsel testified that "I would present it and be hopeful that I could be allowed

28  to argue that position even if I did not have that witness testify to try to cast the

1  blame on another individual causing more reasonable doubt in my argument in

2  addition to attacking all the different things in the case to try to show doubt."

3  EHRT 48.

4      Counsel testified Petitioner never told him he committed the crime, but also

5  said Petitioner never denied it.  EHRT 43.    Investigator Sue Sarkis remembered

6  Petitioner denying killing his mother at a meeting at which trial counsel was

7  present.  EHRT 99.  Trial counsel did not recall meeting with Investigator Sarkis

8  and Petitioner at the same time and did not recall such a meeting where

9  Petitioner "protested his innocence."  EHRT 120.  Nor did counsel recall being in

10  Petitioner's "presence when he said he was innocent."  EHRT 120.

11

12  **III. Argument**

13      A.  <u>Counsel's Errors</u>

14          The specific failures of counsel alleged in support of Petitioner's IAC

15  claim are the following:

16              1.    Failed to failed to use or mention the motel receipt showing the

17  time Ryan had checked in or the alias he used or the cost of the room;

18              2.    Failed to tell the court Ryan lied about the time he checked into the

19  motel (10:00 a.m.), or explain the significance of that lie – *i.e.*, it would have given

20  him an alibi, and failed to bring out the even more incriminating fact that Ryan

21  offered the false 10:00 a.m. alibi even before being told the time the murder had

22  been committed;

23              3.    Failed to point out the suspicious reason Ryan gave for using an

24  alias, *i.e.,* he had been in a knife fight;

25              4.    Failed to bring out that Ryan's claim he used the alias because of

26  the knife fight was contradicted by his earlier statement that he had been in the

27  fight after checking into the motel;

28              5.    Failed to bring out that Ryan lied about why he came to California,

1    and lied about his suspicious return to Mississippi the day after the murder;

2          6.    Failed to investigate (or failed to use) the footprint evidence which

3    established evidence of an intruder;

4          7.    Failed to investigate (or failed to use) the patterned impression in

5    the autopsy photos;

6          8.    Failed to obtain (or failed to use) the Lisker telephone bill;

7          9.    Failed to investigate (or failed to use) Ryan's prior criminal record.

8        B.  <u>Counsel's Errors Were Objectively Unreasonable</u>

9        There are no grounds which can justify counsel's objectively unreasonable

10   errors in opposing the motion prior to the first trial.  Any argument that those

11   same errors prior to the second trial were justified on ethical grounds or for

12   tactical reasons fails for multiple independent reasons.

13       First, counsel continued to oppose the motion prior to the second trial and

14   continued to seek to introduce evidence that incriminated Ryan as the

15   perpetrator.  Indeed, counsel acknowledged this point in his testimony, when he

16   explained that he sought to have Petitioner's statements incriminating Ryan

17   admitted at the second trial so he "could be allowed to argue that position even

18   if I did not have that witness [Petitioner] testify to try to cast the blame on

19   another individual . . ." EHRT 48.  Thus, even though counsel (mistakenly)

20   believed Petitioner could not testify, he still intended to use his statements to

21   incriminate Ryan.

22       Second, investigation of the footprints, autopsy photos and the telephone bill

23   was warranted irrespective of the third-party culpability defense.  Counsel

24   admitted this point when he acknowledged a phone call minutes before the

25   murder "would be something that I would want to verify and check out to see if

26   it's something I wanted to present."  EHRT 57.  Consequently, counsel's failure to

27   conduct such investigation and use the resulting evidence prior to the second

28   trial cannot justified by concerns relating to the third-party culpability defense.

1    Third, counsel did not suggest he concluded prior to the second trial that a

2  third-party culpability defense was not factually viable or that he had decided

3  not to pursue it for other strategic reasons.  Instead, he explained that he

4  concluded that "no further investigation [regarding a third-party culpability

5  defense] was necessary"  because "if I presented any testimony in that area that

6  would be untrue."  EHRT 47.  Counsel's view that he could not ethically present

7  testimony from Petitioner in support of a third party culpability defense because

8  it "would be suborning perjury" or because it "would be untrue,"is not

9  supported by the record.  Petitioner's statements during the C.Y.A. study were

10  not under oath and could easily have been induced by  the desire to obtain a

11  sentence that would have resulted in his release by age 25 or 26.  Counsel was not

12  in a position to foreclose on ethical grounds the investigation into a viable

13  defense based on what he thought was true or untrue.

14

15  **IV. Conclusion**

16    For all the foregoing reasons and the additional reasons presented in

17  Petitioner's traverse, the Court should grant Petitioner relief on his ineffective

18  assistance of counsel claim as well as the other grounds presented by his petition.

19                                        Respectfully submitted,

20                                        Nasatir, Hirsch, Podberesky & Genego

21  Dated: August 21, 2008

22                                        //s//William J. Genego
                                          William J. Genego
23                                        Vicki I. Podberesky

24                                        Counsel for Petitioner Bruce Lisker

25

26

27

28