1

2                    UNITED STATES DISTRICT COURT

3                  CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION

4

5
     BRUCE E. LISKER,                )
6                                    )
          PETITIONER,                )
7                                    )
          VS.                        )   CASE NO. CV 04-02687-VAP(RZ)
8                                    )
                                     )
9    MICHAEL KNOWLES, WARDEN,        )
                                     )   LOS ANGELES, CALIFORNIA
10                                   )   NOVEMBER 27, 2006
                                     )   (10:30 A.M. TO 11:20 A.M.)
11        RESPONDENT.                )
     _____)
12
                            HEARING
13              BEFORE THE HONORABLE RALPH ZAREFSKY
                  UNITED STATES MAGISTRATE JUDGE
14

15

16
     APPEARANCES:              SEE NEXT PAGE
17
     COURT REPORTER:           TAPE RECORDED
18
     COURTROOM DEPUTY:         ILENE BERNAL
19
     TRANSCRIBER:              DOROTHY BABYKIN
20                             COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE
21                             GLENDORA, CALIFORNIA  91740
                               (626) 963-0566
22

23

24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

```
 1    APPEARANCES:  (CONTINUED)
      FOR THE PETITIONER:        NASATIR HIRSCH PODBERESKY & GENEGO
 2                               BY:  WILLIAM J. GENEGO
                                      ATTORNEY AT LAW
 3                               2115 MAIN STREET
                                 SANTA MONICA, CALIFORNIA  90405
 4
      FOR THE RESPONDENT:        OFFICE OF ATTORNEY GENERAL OF
 5                                 CALIFORNIA
                                 BY:  ROBERT D. BRETON
 6                                    JOHN YANG
                                 DEPUTIES ATTORNEY GENERAL
 7                               300 SOUTH SPRING STREET
                                 SUITE 5000
 8                               LOS ANGELES, CALIFORNIA  90012-1230

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          I N D E X
      CASE NO. CV 04-02687-VAP-(RZ)            NOVEMBER 27, 2006
2

      PROCEEDINGS:   PETITIONER'S MOTION TO FILE SECOND-AMENDED
3                    PETITION AND FOR RULING THAT FURTHER EXHAUSTION
                     IS NOT REQUIRED.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   LOS ANGELES, CALIFORNIA; MONDAY,NOVEMBER 27, 2006; 10:30 A.M.

2             THE CLERK:  CALLING CASE NUMBER

3   CV 04-02687-VAP(RZ), BRUCE E. LISKER VERSUS MICHAEL KNOWLES,

4   WARDEN.

5             COUNSEL, PLEASE MAKE YOUR APPEARANCES.

6             MR. GENEGO:  GOOD MORNING YOUR HONOR.

7             WILLIAM GENEGO, G-E-N-E-G-O, ON BEHALF OF THE

8   PETITIONER BRUCE LISKER.

9             THE COURT:  GOOD MORNING.

10            MR. BRETON:  GOOD MORNING, YOUR HONOR.

11            ROBERT DAVID BRETON, DEPUTY ATTORNEY GENERAL, WITH

12   JOHN YANG, DEPUTY ATTORNEY GENERAL, APPEARING ON BEHALF OF

13   RESPONDENT.

14            MR. YANG:  GOOD MORNING, YOUR HONOR.

15            THE COURT:  ALL RIGHT.  GOOD MORNING.

16            ALL RIGHT.  MR. GENEGO, THIS IS YOUR MOTION.  IT

17   SEEMS LIKE THE ONE POINT ON WHICH THE SIDES AGREE IS THAT THE

18   CLAIMS YOU WANT TO ADD ARE NOT EXHAUSTED.  SO, I GUESS YOU

19   SHOULD TAKE IT FROM THERE.

20            MR. GENEGO:  THAT IS CORRECT, YOUR HONOR.  AND I

21   THINK THAT THAT ALSO ANSWERS THE QUESTION OF WHETHER WE GET

22   TO AMEND BECAUSE THAT'S THE BASIS ON WHICH THEY'RE OPPOSING

23   IT.  THAT IT WOULD BE FUTILE BECAUSE THERE'S NO EXCEPTION TO

24   THE EXHAUSTION REQUIREMENT.

25            SO, IF WE OVERCOME THEIR ONE OBJECTION, WHICH IS

1    THAT IT WOULD BE FUTILE BECAUSE IT WOULD BE SUBJECT TO

2    DISMISSAL, EVEN THEIR OPPOSITION CONCEDES THAT WE GET TO

3    AMEND, WHICH I THINK IS THE POINT THE COURT WAS JUST MAKING

4    THAT THAT'S THE ISSUE THAT'S REALLY FRAMED BY THE MOTION AND

5    BY THEIR OPPOSITION.

6            THERE ARE THREE DIFFERENT REASONS THAT WE

7    IDENTIFIED IN THE MOTION AS TO WHY WE SHOULD NOT BE REQUIRED

8    TO EXHAUST.  AND IMPORTANTLY THE STATE ONLY DISAGREES AS TO

9    ONE OF THOSE.  AND SO EVEN AT THE OUTSET, GIVEN THAT THEY'VE

10   ONLY DISPUTED ONE OF THE THREE GROUNDS THAT WE SAY THAT WE

11   DON'T HAVE TO EXHAUST ON, THEY HAVE IMPLICITLY CONCEDED THAT

12   TWO OF THEM DO EXCUSE OUR EXHAUSTION, OR, AT LEAST, THEY MAKE

13   NO ARGUMENT WHATSOEVER AGAINST THOSE POSITIONS.

14           SO, EVEN IF THEY WERE RIGHT ON THEIR ONE GROUND

15   THAT THEY SAY WE'RE WRONG ABOUT, WE WOULD STILL BE ALLOWED TO

16   BE EXCUSED FROM EXHAUSTION.  I KNOW THAT'S A LITTLE

17   COMPLICATED BUT BASICALLY --

18           THE COURT:  NO, I UNDERSTAND THE MATH.

19           MR. GENEGO:  GOOD.  GOOD.  SO --

20           THE COURT:  BUT YOU'LL HAVE TO CONVINCE ME, NOT

21   THEM.

22           MR. GENEGO:  I -- I UNDERSTAND THAT.  BUT THAT --

23   THAT'S A BEGINNING, AT LEAST, IN TERMS OF SORT OF WHERE WE'RE

24   STARTING IN THE PAPERS.

25           THE FIRST BASIS ON WHICH WE DON'T HAVE TO EXHAUST,

1    WE'RE NOT REQUIRED TO EXHAUST, IS A STATUTORY ONE.  AND

2    THAT'S SECTION 2254(B)(1)(B) AND THEN A SMALL I.  AND FOR

3    THAT ONE THE QUESTION IS WHETHER THERE'S ANY RIGHT TO AN

4    AVAILABLE STATE PROCEDURE.  AND THAT IS THE ONE BASIS ON

5    WHICH THEY SAY THAT WE ARE REQUIRED TO EXHAUST BECAUSE THEY

6    TAKE THE POSITION THAT WE COULD STILL GO TO STATE COURT AND

7    TRY TO GET RELIEF.

8            THE QUESTION IS NOT WHETHER OR NOT WE COULD FILE A

9    PIECE OF PAPER IN STATE COURT AND SAY, PLEASE, HEAR OUR

10   CLAIM.  THE QUESTION IS WHETHER OR NOT MR. LISKER HAS THE

11   RIGHT TO ANY AVAILABLE STATE PROCEDURE.

12           AND I THINK THE THIRD CIRCUIT CASE WHICH INTERPRETS

13   THE SUPREME COURT CASE ON WHAT THAT PROVISION MEANS CORRECTLY

14   EXPLAINS THAT THE SUPREME COURT INDICATED BY ITS OPINION THAT

15   A PETITIONER ISN'T REQUIRED TO GO TO EXTRAORDINARY MEASURES

16   TO TRY TO EXHAUST.  THE SIMPLE FACT THAT STATE COURTS EXIST,

17   AND THEY WILL ACCEPT A PIECE OF PAPER CALLED "A PETITION FOR

18   WRIT OF HABEAS CORPUS" DOES NOT MEAN THAT THERE IS AN

19   AVAILABLE STATE PROCEDURE THAT YOU'VE GOT TO EXHAUST, THAT

20   YOU'VE GOT TO PURSUE.

21           AND I THINK THIS IS CRITICALLY IMPORTANT ALSO IN

22   TERMS OF THEIR OPPOSITION TO OUR ARGUMENT.  THEY ARE NOT

23   SAYING THAT WE HAVE -- THAT THERE IS AN AVAILABLE STATE

24   PROCEDURE THAT GIVES US THE RIGHT TO HAVE THE CLAIMS THAT WE

25   WANT TO HAVE HEARD -- OR THAT WE WANT TO INCLUDE IN THE

1    AMENDMENT HEARD.

2            WHAT THEY'RE SAYING IS THAT WE CAN GO TO STATE

3    COURT AND TRY TO MAKE AN EXTRAORDINARY SHOWING OF ACTUAL

4    INNOCENCE OR A MISCARRIAGE OF JUSTICE.  AND THEN IF WE'RE

5    ABLE TO GET OVER THAT EXTRAORDINARY SHOWING, THEN WE WOULD

6    HAVE AN AVAILABLE STATE PROCEDURE.

7            AND I THINK THAT THAT IS A VERY --

8            THE COURT:  DON'T THEY SAY EVEN MORE THAN THAT THAT

9    IF YOU COULD SHOW ACTUAL INNOCENCE, YOU'D HAVE A FREESTANDING

10    CLAIM IN STATE COURT?

11            MR. GENEGO:  THEY -- THEY DO SAY THAT.  AND, IN

12    FACT, STATE LAW DOES ALLOW FOR THAT, YOUR HONOR.  BUT, AGAIN,

13    THAT MIS- --

14            THE COURT:  WELL, IT'S NOT ONLY JUST A GATEWAY IN

15    STATE COURT, IT'S A SEPARATE CLAIM.

16            MR. GENEGO:  IT'S A SEPARATE CLAIM.  BUT THAT

17    REALLY IS NOT RELEVANT HERE BECAUSE THE ONLY QUESTION IS

18    WHETHER WE'RE REQUIRED TO EXHAUST THESE CLAIMS, NOT WHETHER

19    WE CAN GET RELIEF SOMEPLACE ELSE.  WE COULD ALSO GO TO THE

20    GOVERNOR AND ASK FOR A PARDON.  BUT THAT DOESN'T MEAN THAT

21    THAT'S AN AVAILABLE STATE PROCEDURE.

22            SO, THE FACT THAT THERE MIGHT BE SOME OTHER NOMINAL

23    CLAIM IN STATE COURT THAT WE COULD TRY TO PURSUE THAT MIGHT

24    ENTITLE MR. LISKER TO RELIEF DOES NOT MEAN THAT WE HAVE TO

25    EXHAUST THE CLAIMS THAT WE DON'T HAVE A RIGHT TO RELIEF FROM.

1          SO, THE FACT THAT THERE'S A RIGHT TO --

2          THE COURT:  ALL RIGHT.  SO, FOCUSING ON THE CLAIMS

3     THAT YOU BROUGHT HERE.

4          MR. GENEGO:  THE FALSE EVIDENCE AND THE CUMULATIVE

5     EVIDENCE, WHICH IS REALLY JUST THE ADDITION OF THE FALSE

6     EVIDENCE TO THE EXISTING CLAIMS.

7          THE COURT:  RIGHT.  AND YOUR ARGUMENT IS THAT THE

8     STATE CASES DO NOT ALLOW YOU THE RIGHT TO EXHAUST THOSE

9     CLAIMS IN STATE COURT.

10         MR. GENEGO:  OUR POSITION IS THAT WE WOULD HAVE TO

11    FIRST MAKE AN EXTRAORDINARY SHOWING THAT'S IMPOSSIBLE AS A

12    PRACTICAL MATTER.  AND THE REASON FOR THAT -- AND BECAUSE --

13    THERE'S TWO POSITIONS.

14         FIRST, BECAUSE WE HAVE TO MAKE THAT EXTRAORDINARY

15    SHOWING BEFORE WE HAVE A RIGHT TO GET THESE CLAIMS HEARD, THE

16    FALSE EVIDENCE CLAIM HEARD, THAT MEANS THERE IS NOT AN

17    AVAILABLE STATE PROCEDURE AS THAT TERM IS DEFINED IN

18    2254(B)(1)(B).

19         SECONDLY, YOUR HONOR, IS EVEN IF YOU DON'T -- EVEN

20    IF YOU WERE TO SAY, WELL, NO, THAT'S NOT RIGHT.  AS LONG AS

21    THAT PROCEDURE -- THE EXTRAORDINARY SHOWING THAT YOU CAN MAKE

22    IS AVAILABLE TO YOU, THEN THAT'S GOOD ENOUGH FOR THE STATUTE.

23         THAT'S NOT TRUE IN THIS INSTANCE BECAUSE IF YOU

24    LOOK AT THE DEFINITION THAT THE CALIFORNIA SUPREME COURT HAS

25    GIVEN TO THE SHOWING THERE, YOU'VE GOT TO PRESENT NEW

1    EVIDENCE ON AN ISSUE THAT WAS NOT DISPUTED AT TRIAL.  AND

2    BOTH OF THE -- THE FALSE EVIDENCE CLAIM CONCERNS ISSUES THAT

3    WERE DISPUTED AT TRIAL.  IT'S JUST THAT THERE'S EVIDENCE NOW

4    THAT PROVES THAT THAT EVIDENCE WAS FALSE.

5         SO, BY DEFINITION, A FALSE EVIDENCE CLAIM IS NEVER

6    GOING TO SATISFY THAT SHOWING.  AND THEY -- IT'S IN MY

7    FOOTNOTE IN THE BRIEF.  IF YOU LOOK AT IT IN FOOTNOTE --

8         THE COURT:  YOU PUT YOUR IMPORTANT POINTS IN

9    FOOTNOTES?

10        MR. GENEGO:  I DIDN'T KNOW IT WAS GOING TO BE THAT

11   IMPORTANT AT THE TIME.

12        (LAUGHTER.)

13        MR. GENEGO:  I WOULD HAVE ELEVATED IT TO THE TEST.

14        IT'S FOOTNOTE 7 THAT BEGINS ON 12.  AND I APOLOGIZE

15   FOR DOING THAT.  I KNOW IT'S A DISFAVORED PRACTICE RIGHTLY.

16        WE'VE GOT TO SHOW THAT IT'S ABOUT AN ISSUE THAT WAS

17   NOT DISPUTED AT TRIAL.  AND, SO, EVEN IF THE EXTRAORDINARY

18   SHOWING WAS SOMETHING THAT SATISFIED THE STATUTE AS AN

19   AVAILABLE STATE PROCEDURE, THE STATE COURT HAS DEFINED IT IN

20   A WAY THAT MAKES IT UNATTAINABLE OR INAPPLICABLE IN THIS CASE

21   TO A FALSE EVIDENCE CLAIM.

22        I WOULD ALSO SUBMIT THAT THE CALIFORNIA SUPREME

23   COURT HAS NEVER SUGGESTED THAT THESE EXTRAORDINARY REMEDIES

24   ARE AVAILABLE IN A NON-CAPITAL CASE.  AND, IN FACT, WHAT

25   THEY'VE SAID IS THAT THE DEATH IS DIFFERENT NOTION REALLY

1  FUELS THEIR REASON FOR CREATING THIS EXTRAORDINARY EXCEPTION.

2  AND THEY SAY THAT PLAINLY.

3       SO, IF YOU TAKE THEM AT FACE VALUE AND READ THE

4  OPINIONS, MR. LISKER DOESN'T HAVE A RIGHT TO GO BACK TO STATE

5  COURT UNDER THESE EXCEPTIONS BECAUSE IT'S NOT A CAPITAL

6  CASE.  NOW, MAYBE SOME DAY IN THE FUTURE THE CALIFORNIA

7  SUPREME COURT WILL BROADEN THAT EXCEPTION, BUT THEY CERTAINLY

8  HAVEN'T DONE THAT TODAY.

9       THE COURT:  DO YOU HAVE ANY EMPIRICAL READING ON

10  THAT?

11       MR. GENEGO:  ONLY MY OWN, WHICH IS A -- WHICH IS

12  ALL IN THE LOSS COLUMN.  I'VE NEVER BEEN SUCCESSFUL IN

13  GETTING THE MERITS OF AN OTHERWISE UNTIMELY OR SUCCESSIVE

14  CLAIM HEARD IN THE STATE COURT ON THE MERITS.

15       AND I DON'T MEAN TO SUGGEST THAT THAT'S EMPIRICAL

16  EVIDENCE THAT THE COURT COULD ACCEPT.  BUT I DON'T KNOW OF

17  ANY CASE.  AND THEY HAVEN'T CITED ANY EITHER.  AND THERE'S NO

18  REPORTED CASE, AS FAR AS I KNOW.  AND, AS I SAID, THE

19  CALIFORNIA SUPREME COURT HAS ALWAYS LIMITED IT TO CAPITAL

20  CASES.

21       THERE ARE ALSO THE TWO OTHER REASONS THAT WE DON'T

22  HAVE TO EXHAUST WHICH THEY DID NOT ADDRESS.  AND THE FIRST

23  ONE OF THOSE IS CAUSE.  AND THAT'S FROM THE WILLIAMS VERSUS

24  TAYLOR CASE.  THE SUPREME COURT SAID IF THE STATE DOESN'T

25  GIVE YOU AN EVIDENTIARY HEARING, THEY CANNOT COME BACK LATER

1    ON AND SAY, OH, SORRY, NOW YOU HAVE TO COME BACK AND EXHAUST

2    HERE.

3         AND THE REASON FOR THAT IS BOTH, I THINK,

4    EFFICIENCY AND FUNDAMENTAL FAIRNESS.  MR. LISKER WAS ONLY

5    ABLE TO DEVELOP THE EVIDENCE THAT SUPPORTS HIS FALSE EVIDENCE

6    CLAIM WHEN THIS COURT GRANTED HIS REQUEST FOR AN EVIDENTIARY

7    HEARING.  AND IF THE STATE COURT HAD DONE THAT, AND HE HAD

8    ACCESS TO SUBPOENA POWER AND WAS ABLE TO COMPEL THE

9    PRODUCTION OF WITNESSES, HE WOULD HAVE THEN BEEN ABLE TO

10   PRESENT AND DEVELOP THAT SAME EVIDENCE IN THE STATE COURT.

11        AND WHAT THE SUPREME COURT SAID IN WILLIAMS IS

12   THAT, YOU KNOW, YOU'RE NOT GOING TO MAKE SOMEONE GO THROUGH

13   THOSE KINDS OF HOOPS.  I MEAN, THERE MIGHT BE A LEGITIMATE

14   INTEREST IN REQUIRING STATE EXHAUSTION.  BUT THE STATE

15   DOESN'T GET TO PLAY WITH PETITIONERS BY SAYING, OH, WE'RE

16   GOING TO DENY IT NOW.  AND THEN WHEN YOU GO TO FEDERAL COURT

17   AND YOU GET A HEARING, THEY'RE GOING TO SAY, OH, NOW WE'LL

18   HEAR YOUR CLAIM.  COME ON BACK TO STATE COURT.  WAIT A LITTLE

19   BIT LONGER TILL YOU GET YOUR FEDERAL RELIEF.  WE WANT TO COME

20   BACK AND KEEP YOU IN STATE COURT A LITTLE BIT LONGER.

21        THAT SHOULDN'T BE ALLOWED.  AND I THINK THAT'S WHAT

22   THE SUPREME COURT WAS SAYING IN WILLIAMS.

23        AND THAT POSITION WAS ADOPTED BY THE NINTH CIRCUIT

24   IN KILLIAN.  AND IN THAT CASE AT THE EVIDENTIARY HEARING --

25   AND I HAPPENED TO BE COUNSEL IN THAT CASE SO I KNOW IT

1    EXTREMELY WELL -- THE INFORMANT, WHO HAD TESTIFIED AGAINST

2    MS. KILLIAN AT TRIAL, ADMITTED ON THE WITNESS STAND THAT HE

3    HAD LIED ABOUT HER CULPABILITY AT TRIAL WHEN HE SAID THAT SHE

4    WAS INVOLVED IN THE CRIME.  HE SAID THAT TESTIMONY WAS FALSE.

5         WELL, WE NEVER HAD MADE A FALSE EVIDENCE CLAIM

6    BECAUSE WE DIDN'T HAVE THAT INFORMATION.  WE HAD A BRADY

7    CLAIM WHEN HE HAD DENIED A DEAL AND THEN LATER ON GOT

8    EVIDENCE SHOWING HE DID GET A DEAL.  BUT IT WASN'T UNTIL HE

9    ACTUALLY GOT ON THE WITNESS STAND AND SAID HE LIED ABOUT MS.

10   KILLIAN BEING INVOLVED IN THE CRIME.

11        THE ATTORNEY GENERAL CAME BACK AND SAID, SORRY,

12   YOU'VE GOT TO GO BACK TO STATE COURT NOW BECAUSE THAT'S A NEW

13   CLAIM.  THAT'S FALSE EVIDENCE.  IT MATERIALLY ALTERS THE

14   FACTUAL BASIS FOR YOUR CLAIM.  AND, THEREFORE, YOU'VE GOT TO

15   GO BACK TO STATE COURT.

16        AND MAGISTRATE JUDGE HOLLOWS AND THE DISTRICT COURT

17   AND THE NINTH CIRCUIT ALL SAID, YOU'RE NOT GOING TO MAKE HIM

18   GO -- YOU'RE NOT GOING TO MAKE HER GO BACK TO STATE COURT.

19   THIS CAME OUT AT THE EVIDENTIARY HEARING.  THAT'S -- THE

20   STATE COURT DID NOT GIVE HER AN EVIDENTIARY HEARING, AND

21   THAT'S CAUSE FOR NOT HAVING TO GO BACK TO EXHAUST.  THE STATE

22   CANNOT USE IT AS A SWORD AND AS A CLUB -- BASICALLY IS WHAT

23   THEY'RE TRYING TO DO.  THEY'RE TRYING TO USE IT TWICE.

24        AND THE THIRD GROUND IS THE ONE THAT THIS COURT HAS

25   ALREADY ADJUDICATED, AND THAT IS THE PROBABLE SHOWING OF

1    INNOCENCE UNDER SCHULP.  AND I THINK THE ONLY THING I NEED TO

2    SAY ABOUT THAT IS THE NINTH CIRCUIT CASE THAT WE QUOTED IN

3    OUR MOVING PAPERS WHICH SAYS EXPLICITLY THAT -- AND THE CASE

4    IS CUSTER VERSUS HILL.  IT'S ON PAGE 18 -- THAT A SHOWING OF

5    PROBABLE INNOCENCE UNDER SCHULP AND THE RESULTING ENTITLEMENT

6    TO THE MISCARRIAGE OF JUSTICE GATEWAY EXCUSES AND APPLIES TO

7    EXHAUSTION.  AND THAT'S THE LANGUAGE RIGHT OUT OF THE CASE.

8    THEY DON'T DISAGREE WITH THAT.  THEY HAVEN'T CITED ANY

9    CONTRARY AUTHORITY.

10          AND, SO, BASED ON THE COURT'S FINDING ALREADY THAT

11   MR. LISKER HAS MADE A SHOWING THAT SATISFIES THE SCHULP

12   STANDARD, ACCORDING TO THE NINTH CIRCUIT THAT APPLIES NOT

13   ONLY TO THE TIME BAR FROM THE STATUTE OF LIMITATIONS, BUT IT

14   ALSO APPLIES TO THE STATE'S ATTEMPT TO NOW TRY TO ERECT YET A

15   SECOND INSURMOUNTABLE BARRIER WHICH IS EXHAUSTION.

16          THE COURT:  NOW, THE PROBABLE INNOCENCE ARGUMENT --

17   WHEN YOU'RE TALKING ABOUT PROCEDURAL DEFAULT, THAT'S NOTHING

18   NEW, RIGHT?  ISN'T THAT SOMETHING THE SUPREME COURT

19   ESTABLISHED SOME TIME AGO?

20          MR. GENEGO:  THAT IS CORRECT, YOUR HONOR.

21          THE COURT:  SO, ONCE YOU PUT THIS INTO THE BOX OF

22   PROCEDURAL DEFAULT, THAT IS, DIDN'T EXHAUST, THERE'S NO

23   FURTHER ABILITY TO EXHAUST; THEREFORE, IT'S PROCEDURALLY

24   DEFAULTED AS OPPOSED TO NON-EXHAUSTED, CUSTER DIDN'T DECIDE

25   ANYTHING NEW IN THAT, DID IT?  I MEAN, ISN'T THAT COLEMAN

1    VERSUS THOMPSON?

2            MR. GENEGO:  YES.  I THINK THAT'S RIGHT.

3            THE COURT:  ALL RIGHT.  SO, THE REAL -- THAT ISN'T

4    A SEPARATE ARGUMENT REALLY.  ISN'T IT -- DOESN'T IT COLLAPSE

5    BACK TO WHETHER YOU HAVE THE ABILITY TO GO BACK TO STATE

6    COURT AND EXHAUST THE CLAIM?

7            MR. GENEGO:  THE REASON I DON'T THINK SO, YOUR

8    HONOR, IS BECAUSE WHAT THEY'RE DOING WITH THE EXHAUSTION

9    REQUIREMENT IS THEY'RE TRYING TO ELEVATE IT TO A STATUTORY

10   BAR EQUIVALENT TO THE STATUTE OF LIMITATIONS.  AND I THINK

11   THAT WHAT --

12           THE COURT:  THERE IS A STATUTORY BAR, ISN'T THERE,

13   IN THE AEDPA?

14           MR. GENEGO:  PARDON?

15           THE COURT:  THERE IS A STATUTORY BAR IN THE AEDPA.

16           MR. GENEGO:  FOR THE EXHAUSTION?

17           THE COURT:  YES.

18           MR. GENEGO:  YES.  THAT'S RIGHT.

19           AND I THINK JUST AS THIS COURT HAS CORRECTLY

20   DECIDED BASED ON THE SIXTH CIRCUIT DECISION THAT SCHULP

21   OVERCOMES THE STATUTORY BAR FROM TIMELINESS, THAT THAT SAME

22   REASONING WOULD APPLY TO THE STATUTORY BAR OF FAILURE TO

23   EXHAUST.  AND SO THAT --

24           THE COURT:  BUT WHY -- WHY WOULD THAT BE, MR.

25   GENEGO.  I MEAN, FOR THE STATUTE OF LIMITATIONS YOU'RE OUT IF

1    YOU DON'T HAVE SOME RELIEF.  FOR EXHAUSTION, IF YOU HAVE THE

2    ABILITY TO GO BACK TO STATE COURT AND GET RELIEF, THEN I'M

3    NOT SURE WHY THE INNOCENCE GATEWAY APPLIES IN THE SAME WAY.

4             THE QUESTION IS DO YOU HAVE THE RIGHT TO GO BACK TO

5    STATE COURT?

6             MR. GENEGO:  THE REASON I'M PAUSING IS BECAUSE I

7    THINK THAT WOULD ALSO BE TRUE EVEN IF HE WAS TIME BARRED.  I

8    MEAN, IF THEIR THEORY IS CORRECT, EVEN IF HE WAS TIME BARRED

9    AND THE COURT THREW THE CASE OUT, MR. LISKER COULD ALWAYS GO

10   BACK TO STATE COURT AND FILE A PETITION AND SAY HE WANTS SOME

11   EXTRAORDINARY RELIEF.

12            THE COURT:  BUT IF IT GOES BACK TO STATE COURT THEN

13   THEORETICALLY -- UNDER EXHAUSTION THEORETICALLY HE COULD COME

14   BACK HERE.  THERE ARE PROCEDURES, RIGHT?  THERE'S A STAY AND

15   ABATE PROCEDURE.

16            MR. GENEGO:  IF HE WAS --

17            THE COURT:  ASSUMING HE'S NOT SUCCESSFUL IN STATE

18   COURT.  AND HE COULD BE SUCCESSFUL IN STATE COURT.

19            MR. GENEGO:  HYPOTHETICALLY SPEAKING, THAT MIGHT BE

20   TRUE FOR SOME OTHER PETITIONER.  I THINK THAT IN THIS

21   INSTANCE IF THE COURT DETERMINED THAT HE WAS TIME BARRED, HE

22   WOULD THEN NOT BE ABLE TO COME BACK TO FEDERAL COURT.

23            THE COURT:  I AGREE WITH THAT.

24            MR. GENEGO:  AND SO I THINK --

25            THE COURT:  BUT AS --

1          MR. GENEGO:  ALTHOUGH, I UNDERSTAND --

2          THE COURT:  -- BUT AS TO THE EXHAUSTION ISSUE, IF

3     THE CLAIM IS NOT EXHAUSTED, IF HE HAS THE ABILITY TO GO BACK

4     TO STATE COURT AND EXHAUST THE CLAIM IN STATE COURT, THEN WHY

5     DOES HE NEED A SHOWING OF PROBABLE INNOCENCE?  WHAT DOES THAT

6     ADD TO THE MIX.  THAT'S MY QUESTION.

7          MR. GENEGO:  I THINK THAT IN THE CIRCUMSTANCES OF

8     THIS PARTICULAR CASE -- AND I DON'T KNOW THAT THIS WOULD

9     CREATE A GENERAL RULE, BUT CERTAINLY IN THE CIRCUMSTANCES OF

10    THIS PARTICULAR CASE, I THINK IT'S JUSTICE DELAYED IS JUSTICE

11    DENIED, YOUR HONOR.

12         AND WHEN SOMEONE COMES INTO FEDERAL COURT AND MAKES

13    A SHOWING OF PROBABLE INNOCENCE THAT IS SUFFICIENT TO

14    OVERCOME THE STATUTORY TIMELINESS BAR, AND THE COURT

15    DETERMINES THAT IT WOULD BE A MISCARRIAGE OF JUSTICE TO NOT

16    HEAR HIS CLAIMS ON THE MERITS, TO THEN ALLOW THE ATTORNEY

17    GENERAL TO TELL HIM HE'S GOT TO GO BACK TO STATE COURT IS

18    JUST NOT FAIR.  IT'S GOING TO TAKE MONTHS BEFORE IT GETS

19    HEARD BY A STATE COURT.

20         AGAIN, THIS IS JUST ANECDOTAL EVIDENCE.  BUT THE

21    LAST TIME I FILED A HABEAS CORPUS PETITION IN FRONT OF THE

22    CALIFORNIA SUPREME COURT, IT TOOK ME 18 MONTHS TO GET A

23    ONE-SENTENCE ORDER.  AND THAT IS STANDARD PROCEDURE.

24         THE COURT:  ALL RIGHT.

25         MR. GENEGO:  THANK YOU.

1          THE COURT:  THANK YOU, MR. GENEGO.

2          MR. BRETON.

3          MR. BRETON:  GOOD MORNING, YOUR HONOR.  MAY IT

4    PLEASE THE COURT.  I'M A LITTLE CONFUSED BY THE OPENING SALVO

5    AS FAR AS FUTILITY IS CONCERNED.

6          WE ARE NOT CONTENDING THAT BECAUSE THE CLAIM IS

7    UNEXHAUSTED AND THERE IS NO AVAILABLE REMEDY THAT IT'S FUTILE

8    FOR HIM TO ATTEMPT TO EXHAUST AND, THEREFORE, THIS COURT

9    SHOULD DENY IT.

10          WHAT WE MEANT TO SAY THERE, AND WE THOUGHT WE SAID

11    CLEARLY, WAS THAT IF HE WERE ALLOWED TO AMEND THE PETITION TO

12    INCLUDE THESE UNEXHAUSTED CLAIMS, THE PETITION IMMEDIATELY

13    WOULD BECOME A MIXED PETITION.

14          THE COURT:  THAT'S THE WAY I UNDERSTOOD YOUR

15    ARGUMENT.

16          MR. BRETON:  AND, THEREFORE, THOSE UNEXHAUSTED

17    CLAIMS WOULD HAVE TO BE DELETED IMMEDIATELY.

18          WE WOULD NOT OBJECT TO A STAY AND ABEYANCE.  WE DO

19    NOT OBJECT TO HOLDING THIS PETITION IN ABEYANCE WHILE HE

20    EXHAUSTS THESE TWO CLAIMS.

21          BUT IT IS CERTAINLY CLEAR THAT IT WOULD NOT BE AN

22    EXERCISE IN FUTILITY FOR HIM TO GO BACK TO THE CALIFORNIA

23    COURTS AND GIVE THEM A FIRST OPPORTUNITY TO ADDRESS THESE NEW

24    CLAIMS AND TO ADDRESS EVEN THE OLD IAC CLAIM IN LIGHT OF

25    NEWLY DEVELOPED FACTS, WHICH UNDER AIKEN V. SPAULDING HAVE

1    SIGNIFICANTLY ALTERED THAT CLAIM AND CREATED -- AND FORMED IT

2    INTO A NEW POSTURE.

3         THE COURT:  LET ME ASK YOU SOMETHING, MR. BRETON.

4    THE FEDERAL STATUTE ALSO GIVES THE ATTORNEY GENERAL THE

5    ABILITY TO WAIVE LACK OF EXHAUSTION.

6         MR. BRETON:  THAT'S CORRECT.

7         THE COURT:  IS THAT SOMETHING THAT HAS BEEN

8    CONSIDERED?

9         MR. BRETON:  WE HAVE CONSIDERED IT AND REJECTED IT.

10        THE COURT:  ALL RIGHT.

11        MR. BRETON:  IT IS IMPORTANT FOR ME TO EMPHASIZE TO

12   THIS COURT THAT THE STATE COURTS UNDER IN RE CLARK ARE READY

13   TO CONSIDER, TO ANALYZE THESE NEW CLAIMS, TO LOOK AT THE

14   NEWLY DEVELOPED FACTS, PREDICATE FACTS IN SUPPORT OF THE OLD

15   CLAIMS.  AND THEY DESERVE UNDER PRINCIPLES OF COMITY AND

16   FEDERALISM THAT OPPORTUNITY.

17        THERE IS NO REASON WHY AND NO CITATION THAT COUNSEL

18   FOR PETITIONER CAN PROVIDE THAT WOULD SHOW THAT THE

19   CALIFORNIA SUPREME COURT OR THE SUPERIOR COURT WILL

20   INEVITABLY OR AUTOMATICALLY REJECT HIS CLAIMS AS SUCCESSIVE

21   OR AS BARRED UNDER TIMELINESS GROUNDS.  THERE ARE --

22        THE COURT:  WELL, WHAT ABOUT HIS ARGUMENT THAT

23   UNDER WILLIAMS AND KILLIAN YOU DON'T HAVE TO PING PONG BACK

24   AND FORTH.  THAT SINCE THE STATE COURTS DENIED HIM AN

25   EVIDENTIARY HEARING, WHICH THIS COURT GRANTED, AND SINCE THE

1    EVIDENTIARY HEARING DEVELOPED CERTAIN EVIDENCE HERE, THAT

2    HE'S NOT REQUIRED TO GO BACK TO THE STATE COURT AND AT THIS

3    POINT LET THEM HAVE THE OPPORTUNITY.

4           WHAT'S YOUR RESPONSE TO THAT?

5           MR. BRETON:  WELL, FIRST OF ALL, MY RESPONSE IS

6    THAT UNDER A.E.D.P.A. HE'S REQUIRED TO EXHAUST.  AND --

7           THE COURT:  DO YOU THINK HE'S MISREADING THOSE

8    CASES?

9           MR. BRETON:  YES.  YES, WE DO.  IF YOU LOOK AT

10   KILLIAN THE ISSUE THERE IN 282 F.3D 1204 AT 1208 IS CLEARLY

11   ONE OF DEFERENCE.  IT IS NOT EXHAUSTION.

12          THE ISSUE THAT WAS BEING ADDRESSED BY THE COURTS IS

13   WHETHER IN LIGHT OF THE NEWLY DEVELOPED EVIDENCE IN THE

14   FEDERAL COURTS, THE FEDERAL COURT HAD UNDER A.E.D.P.A. TO

15   AFFORD DEFERENCE TO THE STATE DETERMINATION.  AND IN CITING

16   WILLIAMS V. TAYLOR IT SAID THAT THERE IS NO NEED FOR THEM TO

17   DEFER TO THE STATE COURT WHERE THE STATE COURT WAS NOT

18   DEALING WITH THOSE FACTS.

19          BECAUSE -- AND I THINK IT'S HORNBOOK LAW THAT A

20   CASE CANNOT BE CITED FOR A PROPOSITION THAT WASN'T ARGUED,

21   THAT WASN'T BRIEFED, THAT WASN'T AN ISSUE, THAT ISN'T SET

22   FORTH IN THE OPINION.  AND THERE'S NOTHING IN THE OPINION

23   THAT STATES UNEQUIVOCALLY THAT EITHER THE ATTORNEY GENERAL

24   WAIVED THE EXHAUSTION ARGUMENT OR THE EXHAUSTION ARGUMENT WAS

25   ARGUED AND WAS AN ISSUE ON APPEAL.  THAT'S HOW WE WOULD

1    DISTINGUISH KILLIAN.

2            AND UNDER CUSTER, IT IS CLEAR THAT THE OREGON LAW

3    PRECLUDED HIM FROM OBTAINING ANY FURTHER RELIEF.  HE WAS

4    UNTIMELY.

5            THE COURT:  WELL, THAT'S WHAT I SAID EARLIER.

6    THAT IT SEEMS TO ME THAT THE CUSTER ARGUMENT IS REALLY NO

7    DIFFERENT FROM WHAT MR. GENEGO SAYS HIS FIRST ARGUMENT IS,

8    THAT HE REALLY DOESN'T HAVE THE ABILITY TO GO BACK TO STATE

9    COURT, SUCCESSFULLY TO GO BACK TO STATE COURT.

10           MR. BRETON:  WELL, BUT IN CUSTER IT WAS CLEAR THAT

11   HE DIDN'T.  BECAUSE IN CUSTER THERE'S NO MENTION OF ANY

12   EXCEPTION FOR THE TIMELINESS BAR.

13           THE COURT:  THAT'S WHAT I SAY.  IF YOU PUT IT INTO

14   THE PROCEDURAL DEFAULT BOX, THEN IT'S DECIDED LAW.  PROBABLE

15   INNOCENCE DOES ALLOW YOU TO GO BEYOND PROCEDURAL DEFAULT.  IF

16   IT'S NOT IN THE PROCEDURAL DEFAULT BOX, THEN IT SEEMS TO ME

17   IT'S THE QUESTION OF -- WELL, THAT'S THE QUESTION.  IS IT IN

18   THE PROCEDURAL DEFAULT BOX, WHICH IS JUST ANOTHER WAY OF

19   SAYING DOES CALIFORNIA LAW GIVE HIM A POSSIBLE REMEDY.

20           MR. BRETON:  WELL, WE CONTEND THAT CALIFORNIA LAW

21   CLEARLY GIVES THEM A REMEDY.  AND THE -- I'D LIKE TO QUOTE TO

22   THE COURT FROM THE CASE OF TOULSON V. BEYER, T-O-U-L-S-O-N V.

23   BEYER, B-E-Y-E-R, 987 F.2D 984, IN WHICH THE ISSUE WAS

24   WHETHER IT WAS POSSIBLE THAT THE NEW JERSEY STATE COURT WOULD

25   APPLY AN EXCEPTION TO THE STATE BAR RULE.

1              AND THE COURT THERE POINTED OUT THAT THE PETITIONER

2     HAD NOT POINTED TO ANY NEW JERSEY CASE CLEARLY SHOWING HE IS

3     PRECLUDED FROM RELIEF.  IN THE ABSENCE -- THIS IS QUOTE:

4              "IN THE ABSENCE OF A STATE COURT DECISION

5              CLEARLY FORECLOSING SUCH A RESULT WE CANNOT

6              CONCLUDE THAT PETITIONER HAS DEMONSTRATED

7              COMPLIANCE WITH THE EXHAUSTION REQUIREMENT.

8              TOULSON'S ARGUMENT OF STATE PROCEDURAL DEFAULT

9              IS THE NOTION THAT IT IS UNLIKELY NEW JERSEY

10             COURTS WOULD REACH THE MERITS OF HIS CLAIMS.

11             THIS MAY BE SO.  BUT AS WE SAID IN GIBSON

12             THIS IS INSUFFICIENT.  IN EFFECT, THE

13             PETITIONER IS REALLY ARGUING THAT IT IS SO

14             UNLIKELY THAT THE NEW JERSEY COURTS WOULD

15             REACH THE MERITS OF HIS STATE APPEAL THAT HE

16             HAS SHOWN THE REQUISITE FUTILITY.  HOWEVER, IF

17             WE PERMITTED SUCH A PREDICTION TO CONSTITUTE

18             THE TYPE OF FUTILITY WHICH WOULD ALLOW A FEDERAL

19             COURT TO EXCUSE EXHAUSTION, WE WOULD UNDERMINE

20             THE EXHAUSTION DOCTRINE COMPLETELY.  ALTHOUGH

21             EXHAUSTION IS OFTEN CUMBERSOME AND MAY APPEAR TO

22             REQUIRE DUPLICATIVE EXPENDITURE OF JUDICIAL

23             RESOURCES ON CLAIMS THAT FREQUENTLY HAVE NO MERIT,

24             THE DOCTRINE IS PREMISED ON FIRMLY ENTRENCHED

25             PRINCIPLES OF COMITY."

```
 1              NOW TO THE PRACTICALITIES HERE -- "IF AND WHEN
 2         THESE CLAIMS ARE PRESENTED TO THE STATE SUPERIOR
 3         COURT, NOT ONLY WILL THE STATE COURTS HAVE AN
 4         OPPORTUNITY TO FULLY DEVELOP AND ADDRESS THESE
 5         CLAIMS, BUT THAT SO WILL THE DISTRICT ATTORNEY.
 6         IF AND WHEN THESE CLAIMS ARE PRESENTED TO THE
 7         CALIFORNIA SUPREME COURT, THE CALIFORNIA SUPREME
 8         COURT WILL HAVE AN OPPORTUNITY TO APPLY THE
 9         MISCARRIAGE OF JUSTICE EXCEPTION IN ORDER TO
10         ENTERTAIN THESE CLAIMS ON THE MERITS.  IT IS ABSURD
11         TO ARGUE THAT THE CALIFORNIA SUPREME COURT HAS NO
12         INTEREST IN HEARING CLAIMS OF FALSE EVIDENCE, OF
13         PERJURY AND OF ACTUAL INNOCENCE.  IT IS CLEARLY
14         STATED IN IN RE CLARK THAT THERE ARE EXCEPTIONS
15         WHICH WILL ALWAYS BE AVAILABLE TO A PETITIONER WHO
16         IS INNOCENT OF THE OFFENSE FOR WHICH HE IS
17         CONVICTED."
18              THAT'S ON PAGE 796 OF 5 CAL 4TH.  AND IT IS MADE
19    VERY CLEAR THAT THERE ARE TWO EXCEPTIONS HERE THAT PETITIONER
20    COULD ARGUE APPLY TO HIS CASE.
21              THAT THERE WAS -- THAT THE TRIAL WAS SO
22    FUNDAMENTALLY UNFAIR THAT ABSENT THE ERROR NO REASONABLE
23    JUDGE OR JURY WOULD HAVE CONVICTED HIM.  WHICH MEANS THAT
24    THERE WAS ERRONEOUSLY EXCLUDED DEFENSE EVIDENCE, WHICH IS
25    WHAT WAS CLAIMED HERE, A THIRD-PARTY LIABILITY EVIDENCE, WITH
```

1    THE RESULT THAT THE DEFENDANT WAD DENIED HIS RIGHT TO PRESENT

2    A DEFENSE.  AND HE WOULD HAVE BEEN ACQUITTED.

3              AND THERE'S ALSO THE SECOND EXCEPTION THAT HE'S

4    ACTUALLY INNOCENT OF THE CRIME.  WHICH MEANS THAT THERE'S

5    NEWLY DISCOVERED EVIDENCED OF INNOCENCE OF THE OFFENSE OF

6    WHICH HE WAS CONVICTED.  EVIDENCE WAS SUCH THAT IT WOULD

7    UNDERMINE THE ENTIRE PROSECUTION.  THAT'S FROM PAGE 798 OF IN

8    RE CLARK.

9              NOW COUNSEL FOR PETITIONER ARGUES THAT THIS IS A

10   CAPITAL CASE, THAT CLARK WAS A CAPITAL CASE.  WELL, CLARK WAS

11   CITING HERRERA, WHICH WAS ALSO A CAPITAL CASE, IN WHICH -- IN

12   WHICH IT WAS CITING LANGUAGE FROM THE U.S. SUPREME COURT

13   SAYING THAT IT WOULD BE FUNDAMENTALLY UNJUST TO EXECUTE AN

14   INNOCENT MAN.

15             HOWEVER, IT IS NOT -- I HAVE SEEN NO -- NO CASE

16   UNDER CALIFORNIA LAW THAT SAYS THAT THIS EXCEPTION APPLIES

17   ONLY TO CAPITAL CASES.  ON THE CONTRARY, THE EXCEPTION IS

18   REGULARLY APPLIED TO ALL CASES.

19             I PERSONALLY HANDLED A CASE, IN RE TAYLOR, WHERE

20   THE CALIFORNIA SUPREME COURT ISSUED AN ORDER TO SHOW CAUSE ON

21   AN ACTUAL INNOCENCE CLAIM.  THIS IS NOT A CAPITAL CASE.  THEY

22   REMANDED IT TO THE SUPERIOR COURT.

23             AND THE SUPERIOR COURT GRANTED THE WRIT AFTER THE

24   SHOWING OF INNOCENCE AS TO SPECIAL CIRCUMSTANCE AND REDUCED

25   THE SENTENCE FROM LIFE WITHOUT PAROLE TO LIFE WITH PAROLE

1    BECAUSE THERE WAS A FINDING THAT HE WAS INNOCENT OF THE

2    PREDICATE FACTS FOR THE SPECIAL CIRCUMSTANCE.

3           I PERSONALLY HANDLED THE CASE IN WHICH THE

4    CALIFORNIA SUPREME COURT HAS NOT ONLY RULED THAT HE'S

5    ENTITLED TO PRESENT IT BUT HAS ASKED THAT IT BE REMANDED TO

6    THE SUPERIOR COURT TO ADDRESS THE ACTUAL INNOCENCE CLAIM AS A

7    FREESTANDING CLAIM.

8           THE COURT:  DO YOU HAVE A CITATION TO THAT CASE?

9           MR. BRETON:  I DID NOT BRING THE CASE NUMBER, BUT I

10   WOULD BE GLAD TO SUBMIT THAT TO THIS COURT.

11          THE COURT:  ARE THERE OTHER CASES --

12          MR. BRETON:  IT'S IN RE TAYLOR, RONALD TAYLOR.

13          THE COURT:  ARE THERE OTHER CASES LIKE THAT, MR.

14   BRETON, THAT YOU'RE FAMILIAR WITH?

15          MR. BRETON:  WHERE THEY HAVE ISSUED AN ORDER TO

16   SHOW CAUSE ON A FREESTANDING CLAIM?

17          THE COURT:  NO.  WHERE CLARK HAS BEEN APPLIED IN

18   NON-CAPITAL CASES.

19          MR. BRETON:  I CANNOT CITE A PUBLISHED CASE THAT

20   COMES TO MY MIND AS TO ITS APPLICATION OF THAT MISCARRIAGE OF

21   JUSTICE ANALYSIS.

22          THE COURT:  ALL RIGHT.

23          MR. BRETON:  IT'S BEEN ARGUED, BUT IT'S NOT

24   PROVIDED IN THE REASONING OF THE COURT WHEN IT ISSUES ITS

25   FINAL DETERMINATION.

1        OUR POINT WITH REGARD TO THE CASE THAT COUNSEL FOR

2   PETITIONER RELIES ON, LAMBERT VERSUS BLACKWELL, THAT REALLY

3   STANDS FOR A PROPOSITION THAT IS NOT SO REMARKABLE IN THAT

4   THE COURT THERE POINTED TO SOUTHERN CALIFORNIA SUPREME COURT

5   RULINGS AND THEN A PENNSYLVANIA SUPREME COURT RULING WHERE IN

6   A NUTSHELL THE SUPREME COURT HAS TOLD STATE PRISONERS, YOU

7   DON'T NEED TO BOTHER TO COME TO US FOR EXHAUSTION PURPOSES.

8        IF YOU GET A RELIEF FROM THE LOWER COURT OF APPEAL

9   IN PENNSYLVANIA OR IN SOUTH CAROLINA, YOU DON'T NEED TO COME

10  TO US AND GET A RULING IN ORDER TO EXHAUST.  YOU CAN TELL A

11  FEDERAL COURT THAT YOU EXHAUSTED AND HERE IS OUR STAMP OF

12  APPROVAL.

13       THEY ACTUALLY PASSED RULES IN WHICH THEY SAID,

14  THAT'S GOOD ENOUGH FOR US.  WE DON'T CARE ABOUT COMITY AND

15  FEDERALISM WITH REGARD TO EXHAUSTION.  WE WILL ONLY HEAR

16  THOSE CASES THAT WE IN OUR DISCRETION WANT TO HEAR.  BUT YOU

17  CAN BYPASS US AND GO STRAIGHT TO THE FEDERAL COURT.  AND

18  THAT'S ALL THAT CASE STANDS FOR.  YOU DON'T HAVE TO COME

19  HERE.  THEREFORE, YOU CAN GO STRAIGHT.  AND THAT'S EXACT- --

20  YOU CAN GO STRAIGHT TO THE FEDERAL COURT.  AND THAT'S ALL

21  THAT STANDS FOR.

22       IT DOESN'T STAND FOR THE PROPOSITION THAT IN THE

23  CASE OF A STATE LIKE CALIFORNIA WHERE THERE ARE PROCEDURES

24  FOR POST-CONVICTION RELIEF ALL THE WAY TO THE CALIFORNIA

25  SUPREME COURT.  THE CALIFORNIA SUPREME COURT EXPECTS THAT AS

1    A MATTER OF COMITY, EXPECTS THE OPPORTUNITY TO RULE ON THESE

2    AND HAS NEVER EXCUSED A PETITIONER FROM -- OR MADE AN

3    EXPLICIT STATEMENT THAT EXHAUSTION IS COMPLETE ONCE YOU HAVE

4    OBTAINED A RULING FROM THE LOWER COURT, THE LOWER COURT OF

5    APPEAL.

6            WE DO NOT THINK THAT IT IS AS STATED OVER AND OVER

7    THAT THE MISCARRIAGE OF JUSTICE EXCEPTION IS SO EXTRAORDINARY

8    THAT IT WOULD BE AN EXERCISE IN FUTILITY FOR HIM TO RETURN.

9            WE SUGGEST TO THIS COURT THAT THIS COURT MAY NEVER

10   SEE THIS CASE AGAIN.  THAT THIS MAY GO TO THE STATE COURTS

11   AND IT CAN BE RESOLVED THERE ON THE MERITS.

12           WE DON'T KNOW WHAT THE STATE COURTS ARE GOING TO

13   DO.  WE CAN'T REPRESENT TO THIS COURT WHAT THEY'RE GOING TO

14   DO.  BUT IT IS NOT AN EXERCISE IN FUTILITY.  WE HAVE NEW

15   EVIDENCE.  WE HAVE -- THERE'S A FREESTANDING CLAIM OF ACTUAL

16   INNOCENCE.  A LOT OF EVIDENCE HAS BEEN DEVELOPED HERE.  ALL

17   OF THAT WILL BE PRESENTED TO THE STATE COURTS.  AND THEY WILL

18   HAVE THAT OPPORTUNITY EITHER TO ISSUE AN ORDER TO SHOW CAUSE,

19   TO HOLD A HEARING, TO MAKE A RULING.  AND IT IS NOT BEYOND

20   THE REALM OF POSSIBILITY.

21           IT IS NOT CLEAR AS IS STATED IN TOULSON.  IT IS NOT

22   CLEAR.  IT IS STILL POSSIBLE THAT A STATE COURT MAY APPLY THE

23   MISCARRIAGE OF JUSTICE EXCEPTION TO PROVIDE RELIEF FROM THE

24   DEFAULT.

25           AND, AS STATED, WE WOULD -- WE NOTE THAT COUNSEL

1    FOR PETITIONER IN HIS OPPOSITION TO OUR APPLICATION FOR AN

2    ORDER CERTIFYING INTERLOCUTORY APPEAL ON THE LEGAL ISSUE HAS

3    INDICATED THAT THIS WILL BE -- THAT THIS COURT CAN MOVE

4    EXPEDITIOUSLY ON THE MERITS OF THE UNDERLYING CLAIMS.

5    BECAUSE HE'S WILLING TO SUBMIT THE ENTIRE MATTER ON THE

6    PLEADINGS AND ON THE PRESENT STATUS OF THE EVIDENCE, THE

7    EVIDENCE THAT WAS PRESENTED AT THE ACTUAL INNOCENCE HEARING.

8    AND THERE'S NO NEED FOR FURTHER HEARINGS ON THE MATTER, EVEN

9    ON THE IAC CLAIM BUT, AT THE SAME TIME, WANTS TO ADD -- TO

10   MELD IN TWO NEW CLAIMS AND PRESUMES THAT THOSE CLAIMS CAN

11   ALSO BE DECIDED ON THE EVIDENCE THAT HAS ALREADY BEEN

12   PRESENTED TO THIS COURT.

13           BUT IT IS -- WE THINK IT'S SOMEWHAT DISINGENUOUS TO

14   ARGUE ON THE ONE HAND THAT THIS CAN PROCEED VERY FAST, ON A

15   VERY FAST TRACK IF IT STAYS HERE IN THIS COURT.  THEN WE WANT

16   TO ADD TWO NEW CLAIMS THAT WE'VE NEVER GIVEN THE STATE COURTS

17   THE OPPORTUNITY TO ADDRESS.

18           AND THERE ARE CERTAINLY -- IT IS CERTAINLY AN

19   INSULT TO THE STATE OF CALIFORNIA TO CLAIM THAT THE STATE

20   COURTS ARE GOING TO GIVE SHORT SHRIFT AND A BLIND EYE AND

21   SHRUG OFF CLAIMS OF FALSE EVIDENCE OR CLAIMS OF PERJURY -- OR

22   KNOWING PRESENTATION OF PERJURY AND CLAIMS OF ACTUAL

23   INNOCENCE.  THE STATE COURTS DESERVE THAT OPPORTUNITY.  AND

24   THE EXCEPTION HERE IS ONE THAT IS WAITING TO BE APPLIED SO AS

25   TO PERMIT HIM TO OBTAIN A RULING ON THOSE CLAIMS.

1              THE COURT:  ALL RIGHT.  THANK YOU.

2              MR. BRETON:  THANK YOU, YOUR HONOR.

3              THE COURT:  MR. GENEGO.

4              MR. GENEGO:  YES, YOUR HONOR.

5              THE COURT:  LET ME JUST ASK YOU A FACTUAL QUESTION

6   --

7              MR. GENEGO:  SURE.

8              THE COURT:  -- AND CHECK MY MEMORY ON THIS, MR.

9   GENEGO.

10             MR. LISKER TOOK A DIRECT APPEAL AND THAT WENT ONLY

11  TO THE CALIFORNIA COURT OF APPEAL; IS THAT CORRECT?  WITH A

12  PETITION FOR -- I'M NOT EVEN CLEAR THAT HE FILED A PETITION

13  FOR REVIEW.

14             MR. GENEGO:  I THINK HE DID FILE A PETITION FOR

15  REVIEW.

16             THE COURT:  ALL RIGHT.

17             HE THEN CAME BACK QUITE SOME TIME LATER WITH A

18  STATE HABEAS CORPUS PETITION --

19             MR. GENEGO:  CORRECT.

20             THE COURT:  -- IN WHICH SOME OF THE CLAIMS WHICH

21  ULTIMATELY MADE THEIR WAY HERE WERE RAISED.  THAT WAS DENIED

22  AT THE LOWER COURTS.

23             AND WHEN HE SOUGHT REVIEW OF THAT -- OR I CAN'T

24  REMEMBER IF HE SOUGHT REVIEW OR IF HE FILED AN ORIGINAL

25  PETITION TO THE CALIFORNIA SUPREME COURT, WEREN'T THERE TWO

1  SUPREME COURT JUSTICES WHO WERE OF THE OPINION THAT REVIEW

2  SHOULD BE HELD?

3          MR. GENEGO:  THAT IS CORRECT, YOUR HONOR.  IN FACT,

4  WHAT HAD HAPPENED WAS --

5          THE COURT:  AND THAT WAS BEFORE THERE HAD BEEN ANY

6  EVIDENTIARY DEVELOPMENT OF THE CLAIMS IN THE STATE COURT?

7          MR. GENEGO:  THAT IS TRUE.

8          THE COURT:  ALL RIGHT.

9          MR. GENEGO:  THAT IS TRUE.  AND THE CALIFORNIA

10  SUPREME COURT -- LET ME BACK UP A MINUTE.

11          HE DID, IN FACT, FILE A PETITION FOR REVIEW TO THE

12  CALIFORNIA SUPREME COURT, WHICH WAS INCORRECT BECAUSE EACH

13  LEVEL OF COURT HAS INDEPENDENT JURISDICTION.

14          THE COURT:  THAT'S NOT INCORRECT.  IT'S NOT -- IT'S

15  DONE THAT WAY SOMETIMES AND NOT OTHERS.  AND, IN FACT, I

16  THINK THERE'S A CALIFORNIA CASE THAT SAYS THAT'S NOT AN

17  INCORRECT WAY.

18          AND, AS I RECALL IN THE FEDERAL SYSTEM, IF YOU

19  REMEMBER, AND WE'RE GOING BACK TO NINO VERSUS GOLASA, I MEAN,

20  NINO, I THINK SAYS THAT'S THE WAY YOU OUGHT TO GO IN THE

21  CALIFORNIA SYSTEM, SO.

22          MR. GENEGO:  MY UNDERSTANDING HAS ALWAYS BEEN

23  DIFFERENT, THAT THEY WANT YOU TO FILE A SEPARATE PETITION.

24  BUT --

25          THE COURT:  I WASN'T SURE NINO STATED IT CORRECTLY,

1    BUT THEY STATED IT.

2         MR. GENEGO:  I UNDERSTAND.

3         IN ANY EVENT, HE DID GO TO THE CALIFORNIA SUPREME

4    COURT, AND I THINK TWO JUSTICES VOTED TO HEAR THE CASE, VOTED

5    TO ISSUE AN ORDER TO SHOW CAUSE.  AND THE COURT DENIED THE

6    CLAIMS ON THE MERITS WITHOUT EVER ADDRESSING THE QUESTION OF

7    WHETHER IT WAS TIMELY OR UNTIMELY.  IT WAS A FIRST PETITION,

8    HOWEVER.  AND NO ONE HAD RAISED AT THAT POINT, AS FAR AS I

9    KNOW, THE QUESTION THAT IT WAS TIME BARRED.

10        BUT, IN ANY EVENT, YOU ARE CORRECT THAT TWO OF THE

11   JUSTICES VOTED TO HEAR IT.

12        THE COURT:  RIGHT.

13        MR. GENEGO:  LET ME GO BACK TO THE POINTS THAT --

14   THAT, FIRST OF ALL, THAT MR. BRETON MADE ABOUT WHETHER

15   THERE'S AN AVAILABLE STATE PROCEDURE.

16        I THINK THAT HIS INABILITY TO CITE A CASE FROM THE

17   CALIFORNIA SUPREME COURT WHERE THEY SAY IN A NON-CAPITAL CASE

18   THESE EXCEPTIONS APPLY MEANS THAT WE WIN.  WE HAVE IDENTIFIED

19   A CASE IN WHICH THE CALIFORNIA SUPREME COURT SAYS IN A

20   CAPITAL CASE THESE EXCEPTIONS ARE AVAILABLE.

21        MR. BRETON HAS CITED AN UNPUBLISHED ORDER WHICH

22   JUST ISSUES AN ORDER TO SHOW CAUSE TO THE SUPERIOR COURT, IS

23   NOT PUBLISHED, IS NOT A RULING ON ANYTHING, WHICH IS AN

24   EXCEPTION, BUT IT WAS THE LIFE OF THAT PAROL CASE.

25        THE COURT:  BUT THE QUESTION, MR. GENEGO, IS

1   WHETHER THE FACT THAT CLARK WAS A CAPITAL CASE, WAS CRITICAL

2   TO THE HOLDING THERE.

3           MR. GENEGO:  AND THE REASON THAT I THINK IT IS,

4   YOUR HONOR, IS BECAUSE IF YOU LOOK AT -- AND, AGAIN, I

5   APOLOGIZE FOR PUTTING THIS IN A FOOTNOTE, BUT ON FOOTNOTE 7

6   ON PAGE 12, I QUOTE THE CALIFORNIA SUPREME COURT WHERE THEY

7   CREATE THAT EXCEPTION.  AND WHAT THEY SAY IS:

8           "WE CANNOT ANTICIPATE WHAT CLAIMS OF THIS

9            NATURE MIGHT BE MADE NOTWITHSTANDING THE

10           EXACTING NATURE OF THE APPEAL PROCESS IN A

11           CAPITAL CASE."

12          I MEAN, THEY TALK ABOUT IT IN THAT PARTICULAR

13  SENTENCE.  BUT ALSO ELSEWHERE IN CLARK, THEY TALK ABOUT THIS

14  BEING A CAPITAL CASE AND HOW THE PENALTY OF DEATH IS

15  DIFFERENT.  EVEN IN THE CASE THAT MR. BRETON CITED TURNS OUT

16  IT'S LIFE WITHOUT PAROLE.  WHICH MEANS THAT BASICALLY IT'S A

17  SLOW DEATH IN STATE PRISON.  AND SO THAT -- EVEN THAT CASE IS

18  --

19          THE COURT:  NO.  WAIT.  WAIT.  WAIT.  WAIT.  WAIT.

20          AS I UNDERSTOOD IT, WHAT MR. BRETON SAID WAS THAT

21  THE SHOWING THAT WAS MADE IN THE TAYLOR CASE WAS ON THE

22  PENALTY PHASE.  SO, THAT WHEN IT WENT BACK WHAT WAS CHANGED

23  WAS THE PENALTY.

24          MR. GENEGO:  THAT'S CORRECT.

25          THE COURT:  IT WASN'T THE SHOWING ON THE GUILT

1  PHASE.

2          MR. GENEGO:  THAT'S CORRECT.  THAT'S CORRECT.

3  THAT'S EXACTLY RIGHT.  AND THAT'S EXACTLY RIGHT, YOUR HONOR.

4          NOW -- SO I THINK THAT AS IT NOW STANDS CALIFORNIA

5  STATE LAW DOES NOT PROVIDE A RIGHT TO MR. LISKER WITHIN THE

6  MEANING OF THE STATUTE TO GO BACK AND HAVE THESE CLAIMS

7  HEARD.

8          AND REMEMBER WE'RE DEALING WITH NOT SOME -- SOME

9  HYPOTHETICAL SITUATION ABOUT WHETHER HE MIGHT BE HEARD.

10  WE'RE DEALING WITH WHETHER OR NOT THE LANGUAGE OF THE STATUTE

11  HAS BEEN SATISFIED HERE.  AND FOR THAT YOU HAVE TO THINK NOT

12  JUST ABOUT WHAT MIGHT BE POSSIBLE, WHAT THAT STATUTE SAYS AND

13  WHAT IT'S BEEN INTERPRETED TO MEAN.

14          AND IF YOU LOOK AT WHAT O'SULLIVAN SAYS, THE

15  SUPREME COURT CASE THAT INTERPRETS THAT, WHEN THEY REJECT THE

16  PETITIONER'S ARGUMENT IN THAT CASE, THAT HE CLAIMS HE DID NOT

17  HAVE ANY AVAILABLE RIGHT BECAUSE THERE WAS A DISCRETIONARY

18  PROCEDURE, THEY SAID:

19          NO, THAT'S NOT RIGHT.  THIS IS PART OF THE

20          REGULAR, STANDARD REVIEW PROCESS IN THE STATE

21          COURT.

22          MAYBE THEY WON'T ULTIMATELY GRANT A HEARING, BUT

23  YOU HAVE THE RIGHT TO A PROCEDURE.

24          IN THIS CASE, THERE IS NO RIGHT TO A PROCEDURE.

25  EVEN IF YOU ASSUME THAT IT WILL APPLY IN NON-CAPITAL CASES,

```
1    YOU HAVE TO FIRST ESTABLISH AN EXTRAORDINARY SHOWING TO GET

2    TO THE RIGHT TO HAVE THAT PROCEDURE.  AND I THINK THAT'S ALSO

3    CRITICALLY IMPORTANT.  AND THAT UNDER O'SULLIVAN TAKES US OUT

4    AS WELL AS THE CAPITAL DISTINCTION.

5         THE COURT:  GOING BACK TO THE CAPITAL DISTINCTION

6    FOR A MOMENT, AND I'LL LET YOU FINISH WITH YOUR O'SULLIVAN

7    POINT, BUT --

8         MR. GENEGO:  SURE.

9         THE COURT:  -- WHAT WOULD BE THE RATIONALE FOR

10   TREATING NON-CAPITAL CASES DIFFERENTLY?  WHY IS "THE DEATH IS

11   DIFFERENT" ARGUMENT HAVE AN IMPACT ON THIS POINT?

12        MR. GENEGO:  I THINK THAT IT HAS BECOME SORT OF AN

13   ACCEPTED PRINCIPLE ALMOST IN LAW THAT DEATH IS DIFFERENT.

14   AND I THINK THE REASON IS THAT BECAUSE THERE'S NO PARDON

15   AVAILABLE ONCE YOU KILL SOMEBODY.

16        THE COURT:  I UNDERSTAND THAT.  BUT WHY DOES THAT

17   MEAN -- I MEAN, TAKE YOUR PHRASEOLOGY "A SLOW DEATH,"

18   SOMEBODY WHO HAS LIFE IN PRISON WITHOUT PAROLE OR EVEN WITH

19   PAROLE, WHO THEN MAKES A -- IS ABLE TO MAKE A SHOWING OF

20   ACTUAL INNOCENCE SUFFICIENT TO GET A CLAIM HEARD.

21        WHAT IS THE -- WHY IS "DEATH IS DIFFERENT" HAVE AN

22   IMPACT ON WHETHER THAT PERSON SHOULD HAVE A FURTHER RIGHT TO

23   REVIEW IN THE STATE COURT SYSTEM?  WHAT'S THE RATIONALE

24   BEHIND SAYING THIS APPLIES ONLY TO DEATH CASES?  CLARK

25   APPLIES ONLY TO DEATH CASES.
```

1          MR. GENEGO:  SETTING ASIDE FOR A MOMENT THAT I

2   DON'T -- I DON'T BELIEVE THERE SHOULD BE A DISTINCTION, BUT I

3   THINK WHAT THEIR JUSTIFICATION FOR THE DISTINCTION IS THAT

4   BECAUSE IT'S THE AFFIRMATIVE ACT OF TAKING SOMEONE'S LIFE.

5   AND THAT THE STATE SHOULDN'T DO THAT IF THERE MIGHT BE SOME

6   POSSIBILITY THAT THIS PERSON HAS COME UP WITH SOMETHING THAT

7   MIGHT SHOW THAT THEY ARE INNOCENT.

8          BUT THAT IF YOU JUST GIVE SOMEONE LIFE WITHOUT

9   PAROLE AND LET THEM LANGUISH IN PRISON, THE STATE'S NOT DOING

10  ANYTHING MORE.  HE'S ALREADY HAD HIS TRIAL OR HER TRIAL.  AND

11  THEY'RE GOING TO SIT THERE.  AND WE'RE NOT EXECUTING HIM.  SO

12  NOTHING FURTHER IS GOING TO HAPPEN TO THE PERSON.

13          AND I THINK WHAT THEY'RE SAYING IS THAT IN THE

14  CAPITAL CASE BEFORE WE GO HEADING -- ACTUALLY KILL SOMEBODY,

15  IF THEY COME UP WITH SOMETHING, THEN WE'LL HEAR THEM.  WE'RE

16  NOT GOING TO GO FORWARD WITH AN EXECUTION WHEN SOMEONE STILL

17  HAS SOMETHING THAT THEY SAY THEY CAN SHOW WILL PROVE THEIR

18  INNOCENCE.

19          THE COURT:  ALL RIGHT.

20          MR. GENEGO:  AND SO I THINK THAT -- THAT IS AT

21  LEAST SOMETHING TO DO WITH THAT NOTION.

22          THE OTHER THING, THOUGH, YOUR HONOR, IS THAT --

23  AND, AGAIN, I'M REGRETTING THIS MORE AND MORE.  BUT ON PAGE

24  13, I AGAIN -- THEY'VE TALKED ABOUT THE NEW EVIDENCE.

25          THE CALIFORNIA SUPREME COURT SAYS THAT EVIDENCE

1    RELEVANT ONLY TO AN ISSUE ALREADY DISPUTED AT TRIAL WHICH

2    DOES NO MORE THAN CONFLICT WITH TRIAL EVIDENCE DOES NOT

3    CONSTITUTE NEW EVIDENCE THAT FUNDAMENTALLY UNDERMINES THE

4    JUDGEMENT.

5         WELL, THE QUESTION OF WHETHER OR NOT -- THERE WAS

6    THE EVIDENCE ABOUT THE FOOTPRINT AT TRIAL, ABOUT THE BLOODY

7    FOOTPRINT.  THERE IS EVIDENCE ABOUT THE VIEW.  IF YOU ACCEPT

8    THIS DEFINITION ON ITS FACE, WE'RE JUST RAISING OTHER ISSUES

9    THAT WERE ALREADY RAISED AT TRIAL.  AND THAT'S YET A THIRD

10   REASON WE DON'T COME WITHIN CLARK, OR MAYBE IT'S THE SECOND

11   REASON, THE CAPITAL REASON AND THEN THAT LANGUAGE RIGHT

12   THERE.

13        IN ADDITION, THERE IS THE FACT, AS I ALREADY

14   MENTIONED AND THE THIRD REASON, WHICH IS THAT THE STATUTE AS

15   INTERPRETED BY O'SULLIVAN SAYS THAT YOU HAVE TO HAVE A

16   RIGHT TO PROCEDURE.  WELL, THE PETITIONER IN O'SULLIVAN DID

17   HAVE A RIGHT TO A PROCEDURE.  MR. LISKER DOESN'T BECAUSE HE'S

18   GOT TO FIRST MAKE THIS EXTRAORDINARY SHOWING.

19        THE OTHER THING THAT I WANTED TO RAISE IN THAT SAME

20   NOTION IS THAT MR. BRETON QUOTED THE TOULSON VERSUS BEYERS

21   CASE, WHICH HE SAID IS A 987 F.2D 984 CASE.  AND HE SAID IT

22   WAS FROM NEW JERSEY.

23        NOW, THAT'S I BELIEVE THE THIRD CIRCUIT.  AND 987

24   F.2D IS MUCH EARLIER THAN THE THIRD CIRCUIT CASE THAT WE

25   QUOTED, WHICH IS THE LAMBERT CASE, WHICH ACTUALLY FOLLOWS

1    O'SULLIVAN.

2              AND SO I DON'T KNOW WHAT THEY WERE TALKING ABOUT IN

3    TOULSON BECAUSE I HAVEN'T LOOKED AT IT, BUT I KNOW WHAT THEY

4    WERE SAYING IN LAMBERT.  AND LAMBERT FOLLOWED O'SULLIVAN AND

5    SAID, YOU DON'T HAVE TO GO THROUGH EXTRAORDINARY MEASURES

6    HERE.  JUST BECAUSE YOU CAN GO TO COURT AND FILE SOMETHING

7    DOESN'T MEAN YOU HAVE TO DO THAT.

8              AND SO I THINK LAMBERT IS REALLY -- IF WE'RE GOING

9    TO LOOK ELSEWHERE FOR GUIDANCE BEYOND THE NINTH CIRCUIT, THAT

10   THAT IS -- THAT IS LATER THAN TOULSON AND FOLLOWS O'SULLIVAN.

11   SO, I THINK THAT'S WHERE THE GUIDANCE SHOULD BE OBTAINED

12   FROM.

13             SO THAT'S THEIR FIRST QUESTION OF WHETHER THERE'S

14   AN AVAILABLE STATE PROCEDURE.

15             AS TO THE SECOND QUESTION OF CAUSE, THE KILLIAN

16   OPINION SAYS THAT THIS CLAIM WAS NOT BEFORE THE STATE COURT

17   -- I MEAN, THAT IS -- THAT MEANS IT WASN'T EXHAUSTED.  I

18   MEAN, I DON'T KNOW WHY YOU NEED SOME TAILORED MADE-UP PHRASE

19   ON THERE SAYING THAT -- AND, ALSO, THIS MEANS, OF COURSE,

20   THAT IT WASN'T EXHAUSTED.  THEY SAY RIGHT THERE IT WAS NOT

21   BEFORE THE STATE COURT.  THE STATE CAN'T WAIVE IT.  WELL,

22   THEN, SOMETHING HAD TO HAPPEN FOR THEM TO REACH THE MERITS.

23             SO, I THINK THAT IT'S IMPLICIT IN THE OPINION AND

24   IT CERTAINLY WAS ARGUED.  AND IF YOU GO TO THE BRIEFS, YOU'LL

25   SEE THAT IT WAS ARGUED, CERTAINLY FROM THE MAGISTRATE JUDGE.

1    I DON'T HAVE A RECOLLECTION OF THE NINTH CIRCUIT BRIEFS IN

2    FRONT OF ME RIGHT NOW, BUT I DO KNOW THAT THEY RAISED IT.

3    AND THE OPINION SAYS, THIS CLAIM WAS NOT BEFORE THE STATE

4    COURT.

5         THE THIRD ARGUMENT ABOUT CUSTER, I UNDERSTAND THE

6    COURT'S POINT.  AND I THINK THAT I'D WANT TO MODIFY OUR

7    ARGUMENT TO SIMPLY SAY THAT THAT IS MORE A JUSTICE DELAYED,

8    JUSTICE DENIED ARGUMENT.

9         AND WHEN YOU'VE MADE -- IN THE PECULIAR

10   CIRCUMSTANCES OF THIS CASE WHERE WE'VE HAD A HEARING ON

11   ACTUAL INNOCENCE, THIS COURT IS FAMILIAR WITH THAT EVIDENCE

12   AND HAS SPENT THE RESOURCES THAT IT HAS SPENT AND DEVOTED TO

13   THIS MATTER.  TO NOW MAKE MR. LISKER GO BACK TO THE SUPERIOR

14   COURT? -- I MEAN, THAT WOULDN'T EVEN CONSTITUTE EXHAUSTION.

15   IF HE LOST IN THE SUPERIOR COURT, HE STILL WOULD HAVE TO GO

16   TO THE CALIFORNIA SUPREME COURT.  THEY PROBABLY WANT HIM TO

17   STOP AT THE COURT OF APPEAL AS WELL.

18        AND WHAT IS PARTICULARLY TROUBLING IS THEY STAY

19   HERE AND THEY SAY, OH, THE STATE COURTS ARE READY TO HEAR

20   THIS.  THE STATE COURTS DESERVE A CHANCE TO HEAR THIS.  WELL,

21   THEY'RE GOING TO OPPOSE IT.  THEY'RE STILL OPPOSING IT NOW.

22   THEY OPPOSED THE COURT'S FINDING.  THEY DON'T THINK THE

23   CLAIMS HAVE ANY MERIT.

24        SO, THEY'RE GOING TO DO EVERYTHING THEY CAN TO

25   CONTINUE TO DENY JUSTICE TO MR. LISKER FOR AS LONG AS THEY'RE

1    ALLOWED TO DO IT.  AND AT SOME POINT, YOUR HONOR, IT'S GOT TO

2    END.

3              WHEN YOU'VE HAD THE SHOWING THAT WE'VE HAD IN THIS

4    COURTROOM, WHEN THE EVIDENCE COMES OUT THAT SOMEONE LIED AT

5    TRIAL, IT'S GOT TO END.  IT CAN'T BE A GAME AT THAT POINT.

6    IT'S NOT ABOUT GAMESMANSHIP.

7              DO THEY WANT TO GRANT BAIL TO MR. LISKER WHILE THEY

8    CONTINUE TO LET HIM GO BACK TO STATE COURT?  OF COURSE NOT.

9    THEY WOULD OPPOSE THAT AS WELL.  IF THEY DIDN'T, WELL, THEN

10   WE'LL STAY IN ABEYANCE IF THEY WANT TO CONCEDE BAIL.

11             MR. LISKER SHOULD NOT HAVE TO CONTINUE TO SUFFER

12   THE PREJUDICE OF A FUNDAMENTALLY UNFAIR TRIAL WHERE THIS

13   COURT HAS CORRECTLY FOUND THAT NO REASONABLE JUROR IS LIKELY

14   TO FIND HIM GUILTY BEYOND A REASONABLE DOUBT.  HE SHOULD NOT

15   CONTINUE TO SUFFER THAT PREJUDICE WHILE THEY ERECT PROCEDURAL

16   BARRIERS.

17             AND FOR ALL OF THOSE REASONS, YOUR HONOR, THE COURT

18   SHOULD ALLOW US TO AMEND AND ORDER THEM TO RESPOND WITHIN 30

19   DAYS.

20             THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

21             I WOULD LIKE TO RULE RIGHT NOW, BUT I THINK I

22   BETTER STUDY IT A LITTLE BIT FURTHER.  SO, I'M GOING TO TAKE

23   IT UNDER SUBMISSION.  I'LL GET A RULING OUT AS SOON AS I CAN.

24             MR. GENEGO:  THANK YOU.

25             THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

1              MR. BRETON:  YES, YOUR HONOR.  DOES YOUR HONOR WANT

2       ME TO SUPPLY THE CITATIONS --

3              THE COURT:  IF --

4              MR. BRETON:  -- ANY OF THE BRIEFING?

5              THE COURT:  YES, IF YOU HAVE A CITATION TO THAT, I

6       WOULD APPRECIATE IT, MR. BRETON.  LET MR. GENEGO KNOW ABOUT

7       IT BEFORE YOU SUBMIT IT TO THE COURT.

8              MR. GENEGO, IF THERE'S ANYTHING YOU WANT TO SUBMIT

9       IN RESPONSE TO THAT, LET'S --

10             MR. GENEGO:  I PUT OFF ALL MY LOSING PETITIONS, BUT

11      I'LL -- I WON'T BURDEN THE COURT WITH THOSE.

12             MR. BRETON:  WOULD IT BE OF BENEFIT TO THE COURT IF

13      I PROVIDED A COPY OF THE BRIEFING IN KILLIAN?

14             THE COURT:  NO.

15             MR. BRETON:  MY UNDERSTANDING IS THAT IT WAS

16      EXHAUSTED.  IT WAS NEVER --

17             THE COURT:  YOU KNOW, IT DOESN'T REALLY MATTER WHAT

18      THE BRIEFING SAID, AS GOOD AS I'M SURE IT WAS, SINCE MR.

19      GENEGO WAS INVOLVED AND YOUR OFFICE WAS AS WELL.  BUT VERY

20      OFTEN BRIEFS ARE BETTER THAN DECISIONS.  NOT ALWAYS, OF

21      COURSE.

22             MR. GENEGO:  I DO KNOW IT WAS RAISED IN THE

23      DISTRICT COURT, AND THAT'S WHY IT WAS NOT WILLING TO MAKE A

24      DECISION ABOUT THE NINTH CIRCUIT BRIEFING.

25             MR. BRETON:  WELL, WE READ THE BRIEFING.

1           MR. GENEGO:  DID YOU?

2           THE COURT:  IT JUST DOESN'T MATTER.  YOU KNOW, WHAT

3    MATTERS IS WHAT THE DECISION IS --

4           MR. GENEGO:  RIGHT.  NO, I AGREE.

5           THE COURT:  -- AND WHAT IS IMPLICIT AND EXPLICIT IN

6    THE DECISION, SO.

7           MR. BRETON, HOW LONG DO YOU NEED TO SUBMIT THE

8    CITATION TO TAYLOR?

9           MR. BRETON:  I'LL DO IT THIS AFTERNOON, YOUR HONOR.

10          THE COURT:  RIGHT.

11          MR. GENEGO, IF THERE'S ANYTHING YOU WANT TO SUBMIT

12   IN RESPONSE TO THAT, DO IT BY THE END OF BUSINESS TOMORROW.

13          MR. GENEGO:  I WILL.  THANK YOU.

14          THE COURT:  ALL RIGHT.

15          MR. BRETON:  AND, YOUR HONOR, FOR THE RECORD, I

16   WOULD ALSO LIKE TO STATE THAT THE TWO JUSTICES OF THE

17   CALIFORNIA SUPREME COURT DID NOT VOTE TO HEAR THE CASE.  THEY

18   VOTED TO GRANT THE WRIT.  THEY VOTED TO GRANT THE PETITION.

19          THE COURT:  THE WRIT OR THE OSC?

20          MR. BRETON:  NO.  THEY VOTED TO GRANT THE PETITION,

21   TO GRANT THE HABEAS --

22          THE COURT:  WHY DON'T YOU INCLUDE THAT IN YOUR

23   BRIEF THIS AFTERNOON AS WELL.

24          AND, MR. GENEGO, IF YOU WANT TO FILE ANYTHING IN

25   RESPONSE TO THAT AS WELL.

1              MR. GENEGO:  I THINK THAT I MIGHT BECAUSE I THINK

2     THAT THAT TERM IS ONE OF OURS ABOUT GRANTING THE PETITION.

3     BUT I'LL SEE WHAT IT SAYS.

4              THE COURT:  ALL RIGHT.

5              MR. GENEGO:  THANK YOU.

6              THE COURT:  ALL RIGHT.  WE'LL BE IN RECESS.

7              (PROCEEDINGS CONCLUDED 11:20 A.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3              I CERTIFY THAT THE FOREGOING IS A CORRECT

4    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

5    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6

7

8    DOROTHY BABYKIN                        2/3/09

9    _____      _____

10   FEDERALLY CERTIFIED TRANSCRIBER        DATED

11   DOROTHY BABYKIN

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```