William J. Genego (CA Bar No. 103224)
Vicki I. Podberesky (CA Bar No. 123220)
Richard G. Hirsch (CA Bar No. 39678)
NASATIR, HIRSCH, PODBERESKY & GENEGO
2115 Main Street
Santa Monica, California 90405
Telephone:   310-399-3259
Telecopier:  310-392-9029

Attorneys for Petitioner
Bruce Lisker

## United States District Court

## Central District of California

| | |
|---|---|
| Bruce E. Lisker, | Case No. CV 04-2687-VAP (RZ) |
| Petitioner, | NOTICE OF MOTION AND MOTION FOR BAIL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION; DECLARATION OF VICKI I. PODBERESKY; EXHIBITS |
| vs. | |
| Michael Knowles, Warden, | |
| | Date:  August 10, 2009 |
| | Time:  10:00 a.m. |
| Respondent. | Place: Courtroom 2 |

To Respondent Michael Knowles, and his attorneys in this matter, Attorney General Edmund G. Brown, Jr., and Deputy Attorney Generals Robert Breton and John Yang, PLEASE TAKE NOTICE that on August 10, 2009, at 10:00 in Courtroom 2 of the United States District Court, Riverside Federal Courthouse, Petitioner Bruce Lisker, will move the Court to issue an order releasing him on bail.

The grounds in support of this motion are that Mr. Lisker is neither a flight risk nor a danger to the community. Further, there exist extraordinary circumstances specific to this case that warrant granting bail, including: the Second Report and Recommendation issued by Magistrate Ralph Zarefsky on March 2, 2009, recommending that this Court grant the Second Amended Petition for Writ of Habeas Corpus as to the second, third and fourth claims; the extraordinary length of time Mr. Lisker has already served for a crime for which he has proved his probable innocence; and the fact he was denied effective assistance of counsel at trial and was convicted on the basis of false evidence. Finally, Mr. Lisker has housing and other community support available to him should he be released on bail. See Declaration of Vicki I. Podberesky; Letters of Support[1], attached as Exhibit A.

Dated: July 13, 2009     Respectfully submitted,

Nasatir, Hirsch, Podberesky & Genego

By: /s/
    William J. Genego
    Vicki I. Podberesky
    Counsel for Petitioner
    Bruce Lisker

---

[1] The letters of support were originally gathered and submitted to the Parole Board earlier this year in support of parole. They are equally relevant to the issue of bail.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Bruce Lisker has been imprisoned since March 10, 1983 for the murder of his mother, Dorka Lisker. More than 26 years later, after extensive evidentiary hearings, briefings and argument,[2] he still remains behind bars. Mr. Lisker now awaits this Court's decision on the Second Report and Recommendation wherein Magistrate Zarefsky recommends that relief be granted as to Petitioner's second, third and fourth claims.

---

[2] These habeas proceedings became even more protracted when following this Court's first order, wherein Respondent's motion to dismiss Mr. Lisker's habeas petition was denied, Respondent refused to waive exhaustion and allow Petitioner to amend his petition to include claims based on evidence presented during the first evidentiary hearing in federal court. Respondent opposed Petitioner's motion to amend, taking the position before Magistrate Zarefsky that "a lot of evidence has been developed here" and that the state courts should be allowed the "opportunity either to issue an order to show cause, to hold a hearing, to make a ruling. And it is not beyond the realm of possibility." Transcript of November 27, 2006 court hearing at 26; *See also* Second Report and Recommendation at 8. Consequently, in order for Petitioner to preserve his claims, he was left with no choice but to return to state court. However, once in state court, Respondent took any entirely different tact, re-arguing points that had been previously rejected by the federal court and arguing that Petitioner's claims were defaulted. *See* Second Report fnd Recommendation at 9. The result of this was a significant delay in these proceedings and the inefficient and wasteful use of judicial resources.

That Second Report and Recommendation was filed on March 2, 2009. Respondent filed objections to the Second Report and Recommendation on April 8, 2009. As of the filing of this motion for bail, this Court has not yet acted upon the Magistrate's Second Report and Recommendation. Mr. Lisker now moves this Court for bail.

## II.

### ARGUMENT

**A.   The Court Has the Authority to Grant Bail**

When a petitioner seeks bail after an appeal has been taken from an order either granting or denying release on the merits, the "standard which governs" the court's decision is provided by Fed.R.App.P. 23. *Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir. 1987)(citations omitted). If a decision not to release a prisoner is under review, the court *may* order that the prisoner be detained in custody or released on his own personal recognizance, with or without surety. *See* Fed.R.App.P. 23(b). If a decision to release a prisoner is under review the prisoner *must*, unless otherwise ordered, be released on his own personal recognizance, with or without surety. *See* Fed.R.App.P. 23(c). Thus, if this Court should act on the Magistrate's Second Report and Recommendation prior to the date set for hearing on this motion, the Court clearly has the power under Fed.R.App.P. 23 to set bail.

Where no decision releasing or detaining a prisoner has been made, it is the position of Petitioner that the Court still has the authority to set bail. The Ninth Circuit has explained that a "federal court's authority to release a state prisoner on recognizance or surety in the course of a habeas corpus proceeding derives from the power to issue the writ itself." *Marino*, 812 F.2d at 507, *citing*, *Ostrer v. United States,* 584 F.2d 594 (2d Cir.1978); *In re Wainwright,* 518 F.2d 173, 175 (5th Cir.1975); *United States ex rel. Thomas v. New Jersey,* 472 F.2d 735 (3d Cir.), *cert. denied,* 414 U.S. 878, 94 S. Ct. 121, 38 L. Ed.2d 123 (1973); *Woodcock v. Donnelly,* 470 F.2d 93, 94 (1st Cir.1972).

In *Marino,* the court stated that a "federal court's *authority* to release a state prisoner on recognizance or surety in the course of a habeas corpus proceeding derives from the power to issue the writ itself," and that authority is not dependent upon or circumscribed by the stage of the proceedings. *Marino*, 812 F.2d at 507 (emphasis added) (citations omitted).[3]

---

[3] *Roe v. United States Dist. Ct.*, 257 F.3d 1077 (9th Cir. 2001), has read *Marino* more narrowly as holding that "[t]he release on bail of state prisoners seeking habeas corpus relief in federal court is ... *governed by Fed. R.App. P. 23.*" *Id.*, at 1080, n.2, *quoting, Marino*, 812 F.2d at 507 (emphasis supplied by Court in *Roe*). Based on that reading, the *Roe* Court did not view *Marino* as support for the proposition that a federal court has the authority or power to grant bail to a habeas petitioner prior to making a decision, because Fed.R.App.P. 23 only addresses release

(continued...)

1 Confirmation that a court has authority to grant bail
2 prior to a decision on a petition is provided by the
3 numerous courts that have assumed that such power exists.
4 *See, e.g., Grune v. Coughlin*, 913 F.2d 41 (2nd Cir. 1990)
5 (finding denial of bail on pending habeas application is an
6 appealable order and assuming without discussion that court
7 had power to grant bail but dismissing appeal for failure to
8 obtain a certificate of probable cause to appeal order
9 denying bail); *Dotson v. Clark,* 900 F.2d 77 (6th Cir. 1990)
10 (finding denial of bail on pending habeas application is an
11 appealable order and assuming without discussion that court
12 had power to grant bail); *Land v. Deeds*, 878 F.2d 318 (9th
13 Cir. 1989), *citing, Galante v. Warden*, 573 F.2d 707, 708 (2d
14 Cir. 1977) (finding denial of bail on pending habeas
15 application is not an appealable order and construing appeal
16 as a petition for a writ of mandamus and assuming without
17 discussion that court could grant bail); *United States v.
18 Smith*, 835 F.2d 1048 (3d Cir. 1987)(finding denial of bail
19 on pending habeas application is an appealable order and
20 assuming without discussion that district court had power to
21 grant bail).

---

25 $^3$(...continued)
26 after an appeal has been taken. The *Roe* court went on to state that the question of whether a court has the authority
27 to grant bail pending a decision on a petition to be "an issue of first impression in this Circuit," which it did not need to
28 resolve.

- 4 -

The same factors that the Ninth Circuit has indicated apply when bail is sought after an order granting or denying release has been issued, apply here as well: (1) release of the person would not pose a danger to the community; (2) the person is not a flight risk; and (3) there is a high probability of success, or some other extraordinary circumstance that makes granting release appropriate. *Roe*, 257 F.3d at 1079-81; *Marino*, 812 F.2d at 508; *Land v. Deeds*, 878 F.2d 318 (9th Cir. 1989) ("Bail pending a decision in a habeas case is reserved for extraordinary cases involving special circumstances or a high probability of success."), *citing, Aronson v. May*, 85 S.Ct. 3, 5 (1964).

**B.   The Relevant Factors Support the Granting of Bail**

Evidence that Mr. Lisker is not a danger to the community is best exemplified by his conduct over the course of his 26 years imprisonment. Except for an incident in December 2007, Mr. Lisker has remained incident free since January 2001[4]. He has consistently received work evaluations

---

[4] In December 2007 Mr. Lisker had a disagreement with a prison guard over whether he could keep a bucket in his cell to wash his clothes. Upon being told he could not have the bucket, Mr. Lisker grabbed the bucket and threw it down the bed aisle. While the incident was deemed serious by the institution and was seen as conduct which could lead to violence, a subsequent psychiatric evaluation prepared in February 2009, found that the incident showed a mild degree of impulsive action, but that overall Mr. Lisker was a low risk for violence in the free community. *See* Psychological Evaluation by M. Lehrer at pp. 47 and 51, attached hereto as Exhibit B. Moreover, immediately following the incident, Mr.
(continued...)

that range from average to above average and exceptional, and he has completed a wide variety of counseling and vocational training programs both within the institution and through correspondence programs. See Exhibit C; Exhibit D, attached hereto, updated resume of Bruce Lisker.

His most recent psychological evaluation done in connection with his March 2009 Parole Hearing concludes that he "has good social reasoning and can provide good solutions regarding how to deal with common social realities." Exhibit B at 43. It further notes that he "has the capability for good insight and self-assessment." *Id.* Moreover, Dr. Lehrer notes that "there does not appear to be any malicious intent or any desire for non prosocial behavior expressed in any of the contact during this evaluation. Rather, the inmate is very much oriented toward wanting to do the right thing." *Id.* at 44. These observations would suggest a lack of violence and a strong probability of success in the community by Mr. Lisker.[5] *Id.* at 51.

---

[4](...continued)
Lisker voluntarily enrolled in and completed the Victim Awareness Offender's Program, the Coping Skills Program and the Victim Awareness Offender's Program Restorative Justice. *See* Exhibit C, attached hereto, Parole Board Progress reports from 2001-September, 2008 at 53.

[5] Petitioner asserts that the offense of conviction does not provide a legitimate factor in considering whether he is a danger to the community due to the age of the conviction and more importantly, the fact that new evidence developed during these habeas proceedings supports the

(continued...)

- 6 -

Mr. Lisker's decades long fight for freedom and to prove innocence demonstrates that he is not a flight risk. Mr. Lisker has proven that he is as committed to vindicating himself as he is to getting out of prison. Moreover, Mr. Lisker has maintained contact with members of the community while incarcerated, and would have a strong support group available to him, including being able to reside with Jerry Weinstock, his deceased step-mother's husband. *See* Exhibit A at 11; Declaration of Vicki I. Podberesky.

Finally, a high probability of success on the merits is demonstrated by the well-reasoned decision by Magistrate Zarefsky in the Second Report and Recommendation submitted to this Court. Mr. Lisker's high probability of success is itself a sufficient "extraordinary circumstance" to warrant bail. *Land*, 878 F.2d at 318.

### III.

### CONCLUSION

Mr. Lisker has already served more than 26 years in custody for a crime that this Court has already found, "is more probable than not that no reasonable juror would find [him] guilty" of. For all the foregoing reasons, and any such additional and further reasons as may appear at a full

---

[5](...continued)
conclusion that Mr. Lisker did not in fact commit the crime for which he was convicted.

1 hearing on the motion, the Court should order Mr. Lisker
2 released on bail, under such terms and conditions as the
3 Court deems appropriate.
4 Dated: July 13, 2009         Respectfully submitted,
5                              Nasatir, Hirsch, Podberesky & Genego
6
7                              By:      /s/
                                     William J. Genego
8                                    Vicki I. Podberesky
                                     Counsel for Petitioner
9                                    Bruce Lisker

- 8 -

**DECLARATION OF VICKI I. PODBERESKY**

I, VICKI I. PODBERESKY, declare and state as follows:

1. I am an attorney duly licensed to practice law before all courts of the State of California and before the United States District Court for the Central District of California. I am one of Mr. Lsiker's counsel of record in the above-captioned matter.

2. On July 10, 2009, I spoke by telephone with Jerry Weinstock. Mr. Weinstock was married to Mr. Lisker's step-mother, Joy Lisker, before she passed away in April 2007.

3. Mr. Weinstock has been and is an ardent support of Bruce Lisker, and has maintained regular contact with him throughout his years of imprisonment. Earlier this year, in February 2009, Mr. Weinstock wrote a letter of support for Mr. Lisker for consideration by the Parole Board. *See* Exhibit A at 11. In that letter, Mr. Weinstock indicated that he would be willing to allow Mr. Lisker to reside with him should he be released. He further acknowledged, as reflected in the many other letters of support attached hereto as Exhibit A, that there exists strong community support for Mr. Lisker and that many individuals stand ready to provide him with assistance should he be released.

4. Mr. Weinstock indicated to me during our telephone conversation that the information in his letter of February 15, 2009 remains current and valid.  He is prepared to allow

- 9 -

1 | Mr. Lisker to reside with him should he be released on bail.
2 |
3 | I declare that the foregoing is true and correct to the best
4 | of my belief and knowledge. Executed this 13th day of July,
5 | 2009 in Santa Monica, California.

_____/s/_____
Vicki I. Podberesky

- 10 -