1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  PAMELA C. HAMANAKA
   Senior Assistant Attorney General
4  SCOTT A. TARYLE
   Supervising Deputy Attorney General
5  ROBERT D. BRETON
   Deputy Attorney General
6  JOHN YANG
   Deputy Attorney General
7  State Bar No. 192938
     300 South Spring Street
8    Los Angeles, CA 90013
     Telephone: (213) 897-2283
9    Fax: (213) 897-6496
     Email: DocketingLAAWT@doj.ca.gov
10 Attorneys for Respondent

11          IN THE UNITED STATES DISTRICT COURT

12        FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13 **BRUCE E. LISKER,** | CV 04-2687-VAP (RZ) |
| 14 Petitioner, | **RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION** |
| 15 **v.** | **FOR BAIL; MEMORANDUM OF POINTS AND** |
| 16 **MICHAEL KNOWLES, Warden,** | **AUTHORITIES IN SUPPORT THEREOF; DECLARATION** |
| 17 Respondent. | **OF BETH E. SILVERMAN** |
| 18 | Hon. Virginia A. Phillips |
| 19 | U.S. District Court Judge |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES     1

INTRODUCTION     1

ARGUMENT     3

**PETITIONER'S MOTION FOR RELEASE ON BAIL PENDING STATE AND FEDERAL HABEAS PROCEEDINGS SHOULD BE DENIED**     3

    A.   This Court Has No Authority To Grant Bail Before Resolution Of Petitioner's Habeas Claims On The Merits     3

       1.   The Power To Grant Bail Must Be Conferred By Statute     4

       2.   No Statutory Provision, Including That Which Confers Upon The Courts Power To Grant The Writ, Either Expressly Or Impliedly Confers Upon Federal Courts The Authority To Release A State Prisoner Prior To A Decision On His Habeas Corpus Petition     6

    B.   Even If This Court Has The Power To Grant Bail Under These Circumstances, It Should Not Exercise That Authority In This Case Based On The Lack Of Extraordinary Circumstances, The Orderly Adjudication Of Petitioner's Current Claims, Deference To The State Courts, And Petitioner's Unsuitability For Release On Bail     9

       1.   Petitioner Fails To Show "Special Circumstance" Warranting Bail     10

       2.   Petitioner Fails To Show "High Probability Of Success" As To His Habeas Claims     13

       3.   Petitioner's Bail Motion Is Highly Premature     13

       4.   Applying Traditional Bail Factors, Petitioner Is Unsuitable For Enlargement     14

          a.   The State Has A Strong Interest In Having Petitioner Satisfy His Prison Term And In Attempting To Rehabilitate Him     15

          b.   Petitioner Is A Flight Risk     18

          c.   Petitioner Poses A Grave Danger To The Public     19

          d.   Petitioner's Sentence Is Not Near Completion     20

i

**TABLE OF CONTENTS  (continued)**

1

2
**Page**

3          e.    There Is No Valid Interest In Having This Inmate
                 Released                                                        20

4          f.    Petitioner's Habeas Claims Exhibit Little Likelihood Of
                 Success                                                         21
5
   CONCLUSION                                                                    22
6
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Aronson v. May*,
85 S. Ct. 3,
5    13 L. Ed. 2d 6 (1964)                                                                10

6    *Benson v. California*,
328 F.2d 159 (9th Cir. 1964)                                                      10
7

*Bongiovanni v. Ward*,
8    50 F. Supp. 3 (D. Mass. 1943)                                                      5

9    *Boyer v. City of Orlando*,
402 F.2d 966 (5th Cir. 1968)                                                    9, 11
10

*Chambers v. Holland*,
11    920 F. Supp. 618 (M.D. Pa. 1996)                                                7

12    *Chin Wah v. Colwell*,
187 F. 592 (9th Cir. 1911)                                                        4, 5
13

*Dotson v. Clark*,
14    900 F.2d 77 (6th Cir. 1990)                                                        9

15    *Ex Parte Bollman*,
4 Cranch. 75,
16    8 U.S. 75,
2 L. Ed. 554 (1807)                                                                6
17

*Ex Parte Perkov*,
18    45 F. Supp. 864 (S.D. Cal. 1942)                                                5

19    *Grune v. Coughlin,*
913 F.2d 41 (2d Cir. 1990)                                                        9
20

*Hernandez v. Tapia*,
21    2006 WL 2233219 (N.D. Ohio 2006)                                                7

22    *Herrera v. Collins*,
506 U.S. 390,
23    113 S. Ct. 853,
122 L. Ed. 2d 203 (1993)                                                          11
24

*Hilton v. Braunskill*,
25    481 U.S. 770,
107 S. Ct. 2113,
26    95 L. Ed. 2d 724 (1987)                                                          13-15

27    *House v. Bell*,
126 S. Ct. 2064,
28    165 L. Ed. 2d 1 (2006)                                                            12

# TABLE OF AUTHORITIES  (continued)

**Page**

*In re Ah Moy*,
21 F. 808 (Cir. Ct. D. Cal. 1884)                                                                 4

*In re Carrier*,
57 F. 578 (D. Colo. 1893)                                                                         5

*In re Hanoff*,
39 F. Supp. 169  (N.D. Cal. 1941)                                                                 5

*In re Hardy*,
2007 WL 2128322,
__ Cal. Rptr. 3d __ (July 26, 2007)                                                               2

*In re Roe*,
257 F.3d 1077 (9th Cir. 2001)                                                               3, 8, 9, 11

*In re Shuttlesworth*,
369 U.S. 35,
82 S. Ct. 551,
7 L. Ed. 2d 548 (1962)                                                                            4

*In re Weber*,
11 Cal. 3d 703,
114 Cal. Rptr. 429 (1974)                                                                         2

*Johnson v. Marsh*,
227 F.2d 528 (3d Cir. 1955)                                                                      9-11

*Land v. Deeds*,
878 F.2d 318 (9th Cir. 1989)                                                                       9

*Landano v. Rafferty*,
970 F.2d 1230 (3d Cir. 1992)                                                                      15

*Mapp v. Reno*,
241 F.3d 221 (2d Cir. 2001)                                                                        9

*Marino v. Vasquez*,
812 F.2d 499 (9th Cir. 1987)                                                                     3, 6

*Martin v. Solem*,
801 F.2d 324 (8th Cir. 1986)                                                                      10

*Miller v. Hambrick*,
905 F.2d 259 (9th Cir. 1990)                                                                       7

*Roell v. Withrow*,
538 U.S. 580,
123 S. Ct. 1696,
155 L. Ed. 2d 775 (2003)                                                                          8

iv

# TABLE OF AUTHORITIES  (continued)

**Page**

*Schlup v. Delo*,
513 U.S. 298,
115 S. Ct. 851,
130 L. Ed. 2d 808 (1995)                                          1, 11-13

*States v. Wind*,
527 F.2d 672 (C.A. Mich. 1975)                                          14

*Stevenson v. United States*,
495 F. Supp. 2d 663 (E.D. Mich. 2007)                                    7

*The Floyd Acceptances*,
74 U.S. 666,
19 L. Ed. 169 (1868)                                                     5

*Thomas v. Brewer*,
923 F.2d 1361 (9th Cir. 1991)                                            7

*Thomas v. New Jersey*,
472 F.2d 735 (3d Cir. 1973)                                              6

*United States ex rel. Epton v. Nenna*,
281 F. Supp. 388 (S.D.N.Y. 1968)                                        10

*United States v. Curran*,
297 F. 946 (2d Cir. 1924)                                              4, 5

*United States v. Hudson*,
7 Cranch. 32,
3 L. Ed. 259 (1812)                                                      4

*United States v. Longo*,
46 F. Supp. 169 (D. Conn. 1942)                                          5

*United States v. Pizzarusso*,
28 F. Supp. 158 (D. Conn. 1939)                                          5

*United States v. Sisson*,
220 F. 538 (S.D.N.Y. 1914)                                            7, 8

*Wright v. Henkel*,
190 U.S. 40,
23 S. Ct. 781,
47 L. Ed. 948 (1903)                                                     5

**Statutes**

18 U.S.C. § 3142                                                      6, 18

28 U.S.C. § 2241                                                        6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES  (continued)

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  PAMELA C. HAMANAKA
   Senior Assistant Attorney General
4  SCOTT A. TARYLE
   Supervising Deputy Attorney General
5  ROBERT D. BRETON
   Deputy Attorney General
6  JOHN YANG
   Deputy Attorney General
7  State Bar No. 192938
    300 South Spring Street
8   Los Angeles, CA 90013
    Telephone: (213) 897-2283
9   Fax: (213) 897-6496
    Email: DocketingLAAWT@doj.ca.gov
10 Attorneys for Respondent

11           IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14 | **BRUCE E. LISKER,** | CV 04-2687-VAP (RZ) |
   |                      |                     |
15 |          Petitioner, | **RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION FOR BAIL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF BETH E. SILVERMAN** |
16 |   **v.**             |                     |
17 | **MICHAEL KNOWLES, Warden,** |            |
   |          Respondent. |                     |
18 |                      | Hon. Virginia A. Phillips U.S. District Court Judge |
19

20          Respondent submits this Opposition to Petitioner's latest Motion for Bail

21 Pending Adjudication of the Second Amended Petition for Writ of Habeas Corpus.

22 The Opposition is based upon the records and files in this case, the attached

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1

1  Memorandum of Points and Authorities, and any argument that may be heard on the

2  Motion.

3       Dated:  July 23, 2009

4                          Respectfully submitted,

5                          EDMUND G. BROWN JR.
                           Attorney General of the State of California
6                          DANE R. GILLETTE
                           Chief Assistant Attorney General
7                          PAMELA C. HAMANAKA
                           Senior Assistant Attorney General
8
                           SCOTT A. TARYLE
9                          Supervising Deputy Attorney General
                           ROBERT D. BRETON
10                         Deputy Attorney General

11

12                         /s/ John Yang

13                         JOHN YANG
                           Deputy Attorney General
14
                           Attorneys for Respondent
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3       On April 16, 2004, Petitioner filed a Petition for Writ of Habeas Corpus in

4  this Court, alleging: (1) a violation of his right to counsel through his jail placement;

5  (2) ineffective assistance of trial counsel; and (3) factual innocence.  On May 18,

6  2004, Respondent filed a motion to dismiss that petition for untimeliness under the

7  statute of limitations applicable to federal habeas applicants.  28 U.S.C. § 2244(d)

8  (statute of limitations enacted as part of the Antiterrorism and Effective Death Penalty

9  Act of 1996 (AEDPA)).  On May 24, 2004, Petitioner, with leave of this Court, filed

10  a First Amended Petition for Writ of Habeas Corpus deleting claim three,

11  acknowledging that it was not exhausted.  Petitioner opposed Respondent's Motion

12  to Dismiss by alleging, inter alia, that the "actual innocence" gateway defined in

13  *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) excused his

14  untimeliness and lifted the bar of the statute of limitations.

15       This court held an evidentiary hearing to consider Petitioner's gateway claim.

16  On May 4, 2006, the Court issued a Report and Recommendation ("First R&R")

17  finding that the *Schlup* gateway applied to AEDPA cases, and that Petitioner had met

18  his burden to overcome the untimeliness of his Petition, thus recommending denial of

19  Respondent's Motion to Dismiss.  Respondent filed objections to the First R&R,

20  asserting that the *Schlup* gateway does not apply to the AEDPA statute of limitations

21  and challenging the basis for the Court's factual finding that Petitioner had met his

22  burden under the gateway.  The First R&R was adopted by the District Court on

23  October 10, 2006.  Respondent's motion for permission to file an interlocutory appeal

24  was denied by the Court, and Respondent was thereafter ordered to address the merits

25  of the claims raised in the Petition.

26       Petitioner then sought a further amendment to his federal petition by adding

27  a new claim alleging presentation of false evidence, and another new claim alleging

28  cumulative prejudice neither of which had ever been brought in the California

1

1  Supreme Court.  Respondent opposed the proposed second amendment based on

2  Petitioner's failure to exhaust state remedies.  On January 12, 2007, this Court

3  permitted the amendment but stayed the federal proceeding and held it in abeyance to

4  allow Petitioner to present his new claims to the California Supreme Court.

5       On February 13, 2007, Petitioner filed a habeas corpus petition in the

6  California Supreme Court.[1/]  During the pendency of that state petition, Petitioner

7  moved in this Court for an order granting release on bail.  That motion was denied on

8  August 23, 2007.

9       On November 14, 2007, Petitioner's state habeas petition was denied on

10  procedural grounds.  On December 4, 2007, this Court ordered Respondent to respond

11  to the Petition, now amended to include the newly exhausted claims.  Respondent filed

12  his Answer to the Second Amended Petition on April 2, 2008.  Petitioner filed a

13  traverse on June 2, 2008.

14       On September 9, 2008, this Court ordered an evidentiary hearing on the issue

15  of ineffective assistance of counsel.  The hearing was held on October 31, 2008.

16  Thereafter, post-evidentiary hearing briefs were filed by both parties.  On March 2,

17  2008, Magistrate Judge Zarefsky issued a Second Report and Recommendation

18  (Second R&R), recommending that a writ of corpus be granted as to the claims of

19  ineffective assistance of counsel and the presentation of false evidence.  Respondent

20  filed his objections to this latest Report and Recommendation on April 8, 2009.

21  / / /

22

---

23       1.  That state petition raised a false evidence claim, a variation of claim two of
   his federal petition, i.e., ineffective assistance of counsel for failure to investigate and

24  advance a third–party culpability defense, and a second new claim, i.e., that the State

25  knowingly exploited an opportunity to confront Petitioner without counsel. Petitioner,
   however, did not raise a claim of actual innocence in the state petition. (*See* Ex. D of

26  First Bail Motion.)  California, unlike this Court, recognizes a freestanding claim of

27  actual innocence as a substantive basis for habeas corpus relief. *See In re Hardy*, 2007
   WL 2128322, __ Cal. Rptr. 3d __ (July 26, 2007); *In re Weber*, 11 Cal. 3d 703, 114

28  Cal. Rptr. 429 (1974).

1    This Court has yet to render a decision on whether to adopt and accept the
2    latest findings, conclusions, and recommendations of the Magistrate Judge.
3    Nonetheless, Petitioner now seeks an order from this Court releasing him on bail.

4    Petitioner's motion for bail pending adjudication of his Petition must be
5    rejected for the reasons set forth below.

6    **ARGUMENT**

7    **PETITIONER'S MOTION FOR RELEASE ON BAIL**
     **PENDING STATE AND FEDERAL HABEAS PROCEEDINGS**
8    **SHOULD BE DENIED**

9    In support of his latest motion for release on bail, Petitioner cites: (1) the lack
10   of flight risk; (2) the absence of danger to the community; (3) the issuance of the
11   Second Report and Recommendation; (4) the length of time Petitioner already served;
12   (5) the "probable innocence" that he had proven; (6) his claims that he was denied
13   ineffective assistance of counsel and was convicted via false evidence; and (7) the
14   offers of housing and community support he has received. (Second Bail Motion at 2.)
15   Respondent strongly disagrees. Bail should not be granted in this case for the
16   compelling reasons set forth below.

17   **A. This Court Has No Authority To Grant Bail Before Resolution Of**
     **Petitioner's Habeas Claims On The Merits**
18

19   Respondent reiterates the position, set forth in his opposition to Petitioner's
20   first motion for bail, that a federal court does not have authority to grant bail before
21   reaching judgment on the merits of a habeas petition by a state prisoner. The law in
22   this Circuit is that a federal court, *after* deciding a habeas corpus petition in the state
23   prisoner's favor, has the power to grant the prisoner release on bail *pending appeal*.
24   *See Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir. 1987); Fed. R. App. P. 23.
25   However, it remains an open question in the Ninth Circuit whether a federal court has
26   the authority to grant bail before a District Court decision on a habeas petition. *In re*
27   *Roe*, 257 F.3d 1077, 1079-80 (9th Cir. 2001) (observing that federal courts are not in
28   agreement on this issue, noting that the Ninth Circuit has "not yet weighed in on this

3

1    issue," and expressly declining to resolve the issue in that case).  Based on long-

2    standing circuit authority, this Court should conclude that a habeas court has no power

3    to release a state prisoner before his claims have been adjudicated.[2/]

4        **1.    The Power To Grant Bail Must Be Conferred By Statute**

5            According to undisturbed Ninth Circuit authority, the power to enlarge a

6    person on bail is not an inherent power[3/] in federal courts and thus, must be expressly

7    conferred by statute.  *Chin Wah v. Colwell*, 187 F. 592, 594 (9th Cir. 1911); *see also*

8    *In re Ah Moy*, 21 F. 808, 809 (Cir. Ct. D. Cal. 1884) (holding "no authority" after

9    / / /

10    _____

11        2. In *In re Shuttlesworth*, 369 U.S. 35, 82 S. Ct. 551, 7 L. Ed. 2d 548 (1962),

12    which Petitioner does not cite, in a one-page per curiam order, the United States

13    Supreme Court remanded the case to the district court with instructions to hold the

14    habeas proceedings in abeyance while the petitioner exhausted his remedies in state

    court, including any application for bail in the state court "pending disposition of

15    petitioner's application for state relief."  The Court noted that if the petitioner failed

16    to secure relief from the state courts on the merits of his claims, or failed to secure bail

    from the state courts, petitioner could "upon appropriate showing, proceed on [his

17    merits] application" in federal district court, "which may then consider all state

18    remedies exhausted and proceed to hear and determine the cause, including any

    application for bail pending that court's final disposition of the matter."  *Id*.  The

19    Court did not address the source of the district court's authority to entertain or grant

20    a petitioner's request for bail pending final resolution of his habeas claims.  *See id*.

    Indeed, the issue of a district court's authority to grant bail pending resolution of the

21    merits of a petitioner's habeas claims was not specifically addressed.  Thus,

22    *Shuttlesworth* does not provide a United States Supreme Court holding on the question

    of a district court's authority to grant bail to a petitioner while the merits of his habeas

23    claims are pending in that court.

24        3.  Inherent powers of courts are those "which result from [the court's] very

25    nature" and "which cannot be dispensed with in a court because they are necessary to

    the exercise of all others."  *United States v. Curran*, 297 F. 946, 955 (2d Cir. 1924).

26    The Supreme Court has narrowly defined such authority as based upon an "implied

27    power to preserve [the court's] own existence and promote the end and object of its

    creation."  *United States v. Hudson*, 7 Cranch. 32, 3 L. Ed. 259 (1812).  "To fine for

28    contempt–imprison for contumacy– enforce the observance of order," are examples

    of such limited inherent powers.  *Id*.

4

deportation order to grant bail pending availability of vessel of deportation).[4/]  District

courts in this circuit have historically applied this limitation.  *In re Hanoff*, 39 F. Supp.

169  (N.D. Cal. 1941) (citing approvingly to *Chin Wah* and noting binding effect of

that decision, the district court found that because the applicable immigration

provision only conferred the right to grant bail to the Secretary of Labor, "the power

to admit to bail is not reposed in this Court"); *Ex Parte Perkov*, 45 F. Supp. 864 (S.D.

Cal. 1942) (absent statutory authority, there is no "power in United States courts to

admit to bail in immigration cases.").[5/]

---

4.  The Supreme Court has specifically refrained from resolving this issue.  *See
Wright v. Henkel*, 190 U.S. 40, 23 S. Ct. 781, 47 L. Ed. 948 (1903).

5.   A number of out-of-circuit courts have adopted this position.  *See In re
Carrier*, 57 F. 578 (D. Colo. 1893); *United States v. Curran*, 297 F. 946; *United States
v. Pizzarusso*, 28 F. Supp. 158 (D. Conn. 1939); *United States v. Longo*, 46 F. Supp.
169 (D. Conn. 1942); *Bongiovanni v. Ward*, 50 F. Supp. 3 (D. Mass. 1943).

In *Carrier*, the district court observed:

The matter of admitting to bail is not a question of practice.  Since the
time of Edward I, it has been regulated by statute; and, in our day, bail
is not allowed in any case except in pursuance of some statute.

*Carrier*, 57 F. at 579.  The Supreme Court in *Wright* referenced this district court
holding and did not criticize it.  *Wright v. Henkel*, 190 U.S. at 62.

The basis for the view set forth in *Carrier*, of course, finds support in the
fundamental construction of our system of government.  As the Supreme Court has
recognized, any power of any department of the United States government must be
found either in the Constitution or in an enactment of Congress.  *The Floyd
Acceptances*, 74 U.S. 666, 676, 19 L. Ed. 169 (1868).

The power to grant habeas relief is based upon legislation, not on the traditions
of the common law:

Courts which originate in the common law possess a jurisdiction which
must be regulated by their common law, until some statute shall change
their established principles; but courts which are created by written law,
and whose jurisdiction is defined by written law, cannot transcend that
jurisdiction. . . . [Hence] for the meaning of the term habeas corpus,
resort may unquestionably be had to the common law; but the power to
award the writ by any of the courts of the United States, must be given

(continued...)

1    In this regard, federal bail statutes such as 18 U.S.C. § 3142 and Rule 46 of

2  the Federal Rules of Criminal Procedure "are irrelevant to the release by federal courts

3  of state prisoners.  They deal with federal criminal proceedings only." *Thomas v. New*

4  *Jersey*, 472 F.2d 735, 742 (3d Cir. 1973); *Marino v. Vasquez*, 812 F.2d at 507

5  (accord).  In light of the lack of any other statutory authority expressly providing for

6  the grant of bail in habeas proceedings, the Ninth Circuit has concluded that any

7  power to grant bail to a habeas petitioner must have been derived "from the power to

8  issue the writ itself."  *Marino v. Vasquez*, 812 F.2d at 507, citing, inter alia, *Thomas*

9  *v. New Jersey*, 472 F.2d at 742 ("The power to enlarge a state prisoner at any time

10  before a habeas corpus judgment becomes final, then, exists, if at all, as part of the

11  courts' habeas corpus jurisdiction.").

12    **2.  No Statutory Provision, Including That Which Confers Upon
          The Courts Power To Grant The Writ, Either Expressly Or
13         Impliedly Confers Upon Federal Courts The Authority To
           Release A State Prisoner Prior To A Decision On His Habeas
14         Corpus Petition**

15    Because the federal statute regarding habeas corpus jurisdiction does not

16  expressly confer an authority to grant bail, the relevant inquiry in light of *Marino v.*

17  *Vasquez* is whether there is a power to grant bail to a state prisoner *pending* a habeas

18  decision that can be derived from a federal court's power to grant a writ of habeas

19  corpus.  The answer to that question is no.  This is because the power to grant the writ

20  is, itself, limited.

21    The statutory provisions conferring on federal courts the power to grant the

22  writ allows the grant of a writ of habeas corpus to a state prisoner only if "he is in

23  custody in violation of the Constitution" and other federal law.  *See* 28 U.S.C.

24  § 2241(c)(3) and § 2254(a).  But, there can be no conclusion that a state prisoner is

25  "in custody in violation of" federal law unless and until a federal court has issued a

26

27    5.  (...continued)
      by written law.
28  *Ex Parte Bollman*, 4 Cranch. 75, 93-94, 8 U.S. 75, 2 L. Ed. 554 (1807).

6

1  decision which makes that finding.  Hence, a federal court simply has no power to
2  release a state prisoner before reaching a judicial decision on the merits of his habeas
3  corpus petition.  It necessarily follows that the federal habeas court has no derivative
4  power during that same time to enlarge him on bail.

5       This principle was forcefully articulated by Judge Learned Hand in rejecting
6  the notion that the power of the court to grant bail pende lite inheres in the habeas
7  corpus jurisdiction itself:

8       [a] writ of habeas corpus does not put the relator into the custody of this
9       court. . . [and] does not assume to disturb the custody of the person then
10      detaining the relator. . . .  This court has no proper power to enlarge the
11      relator while the inquiry proceeds. . . .

12 *United States v. Sisson*, 220 F. 538, 540 (S.D.N.Y. 1914).  Judge Hand's observation
13 entirely comports with modern practices relating to state prisoners being produced by
14 state wardens in federal court.  *See Thomas v. Brewer*, 923 F.2d 1361, 1366-67 (9th
15 Cir. 1991) (producing state prisoner under writ of habeas corpus ad prosequendum
16 does not relinquish state custody); *Stevenson v. United States*, 495 F. Supp. 2d 663,
17 669 (E.D. Mich. 2007) ("It is a legal axiom that the state from which a prisoner is
18 transported retains primary jurisdiction over that prisoner as long as the prisoner is
19 serving un unexpired state sentence"); *Hernandez v. Tapia*, 2006 WL 2233219, *2
20 (N.D. Ohio 2006) (accord); *Chambers v. Holland*, 920 F. Supp. 618, 622 (M.D. Pa.
21 1996) (primary jurisdiction and custody remains with state up until satisfaction of
22 state obligation and the state does not relinquish it simply by producing body in
23 federal court upon writ of habeas corpus ad prosequendum); *see also Miller v.
24 Hambrick*, 905 F.2d 259, 261-62 (9th Cir. 1990) (prisoner who was transferred into
25 one district pursuant to habeas corpus writ in order to testify in one of his pending
26 cases remained in custody of warden in district from which he had been transferred).

27      The power to release a state prisoner -- including any derivative power to
28 temporarily release him on bail -- then, can only arise *after* the federal court has

7

1    considered a state prisoner's claims on the merits and has expressly found that his

2    custody resulted from a violation of the Constitution.  As Judge Hand observed,

3    although the court has no power to grant bail pending a decision on the petition, "[i]f

4    the writ be sustained, and the prisoner discharged, then the court might provide for

5    bail to insure his appearance if the ruling were reversed, but only in that case." *United

6    States v. Sisson*, 220 F. at 540.

7         The lack of an extraordinary power to grant bail pending a decision on a

8    habeas petition is further confirmed by Federal Rules of Appellate Procedure 23, the

9    only rule which discusses bail in the habeas context.  As the Ninth Circuit has stated,

10   "[w]hile Rule 23 sets forth conditions for release on bail of habeas petitioners pending

11   appeal of district court decisions granting as well as denying their petitions, the Rule

12   does not appear to contemplate release on bail pending an initial decision in the

13   district court."  *In re Roe*, 257 F.3d at 1080 n.2.

14        Here, a judgment by this Court has yet to issue.  The Magistrate Judge's

15   Second Report and Recommendation (Second R&R), by itself, without a judgment by

16   this Court  adopting or rejecting that R&R, does not resolve the Petition.  *See Roell

17   v. Withrow*, 538 U.S. 580, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003) ("district court

18   free to do as it sees fit with the magistrate judge's recommendations").  Thus, this

19   Court has before it a habeas action that has yet to reach resolution, and therefore, is

20   pending.  Under these circumstances, the Court should find that it has no authority,

21   implied or otherwise, to grant Petitioner enlargement on bail.[6/]

22   / / /

23   / / /

24   / / /

25

26        6.  Respondent acknowledges out-of-circuit authority, cited by Petitioner
     (Second Mot. Bail at 3), which held otherwise, but notes that those cases either
27   conflict with the laws of this circuit, are not binding on this Court, or should not be
     adopted in this case for the reasons set forth above.
28

8

**B. Even If This Court Has The Power To Grant Bail Under These Circumstances, It Should Not Exercise That Authority In This Case Based On The Lack Of Extraordinary Circumstances, The Orderly Adjudication Of Petitioner's Current Claims, Deference To The State Courts, And Petitioner's Unsuitability For Release On Bail**

Even assuming that this Court does have the authority to grant bail before a decision on a habeas petition is even reached by this Court, that authority must be "reserved for extraordinary cases involving special circumstances or a high probability of success." *In re Roe*, 257 F.3d at 1080; *see also Land v. Deeds*, 878 F.2d 318 (9th Cir. 1989); *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) ("prisoners must be able to show not only a substantial claim of law based on the facts surrounding the petition, but also the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interest of justice.'").  One circuit court which has recognized the power to grant bail pending a habeas proceeding emphasized that such circumstances would have to be so extraordinary that the "grant of bail [is] necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001).

None of the extraordinary circumstances that have been recognized are present in this case.  One example of such a circumstance is an urgent medical condition.  *See Johnson v. Marsh*, 227 F.2d 528, 529 (3d Cir. 1955) (prisoner becoming blind due to advanced diabetic condition granted release to hospital for treatment only).  Another example is where an obvious or conceded constitutional violation occurred and the short sentence imposed would expire prior to a decision on the habeas petition. *Boyer v. City of Orlando*, 402 F.2d 966, 967-68 (5th Cir. 1968) (a habeas petitioner clearly deprived of counsel at his misdemeanor trial was released on bail based on obvious constitutional error and the fact that his 120-day sentence would be completed if not granted bail).

The rarity at which such an extraordinary power of pre-determination bail is exercised is due to "the limited liberty interest at stake for a habeas petitioner, as opposed to that of a defendant prior to trial or even on direct appeal. . . ." *Grune v.*

9

*Coughlin,* 913 F.2d 41, 44 (2d Cir. 1990).  Indeed, it must not be forgotten that a federal habeas petitioner has already been convicted, has lost the presumption of innocence, and has lost the right to freedom, however conditional.  *See Aronson v. May,* 85 S. Ct. 3, 5, 13 L. Ed. 2d 6 (1964) [Justice Douglas].  As one court put it,

> Where the State has carried a prosecution to conviction and the verdict has been sustained through the appellate process . . . there are compelling interests on the side of proceeding to execute the criminal judgment.  It should require a substantial showing of countervailing circumstances to override or postpone that objective.

*United States ex rel. Epton v. Nenna*, 281 F. Supp. 388, 389 (S.D.N.Y. 1968).

The grant of bail in the habeas context is so extraordinary, that the Ninth Circuit has held:

> It would not be appropriate for us at this stage of the proceedings to enlarge this petitioner on bail even if we found that the allegations of his petition for habeas corpus made out a clear case for his release.  Something more than that is required before we could be justified in granting bail.

*Benson v. California*, 328 F.2d 159, 162 (9th Cir. 1964).  Moreover, even where an inmate claimed that "his reincarceration was unlawful because he had already served his sentence and had been discharged," a court found bail to be unwarranted because "there is nothing unusual about a claim of unlawful confinement in a habeas proceeding."  *Martin v. Solem*, 801 F.2d 324, 330 (8th Cir. 1986).

**1.  Petitioner Fails To Show "Special Circumstance" Warranting Bail**

In this case, Petitioner cannot demonstrate either the presence of "special circumstances" warranting his extraordinary request for bail or a "high probability of success" on his habeas claims.

Petitioner here does not suffer from the type of life-threatening health condition which compelled the court in *Marsh* to grant bail (largely for humanitarian

10

1  reasons) for the limited purpose of hospitalization.  *See Johnson v. Marsh*, 227 F.2d

2  at 529.  Nor, as an inmate with a life sentence for murder, does Petitioner's situation

3  remotely compare to the situation of a prisoner facing a short misdemeanor sentence

4  that would expire long before the completion of the habeas proceeding and where the

5  complete and conceded deprivation of counsel at trial presented a near certainty of

6  success.  *See Boyer v. City of Orlando*, 402 F.2d at 967-68.

7         Respondent reiterates that this Court's earlier finding that Petitioner made the

8  requisite showing under the *Schlup* gateway does not constitute a special

9  circumstance.  A similar *Schlup* finding was found to be insufficient by the Ninth

10  Circuit to warrant bail.  *See In re Roe*, 257 F.3d at 1079 n.1, 1081.  Indeed, "[a] claim

11  of actual innocence is not itself a Constitutional claim, but instead, a gateway through

12  which a habeas Petitioner must pass to have his otherwise barred constitutional claim

13  considered on the merits."  *Herrera v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 861,

14  122 L. Ed. 2d 203 (1993).  Hence, the gateway finding is only the first step.  A habeas

15  petitioner must thereafter demonstrate a violation of the constitution in order to merit

16  an order releasing him from state custody.  In other words, if that petitioner is unable

17  to eventually make such a showing of constitutional error, he will not be entitled to

18  release *on habeas corpus* at any point in time.  Accordingly, such a habeas petitioner

19  suffers no conceivable prejudice from having to serve out his judgment pending

20  habeas corpus proceedings.  It follows that a finding of "probable innocence," which

21  arguably lifts the bar of the statute of limitations before the court has considered the

22  merits of the habeas claims, cannot in itself constitute an "extraordinary circumstance"

23  warranting release on bail.  Indeed, the petitioner in *Boyer* was released because of the

24  recognition that he would eventually be entitled to the writ because he was not given

25  counsel at his trial as was constitutionally required.  *See Boyer v. City of Orlando*, 402

26  F.2d at 967.  None of Petitioner's claims are remotely this clear-cut or compelling.

27         It must also be borne in mind that a *Schlup* finding is simply not a finding that

28  Petitioner is factually innocent in the true sense.  Rather, the finding was based in this

case upon the lenient preponderance of the evidence standard applicable to civil actions, i.e., whether "it is more likely than not" that  no reasonable juror would have convicted Petitioner (*Schlup,* 513 U.S. at 329).[7/]  In other words, this Court has never found that Petitioner is truly innocent.  Instead, the Court made a probabilistic assessment about whether a jury would convict in light of the evidence presented at the evidentiary hearing.  Indeed, the United States Supreme Court has recently cautioned against overstating the meaning of a *Schlup* finding.  In *House v. Bell*, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006), where the Supreme Court found an adequate showing of the "actual innocence" exception, it then pointedly rejected Petitioner's freestanding actual innocence claim, observing that such a claim requires more convincing proof of innocence than what *Schlup* requires.  The Court found that the case in *Bell* was a close one, and expressly held that the prisoner's proof of innocence was inadequate to make a freestanding claim, even if one were recognized.  *Id*. at 2087.

In this light, there should be no question that if Petitioner in this case has in fact met his burden under *Schlup*, he has done so by the slightest of margins.  The Court is aware that the *Schlup* finding in this case has been vigorously challenged with countershowings consisting of detailed factual and legal arguments.[8/]  This is certainly a "close case" in the words of *House v. Bell*, given Petitioner's multiple and detailed confessions and his guilty plea.  Thus, there is no merit to any suggestion, based on the *Schlup* probabilistic determination made by this Court, that the State has been shown to have incarcerated a man who is undoubtedly innocent.  As such, no

---

7.  Respondent had urged the application of a more stringent test based on the "clear and convincing evidence" standard, but this Court ultimately concluded that the more lenient "more likely than not" test applied.  (R&R at 52-53.)

8.  Respondent will not reiterate those arguments here, but will simply incorporate by reference the summary he earlier set forth in his opposition to Petitioner's first bail motion in this Court.

1    extraordinary circumstance can be based upon the *Schlup* gateway finding.

2    **2.    Petitioner Fails To Show "High Probability Of Success" As To**
     **His Habeas Claims**

3

4    In discussing the probability of success of his habeas petition, Petitioner

5    refers to the Second R&R and its recommendation that a habeas corpus be granted.

6    (Second Mot. Bail at 7.)   But, this Court has yet to rule on whether to adopt the

7    Second R&R, which Respondent has vigorously contested.   Respondent submits that

8    he has presented compelling arguments why the Second R&R should not be adopted

9    and accepted by this Court.   In light of those arguments, which Respondent will not

10   rehash here, it simply cannot be said there is a high likelihood that Petitioner will

11   prevail in this Court.

12   Respondent also notes that if Petitioner were ultimately to prevail on his

13   habeas claims, such "success" would not necessarily entitle him to freedom from

14   custody, but rather (as is typically issued) to a conditional writ permitting the State to

15   retry Petitioner and permitting his continued custody pending retrial according to state

16   rules.  (As will be discussed, *post*, bail by this Court could interfere with the state trial

17   court's ability to make its own appropriate bail decisions.)   For that reason, even a

18   hypothetical high probability of "success" would not translate here into a

19   consequential consideration for issuing bail.

20   **3.    Petitioner's Bail Motion Is Highly Premature**

21   Petitioner's bail motion should be rejected because it is simply premature.

22   Rather than waiting for this Court to carefully review the record and the Second R&R

23   and to conscientiously consider the objections Respondent has made to it, Petitioner

24   has decided to rush this Court into a premature decision about his release.   Indeed, if

25   Petitioner is as sure of the likelihood of success as he now expresses, he could have

26   averted the awkward posture of this current bail motion by filing it if and when he

27   actually prevails in this Court.   Then, and only then, would clear statutory and case

28   law afford this Court the jurisdiction to properly entertain bail.   *See Hilton v.*

13

1    *Braunskill*, 481 U.S. 770, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987).  This Court

2    should reject what apparently is a pressure tactic on the part of Petitioner and deny the

3    current bail motion as premature.

4            Indeed, the prematurity of Petitioner's bail motion has the potential effect of

5    eschewing the state court's rightful opportunity to rule on a bail motion in the first

6    instance.  The issue of bail is traditionally within the province of the trial court

7    presiding over the criminal trial of a defendant, not of a reviewing court.  *See United*

8    *States v. Wind*, 527 F.2d 672, 676 (C.A. Mich. 1975) ("We decline to fix bail pending

9    trial, as we believe this to be within the province of the District Court initially.").

10           Here, if a habeas corpus writ were to be granted (Respondent strenuously

11   disagrees that it should in this case) and if an appeal were taken, Petitioner, as

12   previously mentioned, would have more of a legitimate basis to apply for bail

13   pursuant to *Hilton v. Braunskill*.[9/]  However, if an appeal is not taken,[10/] it appears that

14   state proceedings leading to the retrial of Mr. Lisker in the Los Angeles Superior

15   Court would promptly take place.  (*See* Declaration of Beth Silverman.)  If bail is now

16   prematurely granted, the superior court at that point would be deprived of one of its

17   traditional functions of setting bail.  To avert this potential unjust result, this Court

18   should deny the current bail motion.

19   **4.    Applying Traditional Bail Factors, Petitioner Is Unsuitable For
20          Enlargement**

21           Besides overcoming the high hurdles of demonstrating that the Court actually

22   does have the authority to grant bail before a decision, as well as making out the

23

24        9.  Respondent does not in anyway concede that bail is proper before or after

25   judgment in this case.

26        10.  Respondent cannot and does not at this point presume to undertake a

27   speculative prejudgement in a vacuum as to whether he would appeal in the event
     habeas corpus is granted, as such a decision, as is the case with all litigants, would

28   involve a myriad of complex factors.

14

extraordinary circumstances which would justify granting bail in this case, Petitioner does not dispute that he must also demonstrate suitability for release under more traditional bail considerations.  In a case where the inmate is not even a successful petitioner but merely awaiting the adjudication of his habeas claims, there is no reason why, at a bare minimum, the considerations for bail set forth in *Hilton v. Braunskill*, 481 U.S. 770, in which the Supreme Court was applying Federal Rules of Appellate Procedure 23 to a *successful* habeas petitioner seeking bail pending appeal, should not apply.

In determining whether to grant enlargement on bail or on own recognizance to a *successful* habeas petitioner, federal courts generally look to traditional factors such as the risk of flight, the risk that petitioner would pose danger to the public if released, the state's interest in continuing custody and rehabilitation, the length of the remaining sentence, the interest of the habeas petitioner in release pending appeal, and the likelihood of state's success on the merits of appeal.  *Hilton v. Braunskill*, 481 U.S. at 777-78; *Landano v. Rafferty*, 970 F.2d 1230, 1238 (3d Cir. 1992).  The application of these factors renders release in this case wholly inappropriate.

### a.   The State Has A Strong Interest In Having Petitioner Satisfy His Prison Term And In Attempting To Rehabilitate Him

First, the State of California has a significant and compelling interest in Petitioner's continued custody.  Petitioner's guilt in this case is supported by ample evidence, not the least of which are his series of damning confessions for years after trial, all of which have been known and considered by the parole authorities. Certainly, Petitioner expresses no remorse for what he has done, having now entirely disclaimed culpability in his mother's murder.  This was an especially heinous crime and the State has an interest in fully punishing Petitioner for it, as well as in attempting to rehabilitate Petitioner.

Indeed, Petitioner's need for rehabilitation is apparent from his continued lies before the parole board.  Petitioner chose not to testify under oath before this Court

1   at the evidentiary hearing, but he changed his mind and testified at a parole hearing

2   on March 22, 2007 (Attached as Exhibit A to Respondent's First Opposition "Ex. A").

3   While under oath (Ex. A at 16)[11], Petitioner claimed he never had a physical

4   "situation" or "altercation" with his mother.  (Ex. A at 23, 35.)  This contradicts

5   Petitioner's admission to a probation officer that their frequent and heated arguments

6   "led to his mother physically striking him and his taking defensive actions" (EH Ex.

7   100) and his admission to a psychologist that he had "intense and violent" arguments

8   with his mother (EH Ex. 96).

9           As another example of Petitioner's mendacity, he was asked whether he "ever

10  read the book named Helter Skelter?" (Ex. A at 30.)  Petitioner's evasive answer was

11  "I've seen the book."  (Ex. A at 30.)  Petitioner had more than just "seen" the book.

12  He admitted to Dr. LeGassik that at age nine, he begged Dorka Lisker to buy him the

13  book and another book on Charles Manson called "The Family."  (EH Ex. 96.)

14          When he was asked whether he lied "under oath when he told the 1992 panel

15  that he killed his mother," Petitioner's answer was, "Yes."  (Ex. A at 87.)  Petitioner

16  either lied under oath during the 2007 hearing or lied under oath during the 1992

17  hearing.  He is an admitted perjurer.

18          There were other highly significant lies at the hearing.  Petitioner claims he

19  never feigned responsibility for the murder to any of his lawyers.  (Ex. A at 91-92.)

20  Specifically, he claims that he never feigned responsibility to Patricia Cassidy, one of

21  his lawyers for a parole hearing.  (Ex. A at 95.)  Yet Ms. Cassidy, who is now a

22  commissioner on the Board of Prison Terms (Ex. A at 95), appeared on behalf of

23  Petitioner in the 1993 parole hearing in which Petitioner waived an appearance.  She

24  represented that Petitioner took full responsibility for the crime and that he admitted

25  it was a horrible crime.  Cassidy also stated Petitioner felt a great deal of remorse.

26  (EH Ex. 104.)  Petitioner could not explain this inconsistency other than to say that

27

28
        11. Citations are to the original page numbers of the transcript.

1    Cassidy just spoke "boilerplate."  (Ex. A at 97.)

2          For good measure, Petitioner testified that his trial counsel, Dennis Mulcahy,

3    now a superior court commissioner, had instructed him to lie to Youth Authority

4    counselors.  (Ex. A at 92.)  There is, of course, no corroboration to this grave charge

5    against a current member of the State judiciary.  Mr. Mulcahy vehemently denied at

6    the evidentiary hearing that he ever told Petitioner to lie to anyone at the Youth

7    Authority.  (Second Evi. Hear'g at 44.)

8          Petitioner also admitted he was lying when he told Dr. Fukushima that he was

9    a "time bomb."  (Ex. A at 100.)  When he denied ever "smacking" his ex-girlfriend

10   Lisa Randall, Petitioner was confronted with a contradictory statement he made to

11   Dr. Fukushima indicating he did not rape Lisa but admitting to "smacking her."

12   (Ex. A at 100.)  Petitioner said he was lying back then to make himself amenable to

13   the Youth Authority program.  (Ex. A at 101.)  After a commissioner pointed out to

14   Petitioner that there was simply no benefit to admitting to the Youth Authorities that

15   he "smacked" his girlfriend, Petitioner, apparently flustered, gave a rambling and

16   incoherent answer.  (Ex. A at 102-04.)

17         Aside from continuing to tell varying stories, all of which cannot be true,

18   Petitioner, in December of 2007, was issued a disciplinary citation for defying a

19   prison guard's orders not to take a bucket and thereafter throwing it to the ground in

20   confrontational fashion.   (Lodged Doc. B at 37-38.)   Petitioner's demonstrated

21   inability to behave in accord with the rules and to control his anger shows that he is

22   just as dangerous as before.  As such, the State's interest in rehabilitating him is

23   undiminished even after the years he has spent in prison.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

17

### b.   Petitioner Is A Flight Risk

Petitioner's feeble showing regarding the risk of flight is unpersuasive. Petitioner is unemployed, has no assets[12], no significant ties to the community, and is single.  These facts alone render him a flight risk and thus a particularly unsuitable candidate for bail or release on his own recognizance.  *See* 18 U.S.C. § 3142(d).

His ties to Jerry Weinstock are tenuous at best.  He is not Petitioner's father or  stepfather, but simply the husband of Petitioner's stepmother (Joy Lisker), who passed away recently.  It is highly significant that neither Petitioner's stepmother nor Mr. Weinstock knew Petitioner until after his incarceration.  Although Mr. Weinstock offers a place for Petitioner to stay, there is nothing in this fleeting relationship between Petitioner and Mr. Weinstock which would in any way demonstrate that Petitioner would remain with Mr. Weinstock after his release, or that Petitioner would not flee jurisdiction upon release.  The same can be said of the casual acquaintances and family friends who wrote letters indicating that they could offer Petitioner a temporary place to stay.

Indeed, the Los Angeles County District Attorney's Office has indicated that if the Petitioner is granted, it will seek to retry the case.  (Declaration of Beth Silverman.)  The second time around, however, the prosecutor will be armed with Petitioner's repeated and detailed confessions of guilt.  Petitioner is very well aware of this.  On this basis alone, he has a very powerful motive to flee rather than to await this court's adjudication on the merits, or, more pointedly, the prospect of another trial.

/ / /

/ / /

---

12.  Petitioner admitted during the 2007 parole hearing that he had exhausted the trust fund his father established for him. (Ex. A at 83-84.)  He also admitted in his most recent parole hearing, occurring on March 12, 2009, that he received very little money as a result of his internet donation solicitations.  (Lodged Doc. B at 75.)

### c.  Petitioner Poses A Grave Danger To The Public

Petitioner is also a serious danger to the People of the State of California or of any state to which he might flee.  Petitioner is a self-confessed murderer, who also acknowledges that he was clever and depraved enough to falsely pin the murder on a former roommate.  The staff psychologists and counselors have described him as extremely manipulative.  His explosive temper is evidenced by the circumstances of the murder itself, but also by the road rage incident in which he threw a screw driver at another driver (*see* EH Ex. 104; *see* Ex. B at 31-32 [Petitioner admitting that in June of 1982, after a car had "gotten in the lane in front of [him] and then stopped short," he "had to stop and [his] girlfriend had hit the dashboard," and he thereafter "through [sic] a tool . . . [he] believe[s] it was a screwdriver," and "it hit the back of the car. . ."]; Ex. B at 32 [Petitioner does not dispute telling the police "I was going to kill that son of a bitch, he cut me off."]).

The myriad of disciplinary problems Petitioner created in prison included mutual combat in 2001, and most recently (in December 2007), a confrontation with a prison guard for not being allowed the possession of a bucket that Petitioner admittedly could have easily obtained the next day without the confrontation.  (Ex. B 39-42.)  Petitioner could only explain that his latest impulsive behavior resulted from his own frustrations with the slowness by which the court system had operated in relation to his case.  (Lodged Doc. B at 41.)  But this only shows how his behavior is still so mood-driven and volatile, such that the anger management issues that drove him to commit the underlying crime against his mother, and before that, assaulting another motorist with a screwdriver, cannot now be said to have improved to any appreciable degree.  This demonstrated lack of improvement confirms that he is still dangerous to society.

Indeed, the parole board, after carefully considering Petitioner's performance in prison, has certainly, as recent as March 12, 2009, found Petitioner to be a risk of danger to society.  (Lodged Doc. B 136-37.)  Such a finding by experienced

19

1   correctional officials, entrusted by the People of the State of California to make

2   precisely such determinations, is entitled to a great measure of deference.

3          Indeed, Dr. Lehrer's most recent evaluation of Petitioner as being in the

4   "upper end of the low risk range for violence" has to be viewed carefully.  For one,

5   even when Dr. Lehrer's evaluation is taken at face value, Petitioner still appears

6   dangerous.  Dr. Lehrer acknowledges Petitioner suffered from narcissistic disorders.

7   (*See* Second Bail Motion Ex. B at 10.)  This suggests that Petitioner would resort to

8   unlawful or violent means to achieve whatever objective he at any time desires.

9   Moreover, Dr. Lehrer's "low risk" evaluation is contingent upon the absence of drug

10  use.  (*See* Second Bail Motion Ex. B at 17.)  Petitioner admitted that he had been a

11  drug user for six years and had experimented with the worst of narcotic substances.

12  (*See* Ex. A at 49; EH Exs. 100, 104.)  There is very little guarantee that this same

13  individual, should he become frustrated outside the confines of prison, will not act out

14  his narcissistic whims by indulging in drugs again.  Such drug use, of course, would

15  clearly endanger the public, even under Dr. Lehrer's assessment.

16         **d.   Petitioner's Sentence Is Not Near Completion**

17         Petitioner's sentence is not near completion.  He is serving a life term.  He

18  has applied for parole repeatedly and had been found unsuitable in each instance, with

19  the most recent denial occurring on March 22, 2007.  (*See* Exhibit A.)

20         **e.   There Is No Valid Interest In Having This Inmate**
                  **Released**

21

22         There is no interest -- except Petitioner's own -- for him to be enlarged on

23  bail pending habeas proceedings.  Petitioner is an unremorseful, self-confessed

24  murderer and an admitted liar whose current crime and history of drug and alcohol

25  abuse makes his release a tremendous danger to the public, not to mention an affront

26  to the interests of the public and the government in law and punishment.  No valid

27  reason exists to support his release.

28  / / /

**f.    Petitioner's Habeas Claims Exhibit Little Likelihood Of Success**

As previously mentioned, it cannot be said that there is a high likelihood of success as to the claims Petitioner raises in his Petition.  Moreover, even "success" would not entitle to the unconditional freedom he now asks, but rather a conditional writ permitting him to be held in further custody pending retrial.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# CONCLUSION

Petitioner is guilty of the crime for which he is incarcerated and is unsuitable for release to the general public.  The premature application for bail before a decision on the merits of Petitioner's habeas claims should be denied.

Dated:  July 23, 2009

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

PAMELA C. HAMANAKA
Senior Assistant Attorney General

SCOTT A. TARYLE
Supervising Deputy Attorney General

ROBERT D. BRETON
Deputy Attorney General


/s/ John Yang

JOHN YANG
Deputy Attorney General

Attorneys for Respondent

JY:fc
LA2004FH0213
50476111.wpd

# DECLARATION OF BETH E. SILVERMAN

I, Beth E. Silverman, declare as follows:

1. I am a Deputy District Attorney with the Major Crimes Division of the Los Angeles County District Attorney's Office.

2. I have been assigned by our office to await the resolution of the currently-pending habeas action commenced by Bruce Lisker in the federal court, and to thereafter serve as the deputy to retry the case should a Writ of Habeas Corpus be granted.

3. In this capacity, I can represent that the Los Angeles District Attorney's Office stands ready, and intends, to retry Mr. Lisker should his conviction be overturned as a result of the current habeas action.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of July, 2009, at Los Angeles, California.

Beth E. Silverman
Deputy District Attorney

1