William J. Genego, Esq. (CA Bar No. 103224)
Vicki I. Podberesky, Esq. (CA Bar No. 123220)
Richard G. Hirsch, Esq. (CA Bar No. 39678)
NASATIR, HIRSCH, PODBERESKY & GENEGO
2115 Main Street
Santa Monica, California 90405
Telephone: 310-399-3259
Telecopier: 310-392-9029

Attorneys for Petitioner
Bruce Lisker

## United States District Court

## Central District of California

| | |
|---|---|
| Bruce E. Lisker, | Case No. CV 04-2687-VAP (RZ) |
| Petitioner, | REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION FOR BAIL |
| vs. | |
| Michael Knowles, Warden, | Date: August 10, 2009 |
| | Time: 10:00 a.m. |
| | Place: Courtroom 2 |
| Respondent. | |

## I.

## Introduction

Respondent has filed a lengthy and strident opposition to Petitioner's request for bail. Respondent argues that the Court lacks authority to grant bail given that it has not yet issued a final order as to the merits of the petition. Alternatively, Respondent asserts that even if the Court rules upon the merits of the petition, it should not exercise its authority to set bail.

This case presents a uniquely different set of circumstances from any case cited by the Respondent. Standing poised on the precipice of a decision by this Court on Magistrate Judge Zarefsky's Second Report and

1   Recommendation ("Second Report"), in which it is recommended that the

2   Court conditionally issue the Second Amended Petition for Writ of Habeas

3   Corpus as to three of four claims asserted by Petitioner (Doc. 211, p. 68-69), the

4   setting of bail is warranted.  The evidence presented at both the December,

5   2005 and October, 2008 evidentiary hearings, far exceeds the finding of

6   "probable innocence" necessary to pass through the *Schlup* gateway, and

7   clearly demonstrates violations of constitutional proportion which justify the

8   granting of the petition and conditional writ. In short, this case presents

9   extraordinary circumstances which support the granting of bail at this time.

10      Alternatively, the Court could temporarily stay its ruling on the bail

11  motion, as a decision by this Court on the Second Report  would immediately

12  provide authority for the granting of bail. *See* Fed.R.App.Proc. 23.  Under these

13  circumstances, bail is warranted and supported by a variety of factors

14  including the fact that Mr. Lisker is neither a danger nor a flight risk, and that

15  there exists a high probability of success as to the merits of his Second

16  Amended Petition .

17

18                              **II.**

19                          **ARGUMENT**

20  **A.    THIS COURT HAS THE INHERENT AUTHORITY TO GRANT BAIL**

21          **AT THIS STAGE OF THE PROCEEDINGS**

22      It is undisputed that once this Court acts upon the Second Report,  the

23  authority to set bail exists under Federal Rule of Appellate Procedure 23.

24  Whether a district court has the power to grant bail prior to a final decision on

25  the merits of a habeas petition, is an open question in this Circuit.  As

26  Respondent notes (Opposition at p. 8, n.6), several Circuits  have recognized a

27  court's inherent authority to grant bail where a petition is under consideration.

28  *See Nash v. Eberlin,* 437 F.3d 519, 526 n. 10 (6th Cir. 2006); *Landano v. Rafferty,* 970

F.2d 1230, 1239 (3rd Cir. 1992); *In re Wainwright*, 518 F.2d 173, 174 (5th Cir. 1975) ("in spite of the lack of specific statutory authorization, it is within the inherent power of the district court to enlarge a state prisoner on bond pending . . . decision on his application for a writ of habeas corpus.") Moreover, as recognized by the Ninth Circuit in *In re Roe*, 257 F.3d 1077, 1080 (9th Cir. 2001), "some modern authorities appear to favor recognizing a federal court's power to grant bail pending a decision on a habeas petition." *citing Grune v. Coughlin*, 913 F.2d 41 (2d Cir. 1990); *Boyer v. City of Orlando*, 402 F.2d 966(5th Cir. 1968); *Johnston v. Marsh*, 227 F.2d 528 (3rd Cir. 1955).

**B.    THIS IS AN EXTRAORDINARY CASE WHERE PETITIONER HAS A HIGH PROBABILITY OF SUCCEEDING ON THE MERITS**

 While the court in *Roe* specifically declined to address the question of whether a court has inherent authority to grant bail pending the outcome of a habeas proceeding, it did suggest that if such inherent authority existed a state prisoner could be released on bail pending resolution of a habeas matter in "extraordinary cases." *Id*. at 1080. This is such an extraordinary case.

Magistrate Judge Zarefsky found that Petitioner has been incarcerated on the basis of a conviction tainted by constitutional violations. In a 69 page Report and Recommendation,  Magistrate Zarefsky carefully and meticulously detailed the evidence in support of this conclusion. While this Court has not yet adopted the Second Report, the conclusions reached by Magistrate Judge Zarefsky are firmly supported by the trial record as well as evidence presented during exhaustive evidentiary hearings, where despite Respondent's best efforts to show that Petitioner was effectively represented and that he was convicted on competent and true evidence, the magistrate found otherwise. Under these circumstances, where a habeas petition stands on the verge of final resolution in the district court, supported by extensive findings by a

1  magistrate judge, extraordinary circumstances exist to support the setting of

2  bail.

3      Respondent mis-characterizes Petitioner's argument stating that

4  Petitioner relies upon the showing under the *Schlup* gateway as evidence of

5  special circumstances, and asserts that this standard was met by only the

6  "slightest of margins." *See* Respondent's Opposition at 12.  In making such a

7  specious argument, Respondent fails to acknowledge the fact that the showing

8  of false evidence was so strong at the *Schlup* gateway hearing that it supported

9  not only the gateway standard,  but also the  finding of a violation of

10  constitutional proportions sufficient to justify recommending that the petition

11  be granted.  Indeed, during the second round of evidentiary hearings held in

12  2008, the only additional evidence the Respondent sought to introduce was the

13  testimony of the trial counsel Dennis Mulcahey.  Respondent chose not to

14  present any further evidence to overcome the showing that false evidence as to

15  the footprints, the line of sight through the rear windows and the weather

16  conditions, was used to convict Petitioner at trial.  No such evidence was

17  presented by Respondent, because none exists to refute the obvious fact that

18  Petitioner was convicted on false evidence.  It is thus not a "*Schlup* finding"

19  upon which Petitioner relies to bring this motion for bail, but a finding

20  recommending that the petition be granted on its merits as to the claims of

21  ineffective assistance of counsel, false evidence and cumulative error.

22      Respondent further baldly asserts that it cannot be said there exists a

23  high likelihood that Petitioner will prevail in this Court. *See* Respondent's

24  Opposition at 13.  While Petitioner does not assume how this Court will

25  ultimately rule, there is no disputing that the considered decision by Magistrate

26  Judge Zarefsky, who heard first hand all of the testimony and reviewed all of

27  the evidence in this matter, supports Petitioner's claim for habeas relief.

28  Petitioner is hopeful that this Court will  adopt the Second Report, and will do

so in short course.

## C.     TRADITIONAL BAIL FACTORS MITIGATE IN FAVOR OF GRANTING BAIL

Respondent argues that bail should not be granted and asserts that none of the traditional bail factors favor release. This is simply not the case. Although all of Petitioner's immediate family are deceased, both his father and his step-mother died while Petitioner was incarcerated, there exists a significant support system here in the Southern California area.  His only ties are in Southern California and, contrary to Respondent's representations, he is very close to Jerry Weinstock, his late step-mother's husband. As set forth in counsel's declaration,  Mr. Weinstock stands ready to provide Petitioner with a place to live should he be released.  Moreover, Petitioner has persevered through many years of litigation in the state and federal courts in an effort to prove his innocence.  His commitment to defending himself and clearing his name is unquestionable. Should the District Attorney's Office decide to move forward with a retrial, Petitioner will be here to defend himself.

Respondent's suggestion that the Court should defer ruling on Petitioner's release on bail "[t]o avert th[e] potential unjust result" of "the superior court  . . . [being] deprived of one of its traditional functions of setting bail", should be flatly rejected. As an initial matter, Respondent's proposition that "the issue of bail is traditionally within the province of the trial court presiding over the criminal trial of a defendant, not of a reviewing court" is simply inapposite here, as is demonstrated by the single case it cites as authority, a Sixth Circuit case from thirty-nine years ago. *See* Respondent's Opposition at p. 14, citing *United States v. Wind*, 527 F.2d 672, 676 (6th Cir. 1975).  *Wind* concerned a defendant who was pending trial, and the trial court ordered him held without bail.  He appealed and the Sixth Circuit vacated the

1  order denying bail, and remanded. Although the Court vacated the order, it

2  declined to set bail and instead remanded the case to the district court,

3  explaining that "we believe this to be within the province of the District Court

4  initially." *Wind*, 527 F.2d at 676. In the present circumstances, Federal Rule of

5  Appellate  Procedure 23 plainly contemplates the decision as to bail being

6  within the authority of the federal habeas court.

7       Second, if Respondent truly wants to "[t]o avert th[e] potential unjust

8  result" of "the superior court . . . [being] deprived of one of its traditional

9  functions of setting bail," the Attorney General should simply decide in

10 advance whether he is going to appeal and be in a position to advise the Court,

11 forthwith.  Given the "one-year delay in . . . adjudication of Petitioner's claims"

12 that has already resulted from Respondent's strategic agenda (Second Report at

13 p. 9), the truly unjust result would be for Petitioner to remain in custody while

14 Respondent prolongs a decision whether to appeal.

15      Third, the specter of a possible retrial should not in any way diminish

16 Petitioner's right to bail.[1]  Even under the Uniform Bail Schedule for Los

17 Angeles County, Petitioner is presumptively eligible for bail.

18      Nor does Petitioner pose a danger to the community. Respondent points

19 to an incident of road rage 37 years ago and the bucket incident in 2007 to

20 _____

21      [1] Counsel for Petitioner has had two telephone conversations with Deputy
District Attorney Beth Silverman.  While Ms. Silverman has represented that the District
22 Attorney's Office intends to retry Petitioner, and stands ready to do so, she has also
23 represented to counsel that her supervisor would like to meet with counsel for
Petitioner prior to any retrial for the purpose of discussing whether a retrial is
24 appropriate under the circumstances.  She has further indicated to counsel that she is
25 aware that the prosecution faces significant proof problems. *See* Declaration of Vicki I.
Podberesky, attached hereto. All of the evidence used to convict Petitioner at trial has
26 been effectively dismantled during the course of the federal evidentiary hearings.
27 Moreover, the credibility of the lead detective, LAPD Detective Monsue, has been
severely damaged by a showing that he blatantly lied during trial as well as to the
28 parole board in an effort to keep Mr. Lisker from being paroled.

6

1   support its argument that Petitioner is dangerous.  The fact of the matter is that
2   Petitioner's most recent psychological evaluation, attached as Exhibit B to
3   Petitioner's Bail Motion, assess Petitioner in the "low risk" range for violence in
4   the free community. *See* Exhibit B to Motion for Bail at 51.   Indeed, the
5   evaluator, Dr. Lehrer, notes that "there does not appear to be any malicious
6   intent or any desire for non prosocial behavior,. . . . Rather the inmate is very
7   much oriented toward wanting to do the right thing." *Id.* at 44.   While,
8   Respondent points to Petitioner's prior history of substance abuse as a factor
9   potentially indicative of an inability to conform to prosocial behavior if
10  released, the record is replete with evidence of Petitioner's voluntary
11  participation in numerous custodial programs designed to address substance
12  abuse and behavioral issues. *See* Exhibit C to Petitioner's Motion for Bail.
13  Petitioner has participated in and completed such programs as: the "Stay Out
14  Of Prison" program, Mule Creek State prison Juvenile Diversion program,
15  Centering Prayer Group, Communication Skills program, "Good Intention/Bad
16  Choices" pre-release program, Coping Skills program, and Victim Awareness
17  Offender's program. Petitioner has also been a long time and active participant
18  in Narcotics Anonymous. He has performed exceptionally well at each of his
19  work assignments, earning favorable performance reviews.  These factors
20  support Petitioner's likely success on bail and a finding that he poses no danger
21  if released.[2]

22      Respondent also argues that the State has an interest in Petitioner's
23  continued incarceration, first asserting that there exists ample evidence of guilt
24  and second that Petitioner requires rehabilitation due to inconsistent

25  _____

26      [2] It is Petitioner's intention when released on bail to continue with his
27  participation in NA, as well as to seek out and participate in programs designed to
28  assist him in reintegrating into society.  Mr. Lisker has a strong network of friends who
    stand ready to support him if he is released on bail.

1  statements made to the Parole Board regarding the offense. *See* Respondent's

2  Opposition at 15-16. Neither of these assertions has any merit.

3  As noted by this Court:

4

5          This Court retains no confidence in the verdict achieved through the

6          presentation of evidence at Petitioner's trial because none of the evidence

7          from that trial, upon which the conviction rested, withstands scrutiny in

8          light of the newly presented evidence here.  Petitioner could have seen

9          his mother from outside the house; the weather was not bright or sunny

10         and the line of sight allowed one to see the victim's body.  The shoe

11         prints inside and around the house did not all belong to the Petitioner.

12         An object resembling the unidentified show which left prints in the guest

13         bathroom and outside the house also made a mark on the victim's head.

14         The blood on Petitioner did not suggest guilt more than innocence. The

15         victim's purse contained most of the missing money. Hughes' testimony

16         was not credible either in isolation or in conjunction with other evidence.

17         There was a different suspect who was not "convincingly cleared" and

18         whose involvement police appeared to have ignored in spite of

19         compelling evidence.  Under all these circumstances, this Court has no

20         confidence in the 1985 trial or conviction.

21  *Lisker v. Knowles,* 463 F. Supp. 1008, 1040.

22         With no reliable evidence left upon which to convict, Respondent points

23  to admissions of guilt made by Petitioner to the Youth Authority and during

24  various parole hearings to argue that Petitioner is in need of rehabilitation and

25  should thus remain incarcerated.  As noted by this Court, these statements

26  were made "with everything to gain and nothing to lose. . . ."*Id.* at 1041.

27  Petitioner's statements made prior to trial, were made for the purpose of

28  seeking placement in the Youth Authority, thereby insuring his release by the

age of 25 versus a life sentence if convicted.  Petitioner's statements made after his conviction were made for the purpose of demonstrating acceptance of responsibility and thus improving his chances for parole.  *Id.* at 1040-41.

Finally, Respondent contends that there is no valid interest in Petitioner being released on bail and little chance that he will succeed on the merits of his petition.  Magistrate Judge Zarefsky's Second Report speaks clearly and decisively as to the strength of Petitioner's claims and recommends to this Court that three out of four of Petitioner's claims be granted.  To say there is little chance of success on the merits is simply to ignore the overwhelming evidence in this case.

As for whether there exists a valid interest in releasing Petitioner, there is always a valid societal interest in righting a wrong that has occurred within the criminal justice system. A person, such as Petitioner, who has been wrongly convicted and served 26 years in custody is entitled not only to the relief he seeks by way of habeas petition, but also to bail.

**III.**

**CONCLUSION**

For all the foregoing reasons and those set forth in the Motion for Bail, Petitioner respectfully requests that bail be set at this time.

Dated: August 3, 2009      Respectfully submitted,

NASATIR, HIRSCH, PODBERESKY & GENEGO

By:        /s/ Vicki Podberesky
           William J. Genego
           Vicki I. Podberesky

           Counsel for Petitioner
           Bruce Lisker

### DECLARATION OF VICKI I. PODBERESKY

I, VICKI I. PODBERESKY, declare and state as follows:

1. I am an attorney duly licensed to practice law before all courts of the State of California and before the United States District Court for the Central District of California.  I am one of Mr. Lisker's counsel of record in the above-captioned matter.

2. On or about July 13, 2009 and on or about July 28, 2009, I spoke with Deputy District Attorney Beth Silverman.  The purpose of my first telephone cal to Ms. Silverman was to introduce myself since I had heard that she was assigned to review the Lisker matter. During our initial conversation, Ms. Silverman indicated that the case had no officially been assigned to her and that she was still reviewing material.  She indicated that she would be interested in meeting with me in the future to discuss the Lisker matter with respect to whether retrial was warranted in light of all the available evidence. Ms. Silverman acknowledged that she faced significant evidentiary issues due to the passage of time and loss of evidence in this case.

3. During my second telephone conversation with Ms. Silverman she indicated that her supervisor would like to meet with me to discuss the Lisker case.  My understanding was that the discussion was for the purpose of assisting the District Attorney's Office in evaluating whether a retrial was appropriate under the circumstances.

     I declare that the foregoing is true and correct to the best of my belief and knowledge. Executed this 3rd day of August 2009.

                  _____/s/_____

                  Vicki I. Podberesky